Joshua Briones (SBN 205293)
jbriones@mintz.com
E. Crystal Lopez (SBN 296297)
eclopez@mintz.com
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
2049 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 586-3200
Facsimile: (310) 586-3202

Attorneys for Defendant
HOT TOPIC, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISHA BYARS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOT TOPIC, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 5:22-cv-01652-JGB-SPx<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Case Assigned to Hon. Jesus G. Bernal Courtroom 1<br><br>Date: December 12, 2022<br>Time: 9:00 a.m.<br>Location: 3470 Twelfth Street<br>Courtroom 1<br>Riverside, CA 92501<br><br>Complaint Filed: September 20, 2022<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS........................2

III.  LEGAL STANDARD ..................................................................3

IV.   ARGUMENT..............................................................................3

     A.    Plaintiff's Failure to Allege Injury Is Fatal......................................3

          1.    Injury Is Required Under CIPA.............................................4

          2.    Plaintiff Fails to Allege the Injury Required For CIPA
              Claims. ..............................................................................5

     B.    Plaintiff's Failure to Allege When Conduct Occurred Warrants
        Dismissal. .............................................................................7

     C.    Plaintiff Cannot Meet Her Burden to Prove Non-Consent. .............8

          1.    The Complaint Fails to Adequately Allege Non-Consent.....9

          2.    The Website Shows That Plaintiff Impliedly Consented. ...10

     D.    The Complaint Fails to Plead a Violation of Section 631(a).........14

     E.    The Complaint Fails to Plead a Violation of Section 632.7. .........18

V.    CONCLUSION ........................................................................23

1

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4

5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................3

6

7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................3

8

9

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020).....................................7, 8, 16

10

11

*Brodsky v. Apple Inc.*,
  No. 19-CV-00712-LHK, 2019 WL 4141936
  (N.D. Cal. Aug. 30, 2019) .......................................................8

12

13

*Epstein v. Wash. Energy Co.*,
  83 F. 3d 1136 (9th Cir. 1996) .................................................3

14

15

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002)...........................................................22

16

17

*Garcia v. Apple Seven Servs. San Diego, Inc.*,
  No. 20-CV-02385-BAS-MDD, 2021 WL 3725921
  (S.D. Cal. Aug. 20, 2021) .......................................................11

18

19

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021).....................................6, 16, 17

20

21

*Gruber v. Yelp Inc.*,
  55 Cal. App. 5th 591 (2020) ...................................................21

22

23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019)......................................11

24

25

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020).....................................17

26

27

*In re Google Inc.*,
  No. 13-MD-02430-LHK, 2013 WL 5423918
  (N.D. Cal. Sept. 26, 2013) ......................................................11, 12

28

- iii -

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ............................................................ 4, 20

*In re Tsung Yu Chien*,
  No. CV 19-2131 JGB, 2020 WL 3965031
  (C.D. Cal. Apr. 2, 2020) ............................................................................................ 4

*In re Vizio, Inc., Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................. 16

*Ion Equip. Corp. v. Nelson*,
  110 Cal. App. 3d 868 (Ct. App. 1980) ................................................................. 7

*Javier v. Assurance IQ, LLC*,
  No. 21-16351, 2022 WL 1744107
  (9th Cir. May 31, 2022) .......................................................................................... 15

*Javier v. Assurance IQ, LLC*,
  No. 4:20-CV-02860-JSW, 2021 WL 940319
  (N.D. Cal. Mar. 9, 2021) ............................................................................... 9, 12, 15

*Johnson v. Blue Nile, Inc.*,
  No. 20-cv-08183-LB, 2021 WL 1312771
  (N.D. Cal. Apr. 8, 2021) .......................................................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................................ 11

*Lares v. West Bank One (In re Lares)*,
  188 F.3d 1166 (9th Cir. 1999) ................................................................................ 4

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004) ...................................................................................................... 21

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................. 5

*Mastel v. Miniclip SA*,
  549 F.Supp.3d 1129 (2021) ................................................................................... 15

*Negro v. Superior Ct.*,
  179 Cal. Rptr. 3d 215 (Cal Ct. App. 2014), (Nov. 18, 2014) ......................... 11

- iv -

*Nei v. Hanson*,
  No. 12-CV-01685-BAS(JLB), 2016 WL 4886933
  (S.D. Cal. Sept. 15, 2016)...................................................................8, 9

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ...................................................................12

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*,
  No. C10-0941 TEH, 2010 WL 2198203
  (N.D. Cal. May 28, 2010)............................................................................7

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016)........................................................9

*Pac. Merch. Shipping Ass'n v. Goldstene*,
  639 F.3d 1154 (9th Cir. 2011) ...................................................................23

*Portillo v. ICON Health & Fitness, Inc.*,
  No. 219CV01428ODWPJWX, 2019 WL 6840759
  (C.D. Cal. Dec. 16, 2019) ...................................................................10, 16

*Quigley v. Yelp, Inc.*,
  No. 17-cv-03771-RS, 2018 WL 7204066
  (N.D. Cal. Jan. 22, 2018)...........................................................................16

*Ribas v. Clark*,
  696 P.2d 637 (Cal. 1985)......................................................................17, 18

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (Ct. App. 1975) ..........................................14, 16, 17, 18

*Rosenow v. Facebook, Inc.*,
  No. 19-cv-1297-WQH-MDD, 2020 WL 1984062
  (S.D. Cal. Apr. 27, 2020)...........................................................................16

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*,
  343 F.3d 1036 (9th Cir. 2003) ...................................................................11

*Silver v. Stripe Inc.*,
  No. No. 4:20-cv-08196-YGR, 2021 WL 3191752
  (N.D. Cal. July 28, 2021)...........................................................................11

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018).............................................................*passim*

- v -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................ 3

*Tavernetti v. Superior Ct.*,
  583 P.2d 737 (Cal. 1978) ............................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................... 11

*Thurston v. Omni Hotels Mgmt. Corp.*,
  69 Cal. App. 5th 299 (2021) ........................................................... 5

*Vaughan v. Biomat USA, Inc.*,
  No. 20-CV-04241, 2022 WL 1266389
  (N.D. Ill. Apr. 28, 2022) ................................................................ 1

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (Ct. App. 1979) .........................................*passim*

