1  Joshua Briones (SBN 205293)
   jbriones@mintz.com
2  E. Crystal Lopez (SBN 296297)
   eclopez@mintz.com
3  **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
   2049 Century Park East, Suite 300
4  Los Angeles, CA 90067
   Telephone:  (310) 586-3200
5  Facsimile:  (310) 586-3202

6  Attorneys for Defendant
   HOT TOPIC, INC.

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10 | ARISHA BYARS, individually and on behalf of all others similarly situated, | Case No.  5:22-cv-01652-JGB-SPx

11 |                                                      | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

12 |                          Plaintiff,                  | **DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S**

13 |         v.                                           | **FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.**

14 | HOT TOPIC, INC., a California corporation; and DOES 1 through 25, inclusive, | **12(b)(6)**

15 |                                                      | Case Assigned to Hon.  Jesus G. Bernal Courtroom 1

16 |                          Defendants.                 |

17 |                                                      | Date:       January 23, 2023
   |                                                      | Time:       9:00 a.m.
18 |                                                      | Location:   3470 Twelfth Street
   |                                                      |             Courtroom 1
19 |                                                      |             Riverside, CA 92501

20 |                                                      | Complaint Filed: September 20, 2022
   |                                                      | Trial Date:      Not Yet Set

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT
TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................1

II.     BACKGROUND AND PLAINTIFF'S ALLEGATIONS.......................2

III.    LEGAL STANDARD ................................................................4

IV.     ARGUMENT............................................................................5

      A.      Plaintiff's Repeated Failure to Allege Injury Is Fatal......................5

           1.      Injury Is Required Under CIPA.............................................5

           2.      Plaintiff Again Fails to Allege Injury Required Under CIPA. ...................................................................6

      B.      Plaintiff Fatally Fails Again to Allege When Conduct Occurred....8

      C.      Plaintiff Cannot Meet Her Burden to Prove Non-Consent............10

           1.      The Amended Complaint Again Fails to Allege Non-Consent. ...................................................................10

           2.      The Website Shows That Plaintiff Impliedly Consented. ...12

      D.      The Amended Complaint Fails to Plead a Violation of Section 631(a). ...................................................................16

      E.      The Amended Complaint Fails to Plead a Violation of Section 632.7...................................................................20

      F.      The Amended Complaint Should Be Dismissed With Prejudice ..25

V.      CONCLUSION ........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................4

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020)......................................8, 10, 18

*Brodsky v. Apple Inc.*,
    No. 19-CV-00712-LHK,
    2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ................................10

*Epstein v. Wash. Energy Co.*,
    83 F. 3d 1136 (9th Cir. 1996) ......................................................5

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002) ..............................................................23

*Garcia v. Apple Seven Servs. San Diego, Inc.*,
    No. 20-CV-02385-BAS-MDD,
    2021 WL 3725921 (S.D. Cal. Aug. 20, 2021)..................................13

*Gruber v. Yelp Inc.*,
    55 Cal. App. 5th 591 (2020) .......................................................23

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019)...........................................13

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020)...........................................19

*In re Google Inc.*,
    No. 13-MD-02430-LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)..................................13

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019)........................................5, 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT
TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*In re Tsung Yu Chien*,
   No. CV 19-2131 JGB,
   2020 WL 3965031 (C.D. Cal. Apr. 2, 2020) ........................................................ 5

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................ 18

*Ion Equip. Corp. v. Nelson*,
   110 Cal. App. 3d 868 (Ct. App. 1980) ............................................................... 9

*Javier v. Assurance IQ, LLC*,
   No. 4:20-cv-02860-JSW,
   2021 WL 940319 (N.D. Cal. March 9, 2021) ................................................... 14

*Javier v. Assurance IQ, LLC*,
   No. 21-16351,
   2022 WL 1744107 (9th Cir. May 31, 2022) ..................................................... 17

*Johnson v. Blue Nile, Inc.*,
   No. 20-cv-08183-LB,
   2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ...................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ........................................................................... 13

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ........................................................................... 24

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004) ............................................................................................ 22

*Lopez v. Apple, Inc.*,
   519 F. Supp. 3d 672 (N.D. Cal. 2021) ............................................................... 6

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (2021) ..................................................................... 16, 18

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) .......................................................................... 8

*Negro v. Superior Ct.*,
   179 Cal. Rptr. 3d 215 (Cal Ct. App. 2014), (Nov. 18, 2014) ........................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT
TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Nei v. Hanson*,
  No. 12-CV-01685-BAS(JLB),
  2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ..................................................10

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ....................................................................13, 14

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*,
  No. C10-0941 TEH,
  2010 WL 2198203 (N.D. Cal. May 28, 2010).....................................................8

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016)...............................................................8

*Pac. Merch. Shipping Ass'n v. Goldstene*,
  639 F.3d 1154 (9th Cir. 2011) ...........................................................................24

*Portillo v. ICON Health & Fitness, Inc.*,
  No. 219CV01428ODWPJWX,
  2019 WL 6840759 (C.D. Cal. Dec. 16, 2019)...............................................12, 18

*Quigley v. Yelp, Inc.*,
  No. 17-cv-03771-RS,
  2018 WL 7204066 (N.D. Cal. Jan. 22, 2018).....................................................18

*Red v. Gen. Mills, Inc.*,
  No. 215CV02232ODWJPR,
  2015 WL 9484398 (C.D. Cal. Dec. 29, 2015)......................................................8

*Ribas v. Clark*,
  696 P.2d 637 (Cal. 1985) .............................................................................19, 20

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (Ct. App. 1975) .............................................16, 18, 19, 20

*Rosenow v. Facebook, Inc.*,
  No. 19-cv-1297-WQH-MDD,
  2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ....................................................18

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*,
  343 F.3d 1036 (9th Cir. 2003) ...........................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT
TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*Silver v. Stripe Inc.*,
No. 4:20-cv-08196-YGR,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ...................................................12

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................................................*passim*

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...........................................................4

*Tavernetti v. Superior Ct.*,
583 P.2d 737 (Cal. 1978)................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)......................................................................13

*Thurston v. Omni Hotels Mgmt. Corp.*,
69 Cal. App. 5th 299 (2021), (Dec. 22, 2021)......................................6

*Vaughan v. Biomat USA, Inc.*,
No. 20-CV-04241,
2022 WL 1266389 (N.D. Ill. Apr. 28, 2022)........................................1

*Warden v. Kahn*,
99 Cal. App. 3d 805 (Ct. App. 1979) ............................................16, 17, 19, 22

*Yale v. Clicktale, Inc.*,
No. 20-cv-07575-LB,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)......................................8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ............................................7

**Statutes**

Cal. Penal Code § 631 ................................................................*passim*

Cal. Penal Code § 632.7 ................................................................4, 21, 22

Cal. Penal Code § 637.2 ................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................8, 9

- vi -

Fed. R. Civ. P. 12 ............................................................................8, 9, 15

Fed. R. Civ. P. 15 ....................................................................................24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT
TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

## I.   **INTRODUCTION**

Plaintiff and her law firm are professional litigants searching aimlessly for a defendant, a legal theory, and money from law-abiding companies. This case is the latest in a series that Plaintiff has brought in recent months against numerous companies alleging their e-commerce websites violate the California Invasion of Privacy Act ("CIPA").[1] Here, Defendant Hot Topic, Inc. ("Defendant" or "Hot Topic")[2] filed a motion to dismiss cataloging fatal deficiencies in Plaintiff's original complaint. In lieu of an opposition brief, Plaintiff filed an Amended Complaint ("FAC") that renders her claims even *less* coherent. For example, it jettisons any reference to the third party (Gladly) on which the purported wiretapping and eavesdropping in the first complaint focused, substituting a new non-party entity whose nexus to her claims she does not even bother to explain.