*Yale v. Clicktale, Inc.*,
  No. 20-cv-07575-LB, 2021 WL 1428400
  (N.D. Cal. Apr. 15, 2021) ................................................................ 6

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................. 6

**Statutes**

Cal. Penal Code § 631 .......................................................*passim*

Cal. Penal Code § 632.7 ....................................................3, 18, 19, 20

Cal. Penal Code § 637.2 ....................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................... 7

Fed. R. Civ. P. 12 ......................................................7, 11, 14

HYPERLINK \l "_BA_Cite_2F0EEA_000147" \o "Long: 2 www.hottopic.com"2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## I.   **INTRODUCTION**

This case is the latest in a series that Plaintiff has brought in recent months against numerous companies alleging that their e-commerce websites violate the California Invasion of Privacy Act ("CIPA").[1] Plaintiff's claims against Defendant Hot Topic, Inc. ("Defendant" or "Hot Topic")[2] are dead on arrival because she fails to allege the following essential elements: (i) any injury, (ii) when alleged conduct occurred, and (iii) technological predicates to qualify for the wiretapping and cellular telephone statutes. In addition, the complaint and the website it incorporates by reference demonstrate Plaintiff impliedly consented to her (unalleged) written communications being recorded and shared with Hot Topic and its chat feature vendor, Gladly. Thus, this Court must dismiss Plaintiff's bare-bones complaint because it fails to state a claim for relief.

The Court should dismiss the complaint for the additional reason that endorsing Plaintiff's theory of liability would criminalize millions of websites and ubiquitous webpage features. CIPA is a criminal statute, and the legislature enacted the provisions at issue here to tackle the simple, discrete issue of third parties who secretly wiretap, record, and intercept "telephone" conversations. Per their plain language and commonsense, the provisions do not and should not be used to regulate the radically more complex arena of internet traffic and website construction, such

---

[1] Plaintiff has filed at least four (6) nearly identical lawsuits in the last 3 months. *See, e.g., Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-1456 (C.D. Cal. 2022); *Byars v. Rite Aid Corp.*, No. 5:22-cv-1377 (C.D. Cal. 2022); *Byars v. The Goodyear Tire and Rubber Co.*, No. 5:22-cv-1358 (C.D. Cal. 2022); *Byars v. Casper Sleep, Inc.*, No. 5:22-cv-01801-JGB-KK (C.D. Cal. 2022); *Byars v. Macy's Inc.*, CIV-SB-2217010 (San Bernardino Super. Ct. Aug. 5, 2022); *Byars v. Whirlpool*, CIV-SB-2215944 (San Bernardino Super. Ct. July 25, 2022). Plaintiff's law firm, Pacific Trial Lawyers, have filed approximately 46 similar lawsuits under CIPA against other companies in the last several months. *See* Request for Judicial Notice ("RJN"), Ex. 6.

[2] The complaint also names "DOES 1 through 25" as defendants, but includes conclusory and facially implausible allegations regarding them. Dkt. 1, Compl. ¶¶ 6–7. To the extent that this Court dismisses the claims against Hot Topic, Inc., it should also dismiss them against the "DOES." *See Vaughan v. Biomat USA, Inc.*, No. 20-CV-04241, 2022 WL 1266389, at *2 (N.D. Ill. Apr. 28, 2022) (dismissing privacy claims asserted in complaint that "engages in impermissible group pleading").

- 1 -

as the common practice of enlisting services, tools, and servers from other entities. Judicially blessing Plaintiff's theory would risk breaking the internet.

## II.   BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Hot Topic is a retailer specializing in clothing, accessories, and music. Hot Topic operates the e-commerce website www.hottopic.com (the "website"), which has an optional chat feature that enables visitors to exchange written messages with Hot Topic's customer service department. *See* Complaint, Dkt. 1 ¶¶ 2–3. To view and access the chat feature, visitors must either (i) visit the Hot Topic customer service,[3] or (ii) affirmatively click a link titled "Questions? Reach us via Live Chat" that appears at the bottom of every webpage of the website. RJN, Ex. 2, HotTopic.com (Jan. 1, 2022). Directly next to that link is a link to Hot Topic's Privacy Policy. *Id.* Below the chat link is a disclaimer to all visitors that, "By continuing to use this site, you agree to our Privacy Policy," with an embedded link to the full Privacy Policy. RJN, Ex. 1; *id.* Ex. 3, HotTopic.com Privacy Policy (Effective Jan. 1, 2020 to Aug. 6, 2022). If a visitor elects to click either the "CHAT NOW" button or the "Live Chat" link, a box opens on the same webpage. At the bottom of that box is a smaller box titled "Chat with us!" with a link to begin using the chat feature. RJN, Ex. 4. Immediately above that link—in conspicuous, standalone text—is a disclaimer that the chat feature is "Powered by Gladly." *Id.*

Gladly is a company whose tool or service the chat feature incorporates. *See* Compl. ¶ 11. Hot Topic uses Gladly to understand Hot Topic's own data from visitors' interactions with the chat feature. Compl. ¶ 12.

From an unknown place, in an unknown decade, on an unknown date, at an unknown time, using an unknown technology, Plaintiff visited Hot Topic's website. Compl. ¶ 16. The complaint alleges no facts regarding what Plaintiff did upon navigating to the website nor anything that happened as a result. *See, e.g.*, Compl.

---

[3]   *See* RJN, Ex. 1 (Hot Topic customer service "Contact Us" webpage (https://www.hottopic.com/contactus))

¶ 16. Plaintiff never accessed, used, interacted with, entered information into, or otherwise communicated with the chat feature or Gladly. *See generally* Compl.

On September 20, 2022, Plaintiff filed a complaint in this Court asserting claims under Sections 631(a) (wiretapping) and 632.7 (cellular telephones) of CIPA. Cal. Penal Code §§ 631, 632.7. Plaintiff also seeks to bring claims on behalf of a potential class of persons who used the chat feature on Hot Topic's website. The complaint seeks a variety of relief, including $5,000 in statutory damages per CIPA violation. *Id.* § 637.2. On September 29, a joint stipulation was entered extending the answer deadline to November 11, 2022.

## III.   <u>LEGAL STANDARD</u>

A complaint must state a "claim showing that the [plaintiff] is entitled to relief." To do so, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' [or] 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007). Thus, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187. Similarly, "conclusory allegations of law . . . are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F. 3d 1136, 1140 (9th Cir. 1996).