Plaintiff's claims in her vaguer FAC remain dead on arrival. She again fails to allege the following essential elements: (i) any injury, (ii) when alleged conduct occurred, and (iii) other predicates to qualify for the wiretapping and cellular telephone statutes she invokes. In addition, the FAC and the website it incorporates by reference demonstrate that Plaintiff impliedly consented to her (unalleged) written communications being recorded and shared with Hot Topic and any vendor. Remarkably, Plaintiff defeats her own claims—of non-consensual invasion of

---

[1] Plaintiff has filed at least six (6) nearly identical lawsuits in the last three months. *See, e.g.*, *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-1456 (C.D. Cal. 2022); *Byars v. Rite Aid Corp.*, No. 5:22-cv-1377 (C.D. Cal. 2022); *Byars v. The Goodyear Tire and Rubber Co.*, No. 5:22-cv-1358 (C.D. Cal. 2022); *Byars v. Casper Sleep, Inc.*, No. 5:22-cv-01801-JGB-KK (C.D. Cal. 2022); *Byars v. Macy's Inc.*, CIV-SB-2217010 (San Bernardino Super. Ct. Aug. 5, 2022); *Byars v. Whirlpool*, CIV-SB-2215944 (San Bernardino Super. Ct. July 25, 2022). Plaintiff's law firm, Pacific Trial Lawyers, have filed more than 46 similar consumer lawsuits against other companies in the last several months. *See* Request for Judicial Notice ("RJN"), Ex. 6.

[2] The complaint also names "DOES 1 through 25" as defendants, but includes conclusory and facially implausible allegations regarding them. Dkt. 16 ¶¶ 6–7. To the extent that this Court dismisses the claims against Hot Topic, Inc., it should also dismiss them against the "DOES." *See Vaughan v. Biomat USA, Inc.*, No. 20-CV-04241, 2022 WL 1266389, at *2 (N.D. Ill. Apr. 28, 2022) (dismissing privacy claims asserted in complaint that "engages in impermissible group pleading").

privacy—by alleging that she visited Hot Topic's website in order to cause a violation. The Court must dismiss her skeletal FAC with prejudice because it does not—and Plaintiff cannot—state a claim for relief.

The Court should dismiss the FAC with prejudice for the additional reason that endorsing Plaintiff's theory of liability would criminalize millions of websites and ubiquitous webpage features. CIPA is a criminal statute, and the legislature enacted the provisions at issue here to tackle the simple, discrete issue of parties who secretly wiretap, record, and intercept "telephone" conversations. Per their plain language and commonsense, the provisions do not and should not be used to regulate the radically more complex arena of internet traffic and website construction, such as the common practice of enlisting services, tools, and servers from other entities. Judicially blessing Plaintiff's theory would risk breaking the internet.

## II.    **BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Hot Topic is a retailer specializing in clothing, accessories, and music. Hot Topic operates the e-commerce website www.hottopic.com (the "website"), which has an optional chat feature that enables visitors to exchange written messages with Hot Topic's customer service department. *See* FAC, Dkt. 16 ("FAC") ¶¶ 2–3. To view and access the chat feature, visitors must either (i) visit the Hot Topic customer service webpage,[3] or (ii) affirmatively click a link titled "Questions? Reach us via Live Chat" that appears at the bottom of every webpage. RJN, Ex. 2, HotTopic.com (Jan. 1, 2022). Directly next to that link is a link to Hot Topic's Privacy Policy, *id.*, and below the chat link is a disclaimer to all visitors that, "By continuing to use this site, you agree to our Privacy Policy," with a link to the full Privacy Policy. RJN, Ex. 1; *id.*, Ex. 3, HotTopic.com Privacy Policy (Effective Jan. 1, 2020 to Aug. 6, 2022).

If a visitor elects to click either the "CHAT NOW" button or the "Live Chat" link, a box opens on the same webpage. At the bottom of that box is a smaller box

---

[3]   *See* RJN, Ex. 1 (Hot Topic customer service "Contact Us" webpage (https://www.hottopic.com/contactus))

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

titled "Chat with us!" with a link to begin using the chat feature. RJN, Ex. 4. Immediately above that link—in conspicuous, standalone text—is a disclaimer that the chat feature is "Powered by Gladly." *Id.* Gladly is a company whose tool or service the chat feature incorporates. *See* Original Complaint, Dkt. 1 ("Compl.") ¶ 11. Plaintiff's original Complaint centered on Gladly. Sharply pivoting to an entirely new and unclear theory of liability, the FAC strips all references to Gladly and the code it allegedly embedded in the chat feature. *Compare id.*, *with* FAC The FAC adds a single sentence with a conclusory allegation—based on unspecified "information and belief"—that Hot Topic "allows . . . ***Salesforce*** . . . to secretly intercept . . . eavesdrop upon, and store transcripts of Defendant's chat communications with unsuspecting website visitors." Am. Comp. ¶ 12 (emphasis added). Beyond this conclusory and fleeting mention, the FAC fails to reference Salesforce again. FAC The FAC never suggests what or who Salesforce is, its relationship with the parties, or how it connects to Plaintiff or any interactions she might have had with Hot Topic's website.[4]

The FAC provides no information about the nature or circumstances of any interaction between her and Hot Topic, or anyone else. *See generally id.* Plaintiff again fails to allege that she ever accessed, used, interacted with, entered information into, or otherwise communicated with the website chat feature central to her claims. *See generally id.* All that the FAC alleges is that, from an unknown place, in an unknown decade, on an unknown date, at an unknown time, "Plaintiff visited Hot Topic's website, and had a conversation with [Hot Topic]." *Id.* ¶ 18. Plaintiff's FAC alleges no facts regarding what she did upon navigating to the website or anything that happened as a result. *See id.* ¶ 18. She does not allege facts regarding how, why, when, or where any "wiretapping" or "eavesdropping" involving Salesforce or

---

[4] Prior to filing this Motion Hot Topic provided plaintiff's counsel evidence that Salesforce does not receive or store any information from customer chat transcripts. If Plaintiff's claims survive this Motion, Hot Topic will promptly file a motion for summary judgment demonstrating that her CIPA claim fails because Salesforce does not receive or store any information from customer chat transcripts.

another "vendor" might occur. *See generally* FAC The FAC also strips any reference to Hot Topic paying anyone to wiretap or eavesdrop. *Compare id.*, *with* Compl.