## IV.   <u>ARGUMENT</u>

### A.   **Plaintiff's Failure to Allege Injury Is Fatal.**

Because Plaintiff fails to allege that Hot Topic injured her, this Court must dismiss her complaint as a matter of law.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1      **1.**    *Injury Is Required Under CIPA.*

2      CIPA requires an injury. Specifically, CIPA is a criminal statute, and it creates

3 a private right of action only for a person "who has been *injured* by" a violation of

4 one of CIPA's provisions. Cal. Penal Code § 637.2 (emphasis added). This Court

5 must give legal effect to the legislature's choice to include this plain and unambiguous

6 language imposing an injury requirement. "Federal courts apply California rules of

7 statutory construction when interpreting a California statute." *In re Google Location*

8 *Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (quoting *Lares v. West Bank*

9 *One (In re Lares)*, 188 F.3d 1166, 1168 (9th Cir. 1999)). "The touchstone of statutory

10 interpretation is the probable intent of the Legislature," and the "first step in

11 determining that intent is to 'scrutinize the actual words of the statute, giving them a

12 plain and commonsense meaning.'" *Id.* (citations omitted). Here, if the legislature had

13 intended for a technical violation of a substantive provision to enable any person to

14 bring a claim (which it did not), the legislature would have omitted the following

15 language as superfluous: "any person ~~who has been injured by a violation of [CIPA]~~

16 may bring an action against the person who committed the violation." *See* Cal. Penal

17 Code § 637.2 (strikethrough added); *In re Tsung Yu Chien*, No. CV 19-2131 JGB,

18 2020 WL 3965031, at *2 (C.D. Cal. Apr. 2, 2020) ("Principles of statutory

19 interpretation counsel against interpretations that nullify the effect of the words.").

20 Thus, the plain language of the statute controls and requires Plaintiff to allege injury,

21 separate from a mere technical violation, as a core requirement under CIPA.

22      The injury requirement also reflects sound policy. CIPA is a criminal statute.

23 Concerns regarding overzealous enforcement in the criminal context are mitigated

24 because the body politic entrusts state prosecutors to exercise their prosecutorial

25 discretion responsibly in the service of the public interest. In contrast, private citizens

26

27

28

- 4 -

and plaintiffs' firms are not accountable in this manner.[4] Indeed, if no injury were required to bring a claim, CIPA's statutory penalties would strongly incentivize harassment of companies for even for the most *de minimis*, technical, and harmless violations.[5] Thus, the legislature's decision to require injury distinct from a violation of the substantive provisions of CIPA is wise public policy.

## 2. *Plaintiff Fails to Allege the Injury Required For CIPA Claims.*

Here, Plaintiff has failed to meet her burden to demonstrate that she actually suffered an injury. The complaint focuses on potential conversations that took place using the chat function on Hot Topic's website but lacks allegations regarding Plaintiff *herself*.

Plaintiff alleges only that she "visited Defendant's Website." Comp. ¶ 16. She does not allege what—if anything—she did while visiting. In particular, Plaintiff fails

---

[4] The public litigation history of Plaintiff and her law firm, which is subject to judicial notice, suggests that this case represents an artificial case or controversy. Plaintiff and Plaintiff's law firm, Pacific Trial Lawyers, have filed approximately 46 similar lawsuits under CIPA against other companies in recent months. *See* RJN, Ex. 6. This litigious pattern appears to be part of a broader scheme that Plaintiff's law firm uses to shakedown companies for purported, technical website violations. For example, Plaintiff's firm has represented a plaintiff whom a jury found lacked any sincere interest in actually using the services provided by the website that her lawyers asserted was unlawful. *See Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal. App. 5th 299, 301 (2021), *review denied* (Dec. 22, 2021) ("[T]he jury rejected Thurston's claim and found that she never intended to make a hotel reservation or ascertain [defendant's] prices and accommodations for the purpose of making a hotel reservation."). On appeal, the court rejected Pacific Trial Attorneys' argument that its plaintiff need not show any "bona fide intent" to use the services (as opposed to a reason like suing for money). *See id.* at 307–09.

[5] Although a different provision of CIPA provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages," Cal. Penal Code § 637.2(c), it does not open the federal courthouse gates to Plaintiff here. Through this provision, CIPA merely confirms that while "injury" is required, a showing of monetary "damages" is not. An injured plaintiff may be entitled to the $5,000 statutory award, Section 637.2(a)(1), even without showing that she sustained any "amount" of monetary "damages"— which are trebled—as a result of that injury, *id.* § 637.2(a)(1)(c). Again, this reading is the only coherent interpretation that gives effect to the words that the legislature selected. *See id.*; *see also Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 688 (N.D. Cal. 2021) (noting that legislature's use of certain language in one provision indicates that use of different language elsewhere was intentional).

- 5 -

to allege that she was even aware of, accessed, or interacted with the chat function.[6] By failing to plead facts establishing a factual nexus between her and the chat feature, Plaintiff fails to allege facts plausibly showing how the feature injured her. Although the complaint alleges that unnamed, unknown "visitors often share highly sensitive personal data with Defendant via the website chat feature" in "conversations," Compl. ¶¶ 11, 14, nowhere does Plaintiff allege that *she* is among those generic visitors. In other words, Plaintiff is no different from an amusement park guest attempting to bring claims for an incident on a rollercoaster on which she never rode. This mile-wide hole in Plaintiff's complaint sinks her claims and this Court's jurisdiction. This Court should dismiss her complaint based on this deficiency alone.

Even if Plaintiff alleged that she accessed the chat feature—which she did not—she still fails to plead the requisite injury. Specifically, Plaintiff fails to allege the material circumstances of any interactions with the feature or facts plausibly establishing whether any injury resulted. For example, she does not allege that she typed anything into the chat feature, let alone that she typed anything private or sensitive into it. Plaintiff's failure to plead facts plausibly establishing injury caused by any (non-existent) interaction is an independently sufficient ground for dismissal.

Plaintiff's complaint must be dismissed because it does not allege facts showing that Hot Topic ever invaded her privacy or injured her. *See Graham*, 533 F. Supp. 3d at 835 (dismissing complaint asserting CIPA claims based on website plugin because "the plaintiffs do not have a private right of action" as required under CIPA); *Saleh*, 562 F. Supp. 3d at 521–23 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) (same); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) (same).