Plaintiff now specifies that she used only a smartphone, FAC ¶ 18, without alleging she used it to access the website chat feature or otherwise alleging the nature of any conversation she might have had. Inconsistent with the notion that she used the website chat feature central to this case, *id.* at 1, ¶¶ 12, 38, the FAC references the different and distinct technology of "SMS" cellphone texting. *See id.* ¶ 35.

On September 20, 2022, Plaintiff filed her original Complaint in this Court. Dkt. 1. On September 29, a joint stipulation was entered extending the answer deadline to November 11, and Hot Topic filed a Motion to Dismiss on that date. Dkt. 11.[5] On November 18, without responding to the Motion, Plaintiff filed her FAC reasserting claims under Sections 631(a) and 632.7 of CIPA on behalf of a potential class of persons who visited Hot Topic's website. Dkt. 16; Cal. Penal Code §§ 631, 632.7. The FAC seeks a variety of relief, including $5,000 in statutory damages per CIPA violation. FAC at 10; Cal. Penal Code § 637.2.

## III.  **LEGAL STANDARD**

A complaint must state a "claim showing that the [plaintiff] is entitled to relief." To do so, the plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' [or] 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007). Thus, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001), *opinion*

---

[5] The parties filed the stipulation pursuant to Local Rule 8-3, which states that a stipulation need not be approved by the judge if it does not extend the time for more than 30 days from the date the response would initially have been due.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*amended on denial of reh'g*, 275 F.3d 1187. Similarly, "conclusory allegations of law . . . are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F. 3d 1136, 1140 (9th Cir. 1996).

## IV.   ARGUMENT

### A.   Plaintiff's Repeated Failure to Allege Injury Is Fatal.

Because Plaintiff fails again to allege that Hot Topic injured her, this Court must dismiss her complaint as a matter of law with prejudice.

#### 1.   *Injury Is Required Under CIPA.*

CIPA requires an injury. CIPA is a criminal statute, and it creates a private right of action only for a person "who has been *injured* by" a violation of one of its provisions. Cal. Penal Code § 637.2 (emphasis added). This Court must give legal effect to the legislature's choice to include this plain and unambiguous language imposing an injury requirement. "Federal courts apply California rules of statutory construction when interpreting a California statute." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (citation omitted). "The touchstone of statutory interpretation is the probable intent of the Legislature," and the "first step in determining that intent is to 'scrutinize the actual words of the statute, giving them a plain and commonsense meaning.'" *Id.* (citations omitted). If the legislature had intended for a technical violation to enable any person to bring a claim (which it did not), the legislature would have omitted the following language as superfluous: "any person ~~who has been injured by a violation of [CIPA]~~ may bring an action against the person who committed the violation." *See* Cal. Penal Code § 637.2 (strikethrough added); *In re Tsung Yu Chien*, No. CV 19-2131 JGB, 2020 WL 3965031, at *2 (C.D. Cal. Apr. 2, 2020) (courts avoid "interpretations that nullify the effect of the words"). Thus, the plain language of the statute controls and requires Plaintiff to allege injury, separate from a technical violation, as a core requirement under CIPA.

The injury requirement reflects sound policy. CIPA is a criminal statute.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Concerns regarding overzealous criminal enforcement are mitigated because the body politic entrusts prosecutors to exercise their discretion responsibly to serve the public interest. Private citizens and firms are not accountable in this manner.[6] Indeed, if no injury were required to bring a claim, CIPA's statutory penalties would strongly incentivize harassment of companies for even for the most *de minimis*, technical, and harmless violations.[7] Thus, the legislature's decision to require injury distinct from a violation of CIPA's provisions is wise public policy.

### 2. *Plaintiff Again Fails to Allege Injury Required Under CIPA.*

Plaintiff again fails to meet her burden to demonstrate that she actually suffered an injury. The FAC centers on potential conversations using the chat function on Hot Topic's website but lacks allegations regarding Plaintiff *herself*.

Plaintiff again alleges only that she "visited Defendant's Website." FAC ¶ 18. She does not allege details regarding what—if anything—she did while visiting. In particular, Plaintiff fails to allege that she was even aware of, accessed, or interacted

---

[6] The public litigation history of Plaintiff and her law firm, which is subject to judicial notice, suggests that this dispute is entirely artificial. Plaintiff and her law firm, Pacific Trial Lawyers, have filed more than 46 similar consumer lawsuits, including many under CIPA, against other companies in recent months. *See* RJN, Ex. 6. This litigious pattern appears to be part of Plaintiff's law firm's scheme to shakedown companies for purported, technical website violations. For example, Plaintiff's firm represented a plaintiff whom a jury found lacked any sincere interest in actually using the services provided by the website that her lawyers asserted was unlawful. *See Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal. App. 5th 299, 301 (2021), *review denied* (Dec. 22, 2021) ("[T]he jury . . . found that [plaintiff] never intended to" use company's services). On appeal, the court rejected Pacific Trial Attorneys' argument that its plaintiff need not show a "bona fide intent" to use the services (as opposed to a reason like suing for money). *See id.* at 307–09.

[7] A different provision of CIPA provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages," Cal. Penal Code § 637.2(c), but it does not open the courthouse gates to Plaintiff. Through this provision, CIPA merely confirms that while "injury" is required, a showing of monetary "damages" is not. An injured plaintiff may be entitled to the $5,000 statutory award, Section 637.2(a)(1), even without showing that she sustained any "amount" of monetary "damages"—which are trebled—as a result of that injury, *id.* § 637.2(a)(1)(c). This reading is the only coherent interpretation that gives effect to the words that the legislature selected. *See id.*; *see also Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 688 (N.D. Cal. 2021) (using certain language in one provision indicates that different language elsewhere intentional).

- 6 -

with the chat function.[8] By refusing to plead facts establishing a factual nexus between herself and the chat feature, Plaintiff again fails to allege how the feature injured her. Although the FAC alleges that unnamed, unknown "visitors often share highly sensitive personal data with Defendant via the website chat feature," *Id.* ¶¶ 12, 14, nowhere does Plaintiff allege that *she* is among those generic visitors. In other words, Plaintiff is no different from an amusement park guest attempting to bring claims for an incident on a rollercoaster on which she never rode. This mile-wide hole in Plaintiff's complaint sinks her claims under CIPA. This Court should dismiss her complaint based on this deficiency alone.

The FAC now adds a vague, passing allegation that "Plaintiff used a smart phone . . . and had a conversation with Defendant." *Id.* ¶ 18. But she still does not allege the nature of that conversation—the crux of her claims. Even if she alleged facts establishing that she accessed the website's chat feature—which she refuses to do—she still fails to plead the requisite injury. She fails to allege the material circumstances of any interactions with the feature or facts plausibly establishing whether any injury resulted. For example, she does not allege that she typed anything into the chat feature, let alone that she typed anything personal or sensitive. Plaintiff's failure to plead facts plausibly establishing injury caused by any (non-existent) interaction is an independently sufficient ground for dismissal.