---

[6] Indeed, Hot Topic's search of its records yielded no evidence that Plaintiff ever interacted with the chat feature. If Plaintiff's claims survive this Motion, Hot Topic will promptly file a motion for summary judgment demonstrating that her CIPA claim fails for lack of any evidence that she used the chat feature at issue in this case.

**B.     Plaintiff's Failure to Allege When Conduct Occurred Warrants Dismissal.**

Plaintiff fails to state a claim because she neglects to allege facts regarding when any relevant conduct occurred. "Courts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (collecting cases in Ninth Circuit and dismissing CIPA claims under Rule 12(b)(6)). "Under . . . CIPA, the applicable statute of limitations is one year." *Id.* at 134. "Without any reference to when the alleged misconduct occurred, [a plaintiff's] allegations fail to state a plausible claim for relief." *O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*, No. C10-0941 TEH, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010); *see Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868 (Ct. App. 1980) (concluding that complaint asserting CIPA claim had "major defect" where it "failed to allege" date that claim accrued in relation to statute of limitations); *see also* Fed. R. Civ. P. 8(a), 12(b)(6). Thus, to proceed with this action, Plaintiff must establish that her claims are timely.

Plaintiff fails to do so. Her complaint exists in a temporal vacuum. It references no day, month, year, or decade, nor another date or marker of time relevant to the accrual of her claims. All that the complaint states is: "Within the limitations period, Plaintiff visited Defendant's website." Compl. ¶ 16. That conclusory statement does not allow Plaintiff to barge through the courthouse doors and impose significant costs related to discovery and summary judgment motion practice.

*First*, Plaintiff's complaint must be dismissed because it fails to allege any *fact* that would allow this Court to plausibly infer that her claims are timely. The complaint's lone temporal statement constitutes a *legal* conclusion: whether the statute of limitations has been satisfied. It is bereft of any factual matter to support

1    that legal conclusion. Yet that is precisely the point of pleading.[7]

2        *Second*, even if this Court could credit the conclusory phrase "within the

3    limitations period" as an allegation of a fact—which it is not—it still falls short. That

4    is because the complaint fails to allege that, "during the limitations period," Plaintiff

5    used the website's *chat function* or exchanged any private information.

6        *Third*, Plaintiff may not cunningly plead around the reality that her claim falls

7    outside the limitations period by omitting temporal factual content. That duplicitous

8    contrivance would reward plaintiffs who omit the core, material facts that bar their

9    claims—perhaps to bilk settlement dollars from defendants—while punishing

10   plaintiffs who display candor. *Compare Brodsky v. Apple Inc.*, No. 19-CV-00712-

11   LHK, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) (dismissing CIPA claims

12   as "time-barred" where plaintiff pleaded conduct date outside limitations period), *with*

13   *Brodsky*, 445 F. Supp. 3d at 136 (dismissing CIPA claims for failure to plead when

14   conduct occurred). This Court should not greenlight that absurd result, allowing an

15   artful pleader to open the floodgates to discovery and motion practice needed to ferret

16   out and adjudicate a fact that Plaintiff could allege with a simple keystroke.

17       In the interests of fairness and efficiency, this Court should dismiss Plaintiff's

18   failure to plead when any purportedly unlawful conduct occurred.

19   ## C.    Plaintiff Cannot Meet Her Burden to Prove Non-Consent.

20       The complaint fails to state a claim under either Section 631 or Section 632.7

21   of CIPA because Plaintiff fails to demonstrate her lack of consent to the conduct

22   underlying her claims. Non-consent is an essential, express requirement for a claim

23   under Section 631 and Section 632.7. *See Nei v. Hanson*, No. 12-CV-01685-

24   BAS(JLB), 2016 WL 4886933, at *4 (S.D. Cal. Sept. 15, 2016) (noting plaintiff's

25

26   ---
     [7] This legal assertion is also impossible to evaluate because it takes no position on
27   which limitations period applies and whether, if at all, it has been tolled. Plaintiff may
     believe that a 10-year limitations period applies as a matter of law, but what if Plaintiff
28   is wrong on the law, and the limitations period is in reality shorter? Without alleging
     any facts, the complaint is inscrutable on this point.

burden under CIPA to show lack of consent); *see also* Section 631 ("without the consent of all parties to the communication"), 632.7 (same). "Consent generally defeats privacy claims . . . because a party that consents to having information collected has no reasonable expectation of privacy." *Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (evaluating consent in relation to Section 631 claim). Further, a party cannot claim injury for something to which she consented. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016). "Consent may be express or may be implied in fact from the 'surrounding circumstances.'" *Nei*, 2016 WL 4886933, at *3 (citation omitted). Here, Plaintiff has not satisfied the non-consent element, whether looking to the face of the complaint or considering the core documents it places at issue.

## 1.    *The Complaint Fails to Adequately Allege Non-Consent.*

The face of the complaint fails to allege facts showing that she did not consent to any conduct at issue. For example, her allegations supporting the Section 632.7 count omit any allegations whatsoever regarding her lack of consent. *See* Compl. ¶¶ 31–36. Similarly, her sole allegation supporting non-consent under the Section 631 count is entirely conclusory, simply stating a legal conclusion regarding the consent element rather than facts to support it. Compl. ¶ 29 ("Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions."). Putting aside conclusory allegations regarding what Hot Topic did or did not tell Plaintiff, Compl. ¶ 17, or other class members, Compl. ¶ 18, Plaintiff fails to make fact allegations regarding her *own* conduct as relevant to whether she consented.

Moreover, even if general allegations of non-consent might otherwise suffice, Plaintiff does not satisfy the non-consent element due to the nature of the communications. The Supreme Court of California has explained that "[t]he circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it

recorded by the intended recipient—recordation would be expected with a facsimile or text transmission, for example." *Smith*, 483 P.3d at 875. So, too, here. The communications at issue would be text messages entered into the "chat feature" on Hot Topic's website. *See* Compl. ¶ 11. That exchange of written text necessarily records communications and automatically creates a transcript tracking them. A text conversation effectively *is* a recorded transcript. Thus, it is implausible that Plaintiff did not consent to Hot Topic receiving, recording, and creating a transcript of any communications she sent. *See* Section 632.7 (targeting party who "intentionally records" communication without consent); Section 631(a) (targeting party who "read[s]" or "learn[s] the contents or meaning of any message" without consent).