At bottom, the FAC must be dismissed because it does not allege facts showing that Hot Topic ever invaded Plaintiff's privacy or injured her. *See Graham*, 533 F. Supp. 3d at 835 (dismissing CIPA claims based on website plugin because "plaintiffs do not have a private right of action" as required under CIPA); *Saleh*, 562 F. Supp. 3d at 521–23 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183-LB, 2021 WL

---

[8] Indeed, Hot Topic's search of its records yielded no evidence that Plaintiff ever interacted with the chat feature. If Plaintiff's claims survive this Motion, Hot Topic will promptly file a motion for summary judgment demonstrating that her CIPA claim fails for lack of any evidence that she used the chat feature at issue in this case.

1312771 (N.D. Cal. Apr. 8, 2021) (same); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) (same).

Attempting to salvage her deficient claims, Plaintiff now boldly likens herself to "American civil rights hero Rosa Parks." FAC ¶¶ 16–17 & n.3. Plaintiff provides no reason to believe she is an oppressed victim or heroic activist engaged in civil disobedience against unjust laws. Rather, Plaintiff partners with her firm to bring claims for money against companies for perpetrating such alleged "injustices" as oversized packaging containing less candy or protein powder than expected.[9] Plaintiff explains that she visited Hot Topic's website as a "tester." *Id.* ¶ 16. These new allegations regarding her "motivations" (*id.*) give up the ghost: she consented to having her conversations recorded for the ill-intended purpose of manufacturing a privacy claim against Hot Topic. A party cannot claim injury for something to which she consented. *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016). Moreover, because her alleged invasion-of-privacy claims are self-inflicted, they must fail. *See Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014) (discussing "self-inflicted injury"); *Red v. Gen. Mills, Inc.*, No. 215CV02232ODWJPR, 2015 WL 9484398, at *5 (C.D. Cal. Dec. 29, 2015) (same for California consumer claim).

**B.    Plaintiff Fatally Fails Again to Allege When Conduct Occurred.**

Plaintiff fails again to state a claim for relief because she neglects to allege facts regarding when any relevant conduct occurred. "Courts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *See, e.g.*, *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020) (collecting cases in Ninth Circuit and dismissing CIPA claims under Rule 12(b)(6)). "Under . . . CIPA, the applicable statute of limitations is one year." *Id.* at 134. "Without any reference to when the alleged misconduct occurred, [a plaintiff's] allegations fail to state a plausible claim for relief." *O'Donnell v. U.S.*

---

[9] *Byars v. PhD Fitness, LLC*, 22ST-cv-23965 (Los Angeles Sup. Ct. July 25, 2022); *Byars v. Unreal Brands*, 22ST-CV-21917 (San Bernadino Sup. Ct. July 6, 2022).

*Bancorp Equip. Fin., Inc.*, No. C10-0941 TEH, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010); *see Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868 (Ct. App. 1980) (CIPA claim had "major defect" where it "failed to allege" date that claim accrued in relation to statute of limitations); *see also* Fed. R. Civ. P. 8(a), 12(b)(6). Thus, to proceed with this action, Plaintiff must establish that her claims are timely.

Despite having a second opportunity to plead that simple fact (if true), Plaintiff tellingly fails to do so. Her FAC remains in a temporal vacuum. It references no day, month, year, or decade, nor another date or marker of time relevant to the accrual of her claims. Again, all that the FAC states is: "Within the limitations period, Plaintiff visited Defendant's website." FAC ¶ 18. That conclusory statement does not allow Plaintiff to barge through the courthouse doors, imposing significant costs related to discovery and summary judgment motion practice.

*First*, the FAC must be dismissed because it fails to allege any *fact* that would allow this Court to plausibly infer that her claims are timely. The FAC's lone temporal statement remains a *legal* conclusion: whether the statute of limitations has been satisfied. It is bereft of any factual matter to support that legal conclusion. Yet that is precisely the point of pleading (and amending).[10]

*Second*, even if this Court could credit the conclusory phrase "within the limitations period" as an allegation of a fact—which it is not—it still falls short. That is because the FAC fails to allege that, "during the limitations period," Plaintiff used the website's *chat function* or exchanged any personal information.

*Third*, Plaintiff may not cunningly plead around the reality that her claim falls outside the limitations period by intentionally omitting temporal factual content. That duplicitous contrivance would reward plaintiffs who omit the core, material facts that

---

[10] This legal assertion is also impossible to evaluate because it takes no position on which limitations period applies and whether, if at all, it has been tolled. Plaintiff may believe that a 10-year limitations period applies as a matter of law, but what if Plaintiff is wrong on the law, and the limitations period is in reality shorter? Without alleging any facts, the complaint is inscrutable on this point.

bar their claims—perhaps to bilk settlement dollars from defendants—while punishing plaintiffs with candor. *Compare Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) (dismissing CIPA claims as "time-barred" where plaintiff pleaded conduct date outside limitations period), *with Brodsky*, 445 F. Supp. 3d at 136 (dismissing CIPA claims for failure to plead when conduct occurred). This Court should not greenlight that absurd result, allowing an artful pleader to open the floodgates to discovery and motion practice needed to ferret out and adjudicate a fact that Plaintiff has refused to allege with a simple keystroke.

In the interests of fairness and efficiency, this Court should dismiss Plaintiffs' claims with prejudice for her <u>repeated</u> failure to plead when any unlawful conduct occurred.

## C.   Plaintiff Cannot Meet Her Burden to Prove Non-Consent.

The FAC fails again to state a claim under either Section 631 or Section 632.7 of CIPA because Plaintiff fails to plead her lack of consent to the conduct underlying her claims. Non-consent is an essential, express requirement for a claim under Section 631 and Section 632.7. *See Nei v. Hanson*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *4 (S.D. Cal. Sept. 15, 2016) (noting plaintiff's burden under CIPA to show lack of consent); *see also* Sections 631 ("without . . . consent"), 632.7 (same). "Consent may be express or may be implied in fact from the 'surrounding circumstances.'" *Nei*, 2016 WL 4886933, at *3 (citation omitted). Despite amending, Plaintiff has again not satisfied the non-consent element. Rather, her FAC demonstrates that she *cannot* prove non-consent.

### 1.   *The Amended Complaint Again Fails to Allege Non-Consent.*

The face of the complaint fails to allege facts showing that she did not consent to any conduct at issue. For example, her allegations supporting the Section 632.7 count omit any allegations whatsoever regarding her lack of consent. *See* FAC ¶¶ 34–41. Similarly, her sole allegation supporting non-consent under the Section 631 count

is entirely conclusory, simply stating a legal conclusion regarding the consent element rather than facts to support it. *Id.* ¶ 32 ("Plaintiff and Class Members did not expressly or impliedly consent to any of Defendant's actions.").