As to Gladly, Plaintiff also necessarily consented to any other party to the chat feature receiving her communications. *See Portillo v. ICON Health & Fitness, Inc.*, No. 219CV01428ODWPJWX, 2019 WL 6840759, at *3 (C.D. Cal. Dec. 16, 2019) ("[B]y sending a communication over facsimile, a sender is essentially consenting to recording by the equipment associated with the facsimile number used," such that there is no "violation of [CIPA] because the recording is intertwined with the receipt of the communication" (emphasis omitted)). As discussed below, Gladly is an extension of, and provides a tool or service to, Hot Topic. Plaintiff alleges no facts establishing that it would be reasonable for her to assume that only Hot Topic, Inc. would receive her communications. Absent more facts, it is implausible that Plaintiff so carefully calibrate her consent to permit only to Hot Topic, Inc. to receive her communications when she freely hit send (assuming, of course that she actually visited the website and interacted with Hot Topic's chat feature, which is not even alleged in the Complaint).

### 2.    *The Website Shows That Plaintiff Impliedly Consented.*

Even if the face of the complaint adequately alleged non-consent (which it does not), the website central to Plaintiff's complaint establish that she did in fact impliedly

consent. "Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states' wiretapping statutes and related claims." *Silver v. Stripe Inc.*, No. No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing Section 631 claim with prejudice); *Smith v. Facebook, Inc.,* 745 F. App'x 8 (9th Cir. 2018) (holding that agreement to Facebook's terms and policies defeated Section 631 claim). Indeed, "[t]he typical case [of implied consent] involves the user's continued use of a communication device or system after receiving notice that his or her communications may be intercepted." *Negro v. Superior Ct.,* 179 Cal. Rptr. 3d 215, 224 (Cal Ct. App. 2014), *as modified* (Nov. 18, 2014).

Because Hot Topic's public website—including its privacy policy and chat feature—is central to Plaintiff's complaint, this Court may properly consider these core materials in resolving the present motion to dismiss.[8] The website and privacy policy demonstrate that Plaintiff impliedly consented to the alleged conduct at issue.

*First*, Hot Topic employed a pop-up box that instructed anyone navigating to its website via computer or mobile device to "please visit our Privacy Policy." *See* RJN, Ex. 5 at p. 3, HotTopic.com Automatic Pop-Up). The underlined style for the Privacy Policy clearly connoted that its substance was located at the embedded hyperlink and accessible by a simple click. *See id.* Thus, any visitor to the Hot Topic website, including Plaintiff, received notice of the Privacy Policy. *See In re Facebook,*

---

[8] *See* RJN, filed concurrently herewith; *see also*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation-by-reference "doctrine prevents plaintiffs from . . . omitting portions of . . . documents that" "doom . . . their claims"); *Garcia v. Apple Seven Servs. San Diego, Inc.*, No. 20-CV-02385-BAS-MDD, 2021 WL 3725921, at *2 (S.D. Cal. Aug. 20, 2021) ("Plaintiff incorporates Defendants' website into the Complaint."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *6 (N.D. Cal. Sept. 26, 2013) ("[S]ubjects of judicial notice when ruling on a motion to dismiss include . . . publically accessible websites"); *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (affidavits beyond complaint did not convert Rule 12(b)(1) motion into summary judgment motion).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) ("California case law makes it quite easy to incorporate a document by reference," requiring only that a viewer be "guided . . . to the incorporated document," with "terms . . . easily available").

In addition, Plaintiff implicitly agreed to the Privacy Policy by continuing to use the website despite the disclosures. To ascertain Plaintiff's consent to the Privacy Policy, courts ask "whether the website puts a reasonably prudent user on inquiry notice of the terms." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1177 (9th Cir. 2014). Here, not only would a visitor to the website, including Plaintiff, see the Privacy Policy Pop-Up (RJN, Ex. 5 at p. 3), but they would also see the link to the Privacy Policy on the Hottopic.com website, which was located in very close visual proximity to the link to the chat feature. *See* RJN, Ex. 2. Moreover, the link to the chat feature itself stated, "Reach *us* via" the chat, suggesting that a visitor might communicate with multiple persons or entities. *See id.* As the link previewed, upon opening the chat feature, a visitor is immediately alerted with a notice in clear and conspicuous text that declares that the chat feature is "Powered by Gladly." *See* RJN, Ex. 4.  Thus, Hot Topic provided at least inquiry notice that Gladly would be a party to the chat feature and any communications within it. Thus, a "reasonably prudent" user had at least inquiry notice. *See Nguyen*, 763 F.3d at 1177.

Further, the substance of the Privacy Policy provided adequate notice that Hot Topic's website could use tools or services like those from Gladly. *See* RJN Ex. 3. The relative brevity of the Privacy Policy confirms that Hot Topic did not bury material terms. *Id.*; *Javier*, 2021 WL 940319, at *4. The top of the Privacy Policy disclaims that it:

> [D]escribes the types of information Hot Topic, Inc. and its affiliates . . . collect when you . . . [v]isit a Hot Topic Brands website [and] explains how Hot Topic Brands . . . may use and disclose such information . . . By using the [website], you agree to the collection, use, and disclosure of your information as described in this Privacy Policy . . . If you do

- 12 -

not agree, stop accessing or using the [website].

*Id.* at Intro. Hot Topic further disclosed that it "collect[s] information that identifies, describes, or is reasonably being capable of being associated with you," including "internet network activities, such as how you use our [website]." *Id.* at § 1. Thus, Plaintiff was on notice that Hot Topic would collect, use, and disclose her information. *See Id.* at Intro., § 1.

Plaintiff was also specifically on notice that any of her interactions with the chat feature could be recorded[9] and shared with third parties.[10] Plaintiff was on notice that Hot Topic "share[s]" visitors' information with "[s]ervice providers, including businesses, professionals, or technical support providers to help us operate our business and the [website] by doing things like . . . analyzing sales data to help us develop new products." RJN, Ex. 3 at § 4. And even if all of these disclosures were insufficient, Hot Topic went so far as to include a disclaimer *in the chat function itself* that this specific feature was "Powered by Gladly." *See* RJN, Ex. 4. If Plaintiff used the chat feature—which she has not alleged, but must for her claims to survive—then she cannot plausibly deny knowing her communications could be shared not only with third parties, but with "Gladly" in particular. *See Smith*, 483 P.3d at 875 ("reasonable inference" that party sending "text transmission" would "expect" it to be recorded).