Putting aside conclusory allegations regarding what Hot Topic did or did not tell Plaintiff, *id.* ¶ 20, or other class members, *id.* ¶ 21, Plaintiff fails to make fact allegations regarding her *own* conduct showing she did not consent. In fact, the FAC reveals why she deliberately avoids the consent element: she visited Hot Topic's website knowing she would be recorded (i.e. implied consent) *so that* she could manufacture a privacy claim against Hot Topic. *See id.* ¶¶ 16-17. The FAC reveals that Plaintiff is a "tester" who visits websites to "voluntarily subject[] herself" to purported wiretapping and eavesdropping. *Id.* That scheme plainly does not work where non-consent and invasion of privacy are core requirements of the very claims she seeks to bring. Regardless of whether "additional, highly technical research" regarding any anticipated, purported wiretapping was later necessary, *id.* ¶ 20, Plaintiff's attempt to victimize herself does not establish non-consensual invasion of privacy.

Moreover, apart from the conclusory and self-defeating nature of Plaintiff's allegations, the FAC does not satisfy the non-consent element due to the nature of alleged communications. The Supreme Court of California has explained that "[t]he circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending a communication has consented to having it recorded by the intended recipient—recordation would be expected with a facsimile or text transmission, for example." *Smith*, 483 P.3d at 875. So, too, here. Any communications at issue would appear to be written messages entered into the "chat feature" on the website. *See* FAC, ¶ 12. That exchange of written text necessarily records and transcribes communications, and a written conversation effectively *is* a recorded transcript. Thus, it is implausible that Plaintiff did not consent to Hot Topic

receiving, recording, and transcribing any communications she sent. *See* Section 632.7 (targeting "intentionally record[ing]" without consent); Section 631(a) (targeting "read[ing]" or "learn[ing] the contents" "of any message" without consent).

Plaintiff also necessarily consented to any other party to the web chat feature receiving her communications. *See Portillo v. ICON Health & Fitness, Inc.*, No. 219CV01428ODWPJWX, 2019 WL 6840759, at *3 (C.D. Cal. Dec. 16, 2019) ("[B]y sending a communication over facsimile, a sender is essentially consenting to recording by the equipment associated with the facsimile number used," such that there is no "violation of [CIPA] because the recording is intertwined with the receipt of the communication" (emphasis omitted)). Although Plaintiff neglects to allege facts demonstrating Salesforce's nexus to her claims, Salesforce or any other unalleged "vendor" would be an extension of, and provide a tool or service to, Hot Topic. Plaintiff alleges no facts establishing that it would be reasonable for her to assume that only Hot Topic, Inc. would receive any communications. Absent more facts, it is implausible that Plaintiff so carefully calibrated her consent to permit only Hot Topic, Inc. to receive her communications when she freely hit send (assuming, of course that she actually interacted with Hot Topic's web chat feature, which Plaintiff intentionally refuses to allege in the FAC).

### 2. *The Website Shows That Plaintiff Impliedly Consented.*

Even if the face of the FAC managed to adequately allege non-consent (which still it does not), the website central to Plaintiff's complaint establishes that she did in fact impliedly consent. "Courts consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states' wiretapping statutes and related claims." *Silver v. Stripe Inc.*, No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing Section 631 claim with prejudice); *Smith v. Facebook, Inc.,* 745 F. App'x 8 (9th Cir. 2018) (agreement to Facebook's terms and policies defeated Section 631 claim). Indeed,

"[t]he typical case [of implied consent] involves the user's continued use of a communication device or system after receiving notice that his or her communications may be intercepted." *Negro v. Superior Ct.,* 179 Cal. Rptr. 3d 215, 224 (Cal Ct. App. 2014), *as modified* (Nov. 18, 2014).

Because Hot Topic's public website—including its privacy policy and chat feature—is central to Plaintiff's complaint, this Court may properly consider these core materials in resolving the present motion to dismiss.[11] They demonstrate that Plaintiff impliedly consented to any alleged conduct at issue.

Hot Topic employed a pop-up box that instructed anyone navigating to its website to "please visit our <u>Privacy Policy</u>." *See* RJN, Ex. 5 at p. 3, HotTopic.com Automatic Pop-Up). The underlined style for the Privacy Policy clearly connoted that its substance was located at the embedded hyperlink and accessible by a simple click. *See id.* Thus, any visitor to the Hot Topic website, including Plaintiff, received notice of the Privacy Policy. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) ("California case law makes it quite easy to incorporate a document by reference," requiring only that a viewer be "guided . . . to the incorporated document," with "terms . . . easily available").

Plaintiff implicitly agreed to the Privacy Policy by continuing to use the website despite the disclosures. To ascertain Plaintiff's consent, courts ask "whether the website puts a reasonably prudent user on inquiry notice of the terms." *Nguyen v.*

---

[11] *See* RJN, filed concurrently herewith; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation-by-reference "doctrine prevents plaintiffs from . . . omitting portions of . . . documents that" "doom . . . their claims"); *Garcia v. Apple Seven Servs. San Diego, Inc.*, No. 20-CV-02385-BAS-MDD, 2021 WL 3725921, at *2 (S.D. Cal. Aug. 20, 2021) ("Plaintiff incorporates Defendants' website into the Complaint."); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *6 (N.D. Cal. Sept. 26, 2013) ("[S]ubjects of judicial notice when ruling on a motion to dismiss include . . . publically accessible websites"); *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (affidavits beyond complaint did not convert Rule 12(b)(1) motion into summary judgment motion).

*Barnes & Noble Inc.,* 763 F.3d 1171, 1177 (9th Cir. 2014). Here, not only would a visitor to the website, including Plaintiff receive the Privacy Policy pop-up, *see* Privacy Policy Pop-Up (RJN, Ex. 5 at 3), but they would also see the link to the Privacy Policy located in very close visual proximity to the link to the website chat feature. *See* RJN, Ex. 2. Moreover, the link to the chat feature itself stated, "Reach *us* via" the chat, suggesting that a visitor might communicate with multiple persons or entities. *See id.* As the link previewed, upon opening the chat feature, a visitor is immediately alerted with a notice in clear and conspicuous text declaring that the chat feature is "Powered by" another entity. *See* RJN, Ex. 4. Thus, Hot Topic provided at least inquiry notice that another entity could be a party to the chat feature and any communications within it. Thus, a "reasonably prudent" user had at least inquiry notice. *See Nguyen*, 763 F.3d at 1177. Here, of course, Plaintiff was no ordinary user, but a self-styled "tester" who concedes that she is savvy when it comes to "consumer privacy." *See* FAC ¶ 16.

The Privacy Policy's substance provided adequate notice that Hot Topic's website could use tools or services from Salesforce or other vendors. *See* RJN Ex. 3. The relative brevity of the Privacy Policy confirms that Hot Topic did not bury material terms. *Id.*; *Javier v. Assurance IQ, LLC,* No. 4:20-cv-02860-JSW, 2021 WL 940319, at *4 (N.D. Cal. March 9, 2021). The top of the Privacy Policy disclaims that it:

> [D]escribes the types of information Hot Topic, Inc. and its affiliates . . . collect when you . . . [v]isit a Hot Topic Brands website [and] explains how Hot Topic Brands . . . may use and disclose such information . . . By using the [website], you agree to the collection, use, and disclosure of your information as described in this Privacy Policy . . . If you do not agree, stop accessing or using the [website].