For these reasons, Plaintiff impliedly consented to Hot Topic collecting and sharing her information, including communications in the chat feature with Gladly.

In sum, Plaintiff's failures to show (i) any injury, (ii) when relevant conduct occurred, and (iii) non-consent are each independently sufficient grounds to dismiss

---

[9] *See* RJN, Ex. 3 at § 2 ("We collect your Personal Information from . . . [(1)] You, when you . . . request information from us[;] . . . request customer support; communicate with or contact us; or otherwise use the [website]," and (2) "[W]ebsite interaction technologies, when you use our Sites"); *Smith*, 483 P.3d at 875 n.4.
[10] RJN, Ex. 3 at § 3 (user information supports "a variety of features on our [website]," "such as . . . communication features, user-generated content functions, and interactive features"; to "connect [you] with third party services"; to "[a]nalyze and understand how you use and interact with our [website] to develop new products or services"; to "[i]mprove user experience and enable customizations"; or to "[p]rovide you with targeted offers and advertising").

the complaint in its entirety. Nevertheless, if this Court disagrees, it still must dismiss her Section 631(a) and Section 632.7 CIPA claims under Rule 12(b)(6) for failing to satisfy the additional, necessary elements discussed below.

### D.   The Complaint Fails to Plead a Violation of Section 631(a).

Plaintiff fails to state a claim under Section 631(a), which "creates liability 'for three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.,* 583 P.2d 737, 741 (Cal. 1978); Cal. Penal Code § 631(a). "Section 631 contains two separate clauses dealing with wiretapping activities, the first making it an offense to '(tap), or (make) any unauthorized connection' with telephone or telegraph wires or equipment and the second forbidding the interception of messages in transit or during transmission and reception 'without the consent of all parties.'" *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (citation omitted). "The key phrases, 'taps' and 'makes any unauthorized connection,' are vague and nowhere defined." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Ct. App. 1975). The complaint asserts in a conclusory manner that Hot Topic violated "all three" clauses of Section 631. Compl. ¶ 25. At the outset, Plaintiff's Section 631 claim is exceedingly difficult to address because the barebones complaint fails to elaborate *how* Hot Topic violated any of these clauses. In any event, the Section 631 claim fails.

*First*, Plaintiff's claim cannot get past the starting gate because—as discussed above—she does not allege that she ever accessed or interacted with the chat function. Without that foundational factual predicate, no allegations plausibly support the notion that Hot Topic or Gladly "wiretapped" or "eavesdropped" on a chat conversation with Plaintiff. Thus, the complaint fails to state a claim under any clause of Section 631(a).

*Second*, the complaint includes only conclusory allegations and an unsupported legal conclusion regarding the technical predicates of Section 631(a)'s first clause. *See* Compl. ¶ 27. That "clause applies only to wiretapping of a '<u>telegraph or telephone wire, line, or cable</u>'" "within" California by means of specified tools, Section 631, and the complaint lacks factual allegations that the wires between anyone's telegraph machine or telephone were tapped in California or elsewhere. *See Mastel v. Miniclip SA,* 549 F.Supp.3d 1129 (2021) (noting "overwhelming weight of authority" adopting this statutory interpretation) (emphasis in original); *Warden*, 99 Cal. App. 3d at 811. Plaintiff cannot satisfy her burden to allege the technological predicates by waiving her hands with conclusory allegations. *Cf.* Compl. ¶ 16.[11] Because the complaint lacks facts establishing that Hot Topic or Gladly tapped a "telegraph or telephone wire, line, or cable" using qualifying tools, any claim under Section 631(a)'s first clause must be dismissed.

*Third*, the complaint fails to allege facts satisfying the technical elements of a claim under Section 631(a)'s second clause. Plaintiff does not allege facts showing that the content of any of her (nonexistent) communications were accessed using specified "instruments" or tools "while the same [was] in transit or passing over" any qualifying "wire, line, or cable" "within" California. *See* Section 631(a) (emphasis added). Plaintiff fails to allege facts establishing how Gladly contemporaneously "read one of [her] communications while it was still in transit, i.e., before it reached its intended recipient"—here, Hot Topic. *Mastel*, 549 F. Supp. 3d at 1137. Plaintiff offers no non-conclusory facts to that effect. *See id.* (dismissing claim under second

---

[11] Plaintiff's reliance on a passing dictum in the Ninth Circuit's unpublished decision in *Javier* does not allege the *facts* necessary satisfy the technical predicates for a Section 631 claim here. *See* Compl. ¶¶ 26–28; *see Javier v. Assurance IQ, LLC,* No. 21-16351, 2022 WL 1744107, at *1 n.** (9th Cir. May 31, 2022). The *Javier* Court narrowly addressed only whether consent can be given retroactively, and had no occasion to address the technology encompassed by Section 631(a) and the factual showing required. In any event, *Javier* expressly disclaims the notion that it is precedent or otherwise binding upon this Court. *See Javier*, 2022 WL 1744107, at *1 n.** (disclaiming opinion as "not appropriate for publication and is not precedent").

clause of Section 631(a)); *Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (same); *Rosenow v. Facebook, Inc.,* No. 19-cv-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing federal wiretap claim). The vague allegation of access in "real time" access does not suffice. *See In re Vizio, Inc., Consumer Privacy Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). Nor are there facts to establish that Gladly contemporaneously accessed the "contents" of any communication. *See Brodsky*, 445 F. Supp. 3d at 127 (dismissing Section 631(a) claim); *Graham*, 533 F. Supp. 3d at 833 (same). Further, "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. App. 3d at 898 (affirming dismissal of Section 631(a) claim). That is especially true in the case of text message exchanges. *See Portillo*, 2019 WL 6840759, at *3 (receiving "a facsimile would not be in violation of the statute because the recording is intertwined with the receipt of the communication").