RJN Ex. 3, Intro. Hot Topic further disclosed that it could "collect information that identifies, describes, or is reasonably being capable of being associated with you," *e.g.*, "internet network activities, such as how you use our [website]." *Id.* at § 1.

- 14 -

Plaintiff was on notice that Hot Topic could collect, use, and disclose her information. *Id*. at Intro., § 1.

Plaintiff had notice that any of her interactions could be recorded[12] and shared with third parties.[13] Plaintiff was on notice that Hot Topic could "share[]" visitors' information with "[s]ervice providers, including businesses, professionals, or technical support providers to help us operate our business and the [website] by doing things like . . . analyzing sales data to help us develop new products." RJN, Ex. 3 at § 4. And even if all of these disclosures were insufficient, Hot Topic went so far as to include a disclaimer *in the chat function itself* that this specific feature was "Powered by Gladly." *See* RJN, Ex. 4. If Plaintiff used the chat feature—which her FAC still does not allege, but must for her claims to survive—then she cannot plausibly deny knowing communications could be shared with others. *See Smith*, 483 P.3d at 875 ("reasonable inference" that party sending "text transmission" would "expect" it to be recorded). Plaintiff specifically anticipated that. FAC ¶¶ 16–18, 20 & n.3. For these reasons, Plaintiff impliedly consented to Hot Topic collecting and sharing her information, including communications in the chat feature.

In sum, Plaintiff's failures to show (i) any injury, (ii) when relevant conduct occurred, and (iii) non-consent are each independently sufficient grounds to dismiss the complaint in its entirety. Nevertheless, if this Court disagrees, it still must dismiss her Section 631(a) and Section 632.7 CIPA claims under Rule 12(b)(6) for failing to satisfy the additional, necessary elements discussed below.

---

[12] *See* RJN, Ex. 3 at § 2 ("We collect your Personal Information from . . . [(1)] You, when you . . . request information from us[;] . . . request customer support; communicate with or contact us; or otherwise use the [website]," and (2) "[W]ebsite interaction technologies, when you use our Sites"); *Smith*, 483 P.3d at 875 n.4.

[13] RJN, Ex. 3 at § 3 (user information supports "a variety of features on our [website]," "such as . . . communication features, user-generated content functions, and interactive features"; to "connect [you] with third party services"; to "[a]nalyze and understand how you use and interact with our [website] to develop new products or services"; to "[i]mprove user experience and enable customizations"; or to "[p]rovide you with targeted offers and advertising").

**D.     The Amended Complaint Fails to Plead a Violation of Section 631(a).**

Plaintiff fails again to state a claim under Section 631(a), which "creates liability 'for three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.,* 583 P.2d 737, 741 (Cal. 1978); Cal. Penal Code § 631(a). "Section 631 contains two separate clauses dealing with wiretapping activities, the first making it an offense to '(tap), or (make) any unauthorized connection' with telephone or telegraph wires or equipment and the second forbidding the interception of messages in transit or during transmission and reception 'without the consent of all parties.'" *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (citation omitted). "The key phrases, 'taps' and 'makes any unauthorized connection,' are vague and nowhere defined." *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Ct. App. 1975). Plaintiff's Section 631 claim fails because it conclusorily asserts that Hot Topic violated "all three" clauses. FAC ¶ 28. The claim also fails for at least seven other independently sufficient reasons.

*First*, Plaintiff's claim still cannot get past the starting gate because—as discussed above—she does not allege that she ever accessed or interacted with the chat function. That still-missing, foundational factual predicate dooms her claims that Hot Topic or anyone else "wiretapped" or "eavesdropped" on a chat conversation with Plaintiff. Striking any reference to the chat feature from the complaint's class definition, FAC ¶ 22, only further confuses Plaintiff's theory (if she has one at all).

*Second*, the FAC again contains only conclusory allegations and an unsupported legal conclusion regarding the technical predicates of Section 631(a)'s first clause. *Id.* ¶ 30. That "clause applies only to wiretapping of a '<u>telegraph or telephone</u> wire, line, or cable'" "within" California by means of specified tools.

1    Section 631. Plaintiff fails to allege that wires between anyone's telegraph machine

2    or telephone were tapped in California using eligible tools. *See Mastel v. Miniclip SA,*

3    549 F. Supp. 3d 1129 (2021) (noting "overwhelming weight of authority" adopting

4    this statutory interpretation) (emphasis in original); *Warden*, 99 Cal. App. 3d at 811.

5    Plaintiff cannot satisfy her burden to allege the technological predicates by waiving

6    her hands with conclusory allegations. *Cf.* FAC ¶¶ 18–19.[14]

7         The FAC's allegations are even more confused—or worse—than those in the

8    original Complaint. The FAC suggests that cellphone "SMS" (Short Message

9    Service) "text messaging" is involved in a website visitor accessing Hot Topic's web-

10   based chat feature. *See* FAC ¶ 35 (concerning "[t]ext messages sent from a smart

11   phone to a computer or internet [sic]"). But Plaintiff suggests elsewhere that the chat

12   feature on the Hot Topic website must be accessed via "computer . . . web browsing,"

13   whether on a mobile or desktop device. *Id.* ¶ 18, 30. Further, the article Plaintiff

14   invokes regarding "SMS" "text messaging" only confirms that such a technology is

15   *not* implicated by Plaintiffs' claims, which instead center on Hot Topic's web-based

16   chat feature.[15] Plaintiff references an "SMS gateway" modality whereby a message

17   from a computer could ultimately be transmitted as an SMS text message by an

18   intermediary technology, but fails to allege facts showing that Plaintiff used her

19   cellphone's SMS text messaging app to interface with the web browser-based chat

20

21   ---

     [14] Plaintiff's citation to a passing dictum in an unpublished Ninth Circuit opinion does
22   not allege the *facts* necessary satisfy the technical predicates for a Section 631 claim.
     *See* FAC ¶ 29. The court had no occasion to address the technology encompassed by
23   Section 631(a) or the factual showing required, and the opinion is expressly "not
     appropriate for publication and is not precedent." *Javier v. Assurance IQ, LLC,* No.
     21-16351, 2022 WL 1744107, at *1 n.** (9th Cir. May 31, 2022).
24   [15] *See id.* (citing definition of "text messaging (texting or wireless messaging)"
     defined                    on                    TechTarget.com);
25   www.techtarget.com/searchmobilecomputing/definition/ texting (distinguishing
     "SMS" "texting" over wireless radio waves as "one alternative in a larger universe of
26   messaging modalities, including . . . instant messaging" and other web-based
     modalities); www.techtarget.com/searchmobile computing/definition/web-texting
27   ("SMS gateways allow text messages . . . to handheld devices," but not vice versa);
     https://www.techtarget.com/searchmobile computing/definition/SMS-gateway
28   (same).

feature embedded on Hot Topic's website. Moreover, the quoted article states that a text message could be sent from a computer to a cellular radio telephone, not vice versa. *Id.* At bottom, Plaintiff cannot satisfy the technical elements of the CIPA provisions. All of this is a symptom of Plaintiff's general refusal to plead basic facts and bypass CIPA's requirements.