*Fourth*, to the extent that Plaintiff's Section 631 claim is predicated on Hot Topic providing "recordings" or "transcripts" of any conversations to Gladly after the fact, the claim fails. *See* Compl. ¶¶ 9, 11 28 (alleging that Hot Topic creates transcript recording of conversation, which is "then" data-mined). Section 631 prohibits only contemporaneous dissemination. *Graham*, 533 F. Supp. 3d at 831 ("[S]haring a record is not eavesdropping"). Nothing in Section 631 prohibits Hot Topic from providing any recordings to anyone, including a third party. *Warden*, 99 Cal. App. 3d at 808–09, 811 (rejecting Section 631 claim where party shared recording with third parties).

*Fourth*, the claim under Section 631 fails because Hot Topic is a party to any communication with Plaintiff. Under well-settled precedent applying Section 631, "a party to a communication can record it (and is not eavesdropping when it does)."

- 16 -

*Graham*, 533 F. Supp. 3d at 831.[12] Rather, "only a third party can listen secretly to a private conversation." *Ribas*, 696 P.2d at 640. Here, the complaint alleges that relevant interactions between Plaintiff and HotTopic.com would have involved Hot Topic as a party.[13] Thus, Plaintiff's claims under the first and second clauses of Section 631 must fail.

*Fifth*, Plaintiff's failure to plead a violation of the first and second clauses of Section 631(a) precludes any claim under the third clause. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("For a clause 3 violation, . . . Plaintiffs must establish that the information at issue—here, the recordings and transcripts that Defendants allegedly analyzed—was obtained through a violation of the first or second clauses"). Any claim against Hot Topic under the third clause for aiding wiretapping perpetrated by Gladly fails for the reasons above and also because Gladly "is an extension of" Hot Topic here. *Graham*, 533 F. Supp. 3d at 832. Because Gladly merely "provides a tool . . . that allows" Hot Topic to "analyze its own data in aid of [Hot Topic's] business," Gladly "is not a third-party eavesdropper." *Id.* As the complaint alleges, "It's [Hot Topic's] data," used only by Hot Topic for the exclusive "benefit of" Hot Topic. Compl. ¶ 12. Thus, Gladly is "like the tape recorder"—or like the telephone company who installed the tape recorder jack—in the California Court of Appeals' decision in *Rogers*, 52 Cal. App. 3d at 897–899. Hot Topic's use of Gladly was not materially different from Rogers' enlisting the telephone company to install the recorder jack or using the tape recorder. The Court of Appeals held that Rogers was not liable under any clause of Section 631. *See id.* at 899. Further, as discussed above, the chat box itself expressly disclaimed that it was "Powered by

---

[12] *See, e.g.*, *Ribas v. Clark*, 696 P.2d 637, 640 (Cal. 1985) ("[S]ection 631 does not penalize the secret recording of a conversation by one of the participants"); *Warden*, 99 Cal. App. 3d at 811 (Section 631's "second clause clearly has no application to participant recording"); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Ct. App. 1975).
[13] *See* Compl. ¶ 11 ("Defendant has covertly embedded code into its chat feature that automatically records and creates transcripts of all such private conversations."), ¶ 14 ("Defendant secretly records those conversations"), ¶ 17 ("Defendant was secretly wiretapping or recording their communications").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Gladly." Gladly would at most have been a party to the conversation, not a secret third party monitoring it surreptitiously. *See id.*; *Ribas*, 696 P.2d at 640 n.3 ("Section 631 was aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties."). Thus, Plaintiff fails to state a claim under the third clause of Section 631.

*Finally*, the complaint fails to adequately allege facts showing that Gladly actually listened in on any conversations contemporaneously. The complaint's repeated, factually unsupported uses of the term "eavesdrop" when describing Gladly's role, *see* Compl. ¶ 28, cannot be credited because the term is conclusory and states a legal conclusion without alleging facts to plausibly support it. At most, the complaint alleges that Hot Topic "embed[ded] code into Defendant's website chat function that *enables* Gladly" to receive transcripts from Hot Topic. Compl. ¶ 11. But enabling a feature is different from another party utilizing it. The complaint lacks sufficient factual content to establish that Gladly listened to any conversations live.

### E.    The Complaint Fails to Plead a Violation of Section 632.7.

Plaintiff fails to state a claim under Section 637.2. Thirty years ago, "[r]esponding to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones," "the Legislature prohibited" recording a communication "involving a cellular phone or a cordless phone." *Smith*, 11 Cal. 5th at 191 (citation omitted). Specifically, the legislature created liability for:

> Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone

Cal. Penal Code § 632.7(a). As construed by the Supreme Court of California, "the interception or receipt of a covered communication is not so much a discrete subject of consent as it is a description of the circumstances in which the prohibited act

of *recordation* without proper consent may occur." *Id. Smith*, 483 P.3d at 875. For the following reasons, Plaintiff's allegations fall short.

*First*, Plaintiff fails to allege that she used the chat feature. Without that predicate, she does not and cannot show that her communications were "intercepted" or "received and recorded" under Section 632.7. And even if she accessed the chat function, Plaintiff fails to allege that she ever typed anything into it for Hot Topic or Gladly to intercept or receive and record. These fundamental pleading failures defeat her claim under Section 632.7(a).

*Second*, to the extent that Plaintiff seeks to ground her claim on some other "communication" with the Hot Topic website beyond the chat feature, she does not even suggest what such a communication might have been, let alone plausibly allege facts on which a violation is grounded.

*Third*, Plaintiff fails to allege that, during any interaction with the Hot Topic website, she used a technology that satisfies the technical elements of a claim under Section 632.7. Plaintiff alleges only that, "[w]ithin the statute of limitations period, Plaintiff visited Defendant's website." Compl. ¶ 16. She does not allege how she did so. Instead, the complaint includes a vague and abstract proposition that, "[l]ike anyone who accesses the internet, Plaintiff . . . use[s] smart phones . . . , desktop computers, and/or wifi-enabled laptops" as a general matter. Compl. ¶ 16. This allegation is plainly insufficient. For example, Section 632.7 "does not apply when all parties to a communication use landline phones." *Smith*, 483 P.3d at 880. Thus, if Plaintiff used a "desktop computer[]" to access the Hot Topic website, *see* Compl. ¶ 16, there would certainly be no "communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone." *See* Section 637.2. The only reasonable assumption in light of the complaint's factual void is that Hot Topic—a national

retailer with a sophisticated e-commerce website—did *not* operate its website using "cordless telephones" or "cellular radio telephones." *See* Section 637.2(a); *see also* Section 637.2(c)(1), (2) (defining these telephones).