*Third*, the complaint fails to allege facts satisfying the technical elements of a claim under Section 631(a)'s second clause. Plaintiff does not allege facts showing that the content of any of her (nonexistent) communications was accessed using specified "instruments" or tools "while the same [was] in transit or passing over" any qualifying "wire, line, or cable" "within" California. *See* Section 631(a) (emphasis added). Plaintiff fails to allege facts establishing how any other entity contemporaneously "read one of [her] communications while it was still in transit, i.e., before it reached its intended recipient"—here, Hot Topic. *Mastel*, 549 F. Supp. 3d at 1137. Any allegations are purely conclusory. *See id.* (dismissing claim under second clause of Section 631(a)); *Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (same); *Rosenow v. Facebook, Inc.,* No. 19-cv-1297-WQH-MDD, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing federal wiretap claim). Vague allegations of access in "real time" and "during transmission" do not suffice. *E.g.* FAC ¶¶ 10, 31; *In re Vizio, Inc., Consumer Privacy Litig.,* 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017). Nor are there facts to establish that Salesforce or another entity contemporaneously accessed the "contents" of any communication. *See Brodsky*, 445 F. Supp. 3d at 127 (dismissing Section 631(a) claim); *Graham*, 533 F. Supp. 3d at 833 (same). Further, "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Rogers*, 52 Cal. App. 3d at 898 (dismissing Section 631(a) claim). That is true of written exchanges. *See Portillo*, 2019 WL 6840759, at *3 (receiving "facsimile would not . . . violat[e] . . . statute

because the recording is intertwined with the receipt of the communication").

*Fourth*, to the extent that Plaintiff's Section 631 claim is predicated on Hot Topic providing "recordings" or "transcripts" of any conversations to Salesforce after the fact, the claim fails. *See*, *e.g.*, FAC ¶¶ 12, 20, 31. Section 631 prohibits only contemporaneous dissemination. *Graham*, 533 F. Supp. 3d at 831 ("[S]haring a record is not eavesdropping"). Section 631 allows Hot Topic to provide recordings to anyone, including a third party. *Warden*, 99 Cal. App. 3d at 808–09, 811.

*Fifth*, the claim under Section 631 fails because Hot Topic is a party to any communication with Plaintiff. Under well-settled precedent applying Section 631, "a party to a communication can record it (and is not eavesdropping when it does)." *Graham*, 533 F. Supp. 3d at 831.[16] Rather, "only a third party can listen secretly to a private conversation." *Ribas*, 696 P.2d at 640. Plaintiff alleges that any interactions between Plaintiff and HotTopic.com would have involved Hot Topic as a party.[17] Thus, Plaintiff's claims under the first and second clauses of Section 631 must fail.

*Sixth*, Plaintiff's failure to plead a violation of the first and second clauses of Section 631(a) precludes any claim under the third clause. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("For a clause 3 violation, . . . Plaintiffs must establish that the information at issue—here, the recordings and transcripts that Defendants allegedly analyzed—was obtained through a violation of the first or second clauses"). Any claim against Hot Topic under the third clause for aiding wiretapping perpetrated by Salesforce fails for the reasons above and also because Salesforce or any other vendor "is an extension of" Hot Topic here. *Graham*, 533 F. Supp. 3d at 832. Because Salesforce merely "provides a tool . . . that allows" Hot Topic to "analyze its own data in aid of [Hot Topic's] business," Salesforce "is not a third-party eavesdropper." *Id.* There are no allegations that Salesforce is not

---

[16] *See*, *e.g.*, *Ribas v. Clark*, 696 P.2d 637, 640 (Cal. 1985); *Warden*, 99 Cal. App. 3d at 811; *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Ct. App. 1975).

[17] *See* FAC ¶ 16, 18 (contemplating only interactions involving "Defendant").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

"like the tape recorder"—or the telephone company who installed the tape recorder jack—in the California Court of Appeals' decision in *Rogers*, 52 Cal. App. 3d at 897–899. Plaintiff alleges no facts to suggest that any use of Salesforce or any other technology vendor by Hot Topic was materially different from Rogers' enlisting the telephone company to install the recorder jack or using the tape recorder. The court held that Rogers was not liable under Section 631. *See id.* at 899. And, as discussed above, the chat box expressly disclaimed that it was "Powered by Gladly." *See id.*; *Ribas*, 696 P.2d at 640 n.3 ("Section 631 was aimed at . . . eavesdropping, or the secret monitoring of conversations by third parties."). Thus, Plaintiff fails to state a claim under the third clause of Section 631.

*Finally*, the complaint fails to adequately allege facts showing that Salesforce actually listened in on any conversations contemporaneously. The complaint's repeated, factually unsupported use of the term "eavesdrop" in its lone reference to Salesforce, *e.g.*, FAC ¶ 31, cannot be credited because the term is conclusory and states a legal conclusion without alleging facts to plausibly support it. In fact, the FAC strikes a reference to the purported "embed[ded] code" from Gladly in the "website chat function that enables" any purported wiretapping or eavesdropping. *Compare* Compl. ¶ 11, *with* FAC ¶ 12. Even more confused and hopeless than the original Complaint, the FAC lacks sufficient factual or focused content to establish that Salesforce or any other, unknown entity listened to any conversations live.

**E.    The Amended Complaint Fails to Plead a Violation of Section 632.7.**

Plaintiff fails again to state a claim under Section 637.2. Thirty years ago, "[r]esponding to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones," "the Legislature prohibited" recording a communication "involving a cellular phone or a cordless phone." *Smith*, 11 Cal. 5th at 191 (citation omitted). Specifically, the legislature created liability for:

> Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally

- 20 -

records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone

Cal. Penal Code § 632.7(a). As construed by the Supreme Court of California, "the interception or receipt of a covered communication is not so much a discrete subject of consent as it is a description of the circumstances in which the prohibited act of *recordation* without proper consent may occur." *Id. Smith*, 483 P.3d at 875. Plaintiff's second attempt to allege a violation of Section 632.7 falls short.

*First*, as discussed, Plaintiff again fails to allege that she used the chat feature. Without that predicate, she does not and cannot show that her communications were "intercept[ed] or receive[d] and record[ed]" under Section 632.7. And even if she accessed the chat function, Plaintiff fails to allege that she ever typed anything into it for Hot Topic or any other entity to intercept or receive and record. These fundamental pleading failures defeat her claim under Section 632.7(a).

*Second*, if Plaintiff wishes to base her claim on some "communications" with the Hot Topic website beyond the chat feature, she does not suggest what they might have been, let alone plausibly allege facts grounding a violation. Her oblique reference to SMS text messages, FAC ¶ 36, does not suffice. For similar reasons, Plaintiff fails to allege that, during any interaction with the Hot Topic website, she used a technology that satisfies the technical elements of a claim under Section 632.7. Her reductionist reliance on *Smith* ignores that that decision involved only a traditional telephone call and that, for "Section 632.7 to apply," a plaintiff must allege much more than that "one party . . . us[ed] a cellular phone." *See id.* ¶ 34. As discussed further above and below, her technological allegations are internally contradictory, conclusory, implausible, and inadequate.

*Third*, Plaintiff's claims are predicated on the theory that Hot Topic's website

employs "a landline telephone" under Section 632.7, but this Court should reject her attempt to shoehorn her claim into that phrase. *See* Section 632.7. This Court should "scrutinize the actual words of [this] statute, giving them a plain and commonsense meaning." *Google Location*, 428 F. Supp. 3d at 193. Here, the complaint is bereft of allegations that Hot Topic or any other entity actually used "a landline telephone" to communicate with Plaintiff. Nor is there any allegation to support Hot Topic used dial-up internet using a telephone line. Indeed, whereas Section 637.2 refers to actual "telephones" only, Plaintiff frames it as covering cellular radio and landline "telephony." FAC ¶¶ 35, 37, 38. Plaintiff may well wish that, when enacting this statute in 1992, the legislature had chosen more capacious language that would cover modern technologies beyond "telephones" (*e.g.*, to cover optic fiber, coaxial cables, or satellites). However, this Court must construe the statute as written, especially in light of the legislature's willingness to enact new provisions specifically tailored for new technologies. *Smith*, 483 P.3d at 877–89. The plain language applies only between one "telephone" and another "telephone," Section 632.7(a), and Plaintiff does not (and cannot) allege that Hot Topic used a telephone.

*Fourth*, the plain language of the statute—passed before the era of commonplace internet—applies only to an "interception or reception" of a "transmission" occurring "*between*" telephones. Section 632.7 (emphasis added). There is no allegation that any such interception or reception occurred *before* any transmission actually reached Hot Topic's phantom telephone, not afterwards.

*Fifth*, even if the statute's plain language did not preclude Plaintiff's claim for the reasons above, this Court should apply the rule of lenity to accomplish the same result. The "rule of lenity applies" here because CIPA must be "interpret[ed] . . . consistently," regardless of whether a court "encounter[s] its application in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *Warden*, 160 Cal. Rptr. at 475 n.3 (with respect to Section 631, "[s]ince we are dealing with a penal

statute, language so ambiguous should be interpreted in favor of the alleged violator"). "'The rule of lenity' 'generally requires that "ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *Smith*, 483 P.3d at 880.

Thus, in construing whether CIPA and Section 632.7 specifically—which by its title and terms is aimed at "telephones"—criminalizes the operation and construction of Hot Topic's website, this Court should remain mindful of the criminal consequences flowing from whatever interpretation it adopts. Plaintiff's radically expansive interpretation would criminalize routine and ubiquitous website features and interactions all across the internet. For example, over *nine million* live websites use Amazon Web Services to host their websites.[18] Endorsing Plaintiff's theory that Amazon and or other web hosts are secret third parties risks criminalizing tens of millions of websites. Given these catastrophic criminal consequences, the Court should err on the side of lenity when construing the scope of liability under CIPA.

*Sixth*, CIPA's legislative history and principles of statutory interpretation demonstrate that Plaintiff's claim's fails.  "[W]hen statutory language does not explicitly address a subject and the language is potentially susceptible of differing constructions, we must presume the Legislature intended reasonable results consistent with its expressed purpose." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591 (2020) (subsequent history omitted). Section 632.7 focuses on intercepting and recording conversations involving a cellular or cordless "telephones." Hot Topic is aware of no evidence that the legislature intended this provision to regulate the enormously more complex arena of visitors' mouse-click and written-message interactions with website

---

[18]  "AWS Market Share: Revenue, Growth & Competition," Kinsta, https://kinsta.com/aws-market-share/ (last accessed Oct. 27, 2022).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

features. In fact, the legislature omitted protections found in neighboring provisions.[19]

The legislature is perfectly capable of regulating data privacy on the internet using appropriately tailored statutes. It has done so on numerous occasions, both by adding new provisions to CIPA for emerging technologies and also by brand new statutes for the internet era. *See, e.g.*, California Online Privacy Protection Act California (2003); Student Online Personal Information Protection Act (2014); California Consumer Privacy Act (2018); California Privacy Protection Act (2020).

This Court should avoid endorsing a radical interpretation that would effectively appoint plaintiffs' firms and judges as de-facto regulators of internet traffic and the granular details of website construction all across the country—while shackled to a statute intended only to protect the then-emergent technologies of pre-smartphone "cellular radio telephones" and "cordless telephones." *Smith*, 11 483 P.3d at 879 (parsing legislative intent for Section 632.7). That role is reserved for the elected legislature and regulatory bodies. Relatedly, given the many companies who conduct e-commerce in California; the exponentially larger number of web services they enlist from other actors; and the number of visitors interfacing with all of these parties, Plaintiff's broad interpretation of Section 632.7 would burden interstate commerce and raise constitutional concerns under the dormant Commerce Clause of the U.S. Constitution. *See Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177–78 (9th Cir. 2011) (describing "categories of state regulation burdening interstate commerce"). To avoid these concerns, the Court should not endorse Plaintiff's attempt to create a loophole in a thirty-year-old statute and criminalize Hot Topic's website and millions of others.

---

[19] *See Smith*, 483 P.3d at 875; Sections 632 (concerning "eavesdropping upon or record[ing]" a *confidential* communication"), 632.5 (applying only to "*maliciously* . . . intercept[ing], receiv[ing], or assist[ing] in intercepting or receiving a [telephone] communication" involving "cellular telephones"), 632.6 (same "*malicious*[]" requirement cordless telephone communication); *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 776, 41 P.3d 575 (2002) (noting that legislature "chose to protect all such conversations from malicious or intentional eaves-dropping or recording, rather than protecting only conversations where a party wanted to keep the content secret").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HOT TOPIC, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**F.     The Amended Complaint Should Be Dismissed With Prejudice**

Because Plaintiff has already amended as of right, she may amend again only by obtaining court leave. Fed. R. Civ. P. 15(a). The Court has discretion to deny leave to amend, including because of bad faith, failure to cure deficiencies, prejudice to the defendant, or futility. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008). Here, Plaintiff has already enjoyed the opportunity to amend and cure the many defects that Hot Topic identified in its first motion, yet has failed to do so. Plaintiff's numerous pleading failures are so egregious—such as when any conduct occurred, its nature, or whether Plaintiff ever used the chat feature—that the only reasonable conclusion is that Plaintiff's third attempt would likewise be futile. Further, Plaintiff managed to render an already aimless complaint even more hopeless by dropping its lynchpin allegation—the notion Gladly was the secret third party—in search of a new, would-be violator such as Salesforce or some other, unexplained entity. At bottom, Plaintiff is a serial litigant in an aimless search for a defendant and a legal theory. Allowing Plaintiff a third bite at the apple here would be futile and prejudicial to Hot Topic. Therefore, this Court should dismiss Plaintiff's FAC with prejudice.

**V.     CONCLUSION**

For the foregoing reasons, Hot Topic respectfully requests that this Court grant its motion and dismiss the FAC and Plaintiff's claims with prejudice.

Dated:  December 2, 2022

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

_____

Joshua Briones
E. Crystal Lopez

*Attorneys for Defendant*
*HOT TOPIC, INC.*