*Fourth*, this Court should reject any attempt by Plaintiff to shoehorn her claim concerning code on an internet website's chat feature into Section 632.7's clause concerning "a landline telephone." *See* Section 632.7. This Court should "scrutinize the actual words of [this] statute, giving them a plain and commonsense meaning." *Google Location*, 428 F. Supp. 3d at 193. Here, the complaint is bereft of allegations that Hot Topic and Gladly actually used "a landline telephone" to communicate with Plaintiff. Nor is there any allegation to support Hot Topic used even dial-up internet using a telephone line. Perhaps acknowledging Section 632.7's plain language simply does not apply here, Plaintiff's complaint *misquotes* it for this Court. Whereas Section 637.2 refers to actual "telephones" only, Plaintiff purports to quote it as covering—more broadly—"'cellular radio telephony' and/or 'landline telephony' as defined by Section 632.7." Compl. ¶ 32. Plaintiff may well wish that, when enacting this statute in 1992, the legislature had chosen more capacious language that would cover modern technologies beyond "telephones" (e.g., to cover optic fiber, coaxial cables, or satellites). However, this Court must construe the statute as written, especially in light of the legislature's willingness to enact new provisions specifically tailored for new technologies. *Smith*, 483 P.3d at 877–89. The plain language applies only between one "telephone" and another "telephone," Section 632.7(a), and Plaintiff does not (and cannot) allege Hot Topic used a telephone.

*Fifth*, the plain language of the statute—passed before the era of commonplace internet use—applies only to an "interception or reception" of a "transmission" that occurs "*between*" the telephones. Section 632.7 (emphasis added). Here, there is no allegation that any such interception or reception occurred *before* Plaintiff's transmission actually reached Hot Topic's phantom telephone, not afterwards.

- 20 -

*Sixth*, even if the statute's plain language did not preclude Plaintiff's claim for the reasons above, this Court should apply the rule of lenity to accomplish the same result. The "rule of lenity applies" here because CIPA must be "interpret[ed] . . . consistently," regardless of whether a court "encounter[s] its application in a criminal or noncriminal context." *Leocal v. Ashcroft,* 543 U.S. 1, 11 n.8 (2004); *Warden,* 160 Cal. Rptr. at 475 n.3 (with respect to Section 631, "[s]ince we are dealing with a penal statute, language so ambiguous should be interpreted in favor of the alleged violator"). "'The rule of lenity' 'generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *Smith*, 483 P.3d at 880.

Thus, in construing whether CIPA and Section 632.7 specifically—which by its title and terms is aimed at "cellular telephones"—criminalizes the operation and construction of Hot Topic's website, this Court should remain mindful of the criminal consequences flowing from whatever interpretation it adopts. Plaintiff's radically expansive interpretation would criminalize routine and ubiquitous website features and interactions all across the internet. For example, over *nine million* live websites use Amazon Web Services to host their websites.[14] Endorsing Plaintiff's theory that Amazon and or other web hosts are secret third parties risks criminalizing tens of millions of websites. Given these catastrophic criminal consequences, the Court should err on the side of lenity when construing the scope of liability under CIPA.

*Seventh*, CIPA's legislative history and principles of statutory interpretation demonstrate that Plaintiff's claim's fail.   "[W]hen statutory language does not explicitly address a subject and the language is potentially susceptible of differing constructions, we must presume the Legislature intended reasonable results consistent with its expressed purpose." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591 (2020), *as modified on denial of reh'g* (Oct. 23, 2020), *review denied* (Jan. 20, 2021). Section

---

[14]   "AWS Market Share: Revenue, Growth & Competition," Kinsta, https://kinsta.com/aws-market-share/ (last accessed Oct. 27, 2022).

632.7 is focused on intercepting and recording conversations involving a cellular telephone or cordless telephone. Hot Topic is aware of no evidence that the legislature intended this provision to regulate the enormously more complex arena of website visitors' mouse-click and text-based interactions with website features. In fact, the legislature omitted from Section 632.7 additional protective elements found in neighboring provisions of CIPA.[15]

The legislature is perfectly capable of regulating data privacy on the internet using appropriately tailored statutes. It has done so on numerous occasions, both by adding new provisions to CIPA for emerging technologies and also by brand new statutes for the internet era. *See, e.g.*, California Online Privacy Protection Act California (2003); Student Online Personal Information Protection Act (2014); California Consumer Privacy Act (2018); California Privacy Protection Act (2020).

This Court should avoid endorsing a radical interpretation that would effectively appoint plaintiffs' firms and judges as de-facto regulators of internet traffic and the granular details of website construction all across the country—while shackled to a statute intended only to protect the then-emergent technologies of pre-smartphone "cellular radio telephones" and "cordless telephones." *Smith*, 11 483 P.3d at 879 (parsing legislative intent for Section 632.7). That role is reserved for the elected legislature and regulatory bodies. Relatedly, given the many companies who conduct e-commerce in California; the exponentially larger number of web services they enlist from other actors; and the number of visitors interfacing with all of these parties, Plaintiff's broad interpretation of Section 632.7 would burden interstate commerce and raise constitutional concerns under the dormant Commerce Clause of

---

[15] *See Smith*, 483 P.3d at 875; Sections 632 (concerning "eavesdropping upon or record[ing]" a *confidential* communication"), 632.5 (applying only to "*maliciously* . . . intercept[ing], receiv[ing], or assist[ing] in intercepting or receiving a [telephone] communication" involving "cellular telephones"), 632.6 (same "*malicious*[]" requirement cordless telephone communication); *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 776, 41 P.3d 575 (2002) (noting that legislature "chose to protect all such conversations from malicious or intentional eaves-dropping or recording, rather than protecting only conversations where a party wanted to keep the content secret").

the U.S. Constitution. *See Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177–78 (9th Cir. 2011) (describing "categories of state regulation burdening interstate commerce"). To avoid these concerns, the Court should not endorse Plaintiff's attempt to create a loophole in a thirty-year-old statute and criminalize Hot Topic's website and millions of others.

## V.   **CONCLUSION**

For the foregoing reasons, Hot Topic respectfully requests that this Court grant its motion and dismiss the complaint with prejudice.

Dated:  November 11, 2022

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

Joshua Briones
E. Crystal Lopez

*Attorneys for Defendant*
*HOT TOPIC, INC.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT