1

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

2

3

4

5

6

7

8

# UNITED STATE DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

ARISHA BYARS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HOT TOPIC INC., a California corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No. 5:22-cv-01652-JGB (SPx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

[Pl.'s Response to Def.'s RJN filed concurrently herewith; [Proposed] Order lodged concurrently herewith]

Date:        January 23, 2023
Time:        9:00 a.m.
Courtroom:  1
Judge:       Hon. Jesus G. Bernal

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I. ARGUMENT ........................................................................................ 1

   A. Subdivision (a) of Section 631 of the California Penal Code
      Has Four Distinct Clauses All of Which Are at Issue. ...................... 1

   B. The First Clause Is Actionable. ....................................................... 1

      1. Defendant's Focus on the Terms "Telegraph" or
         "Telephone" Is Misplaced. ........................................................ 1

      2. Defendant Used a "Machine, Instrument, or
         Contrivance" to Make an Unauthorized Connection. ........................ 4

      3. The First Clause Includes the Conduct of Participants
         to Internet Communications .................................................... 4

         a. Unlike the Federal Wiretap Act, the First Clause Provides No
            Direct Party Exception. ................................................. 5

         b. The Undefined Term "Unauthorized" Within Section 631 Is
            Intended to Include Lack of Consent by the Consumer. ........... 5

         c. *Graham v. Noom, Inc.* and *Rogers v. Ulrich* Are Both
            Unpersuasive. ................................................................ 6

         d. *Smith v. LoanMe, Inc.* Provides Important Guidance. ................ 9

   C. The Second Clause Is Actionable. ................................................... 10

      1. The FAC Alleges that a Third Party Violated the
         Second Clause. ...................................................................... 10

      2. The FAC Plausibly Alleges the "While" "In Transit
         or Passing Over" Requirement of the Second Clause ..................... 11

   D. The Third and Fourth Clauses Are Actionable. ............................... 13

   E. The FAC Alleges that Plaintiff Personally Used Defendant's
      Chat Feature. ................................................................................ 14

   F. The FAC Sufficiently Alleges When Defendant's
      Wrongdoing Occurred. .................................................................. 14

G.   The FAC Sufficiently Alleges the Absence of Consent to the Wiretapping, Eavesdropping, and Unlawful Recording of Plaintiff's Communications..............................................................14

    1.   The FAC Did Not Make Any Judicial Admission that Plaintiff Consented to Defendant's Wrongful Conduct. ......................................................................15

    2.   *Portillo v. ICON Health & Fitness, Inc.* Does Not Support Defendant. .........................................................16

    3.   Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced. .......................................................................17

    4.   Defendant's Reliance on *NEI* Is Misplaced. .....................18

    5.   Defendant's Reliance on Extrinsic Evidence Is Improper. ....................................................................19

    6.   Defendant's Banner Is Inconspicuous. ..............................19

    7.   Defendant's Reliance on Other Extrinsic Evidence to Prove Plaintiff's Implied Consent Is Unpersuasive............22

H.   The Term "Landline Telephone" Should Be Broadly Construed to Include Defendant's Computer Equipment. ............................23

I.   The FAC Sufficiently Pleads that Plaintiff Was Injured by Defendant's Wrongdoing, Which Caused an Intangible Injury to Her Dignity. .......................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017) ...................................................................21

*Arlington Cent. School Dist. Bd. of Educ. v. Murphy*,
   548 U.S. 291 (2006) ..................................................................................................4

*Barker v. Riverside County Office of Education*,
   584 F.3d 821 (9th Cir. 2009) .................................................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................14

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) (Weinstein, J.)...........................................21

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................14

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ..................................................... 11, 12, 15

*Camreta v. Greene*,
   563 U.S. 692 (2011) .................................................................................................6

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
   867 F.3d 1093 (9th Cir. 2017) ..............................................................................16

*Gerritsen v. Warner Bros. Enter. Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) (Morrow, J.)..........................................19

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.)....................................11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)................................................................................................16

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd in part and rev'd in part on
   other grounds*, 956 F.3d 589 (9th Cir. 2020).........................................................4

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ............12, 13

*In re Google Assistant Privacy Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................10

*In re Google Inc.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .................................... 2, 3, 10, 24

*In re Vizio, Inc.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.)......................................13, 14

*Javier v. Assurance IQ, LLC*,
   2022 WL 1744107 (9th Cir. May 31, 2022) ........................................................10

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ...............................................................................18

*Mastel v. Miniclip*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ..................................................... 4, 12, 13

*Matera v. Google Inc.*,
   2016 WL 200619 (N.D. Cal. Aug. 12, 2016) .......................................................10

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .....................................................25

*NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific
   Southwest, Inc.*,
   2016 WL 4886933 (S.D. Cal. Sept. 15, 2016)...................................... 15, 18, 19

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ......................................................................18, 19

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998).................................................................................................9

*Osgood v. Main Street Marketing, LLC*,
   2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ........................................................25

*PDC Labs., Inc. v. Hach Co.*,
   2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) ....................................... 18, 19, 20

*Peng v. Uber Techs., Inc.*,
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) ...................................................................20

*Popa v. Harriet Carter Gifts, Inc.*,
   45 F.4th 687 (3d Cir. 2022) ..................................................................5

*Portillo v. ICON Health & Fitness, Inc.*,
   2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Wright, J.) ................16

*Raffin v. Medicredit, Inc.*,
   2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) (King, J.)....................25

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................ 10, 11, 12, 13

*Rodriguez v. Google LLC*,
   2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ....................................13

*Rosenow v. Facebook, Inc.*,
   2020 WL 1984062 (S.D. Cal. Apr. 27, 2020)...............................7, 13

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) (Aenlle-Rocha, J.).............. 10, 11, 12, 13

*Spokeo, Inc. v. Robins*,
   538 U.S. 330 (2016)...........................................................................25

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) (Holcomb, J.) ..................... 1, 10, 11, 12

**California Cases**

*Apple v. Superior Court*,
   56 Cal. 4th 128, 292 P.3d 883 (2013)................................................2

*Davis v. Pacific Telephone & Telegraph Co.*,
   127 Cal. 312 (1899) .......................................................................2, 3

*Friddle v. Epstein*,
   16 Cal. App. 4th 1649 (1993) ...........................................................25

*Ion Equip. Corp. v. Nelson*,
   110 Cal. App. 3d 868 (1980) ............................................................14

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) .........................................................................8

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016) ..................................................................18, 22

*Negro v. Superior Court*,
    230 Cal. App. 4th 879 (2014) ..........................................................................15

*Nolan v. City of Anaheim*,
    33 Cal. 4th 335 (2004) .......................................................................................9

*People v. Conklin*,
    12 Cal. 3d 259, 270 (1974) ................................................................................5

*People v. Jones*,
    30 Cal. App. 3d 852 (1973) .......................................................................5, 6, 8

*People v. Superior Court*,
    13 Cal. App. 3d 545 (1970) ...............................................................................6

*People v. Trieber*,
    28 Cal. 2d 657 (1946) .....................................................................................6, 8

*Ribas v. Clark*,
    38 Cal. 3d 355 (1985) ...............................................................................7, 8, 9

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894 (1975) ..................................................................... *passim*

*Sellers v. Just Answer LLC*,
    73 Cal. App. 5th 444 (2021) .......................................................................20, 22

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021) .............................................................................. *passim*

*Tuolumne Jobs & Small Business Alliance v. Superior Court*,
    59 Cal. 4th 1029 (2014) .............................................................................17, 18

*Warden v. Kahn*,
    99 Cal. App. 3d 805 (1979) ...............................................................................4

**U.S. Constitution**

Article III............................................................................................................25

**Federal Statutes**

MEM ISO RESPONSE TO MTD FAC

Fair Credit Reporting Act ........................................................................25

Federal Wiretap Act ..................................................................................5

18 U.S.C.
    § 2510 *et seq*. ....................................................................................5
    § 2511 ...................................................................................................
    § 2511(2)(d) .........................................................................................5

**California Constitution**

Article 1, § 1 ...........................................................................................24

**California Statutes**

Code of Civil Procedure
    § 340(a) ...............................................................................................14

Penal Code
    § 630........................................................................................ 7, 8, 9, 24
    § 631................................................................................................ *passim*
    § 631(a) .......................................................................................... *passim*
    § 632....................................................................................................8
    § 632.5(a) ...........................................................................................10
    § 632.6(a) ...........................................................................................10
    § 632.7.......................................................................................... *passim*
    § 632.7(a) ......................................................................... 9, 10, 16, 24
    § 632.7(c)(1).....................................................................................1, 4
    § 632.7(c)(3)..................................................................... 16, 18, 24
    § 637.2..........................................................................................24, 25
    § 637.2(c) ...........................................................................................25
    § 640....................................................................................................6
    California Invasion of Privacy Act ........................................... *passim*
    Penal Code pt. 1 Title 15 Chapter 1.5.................................................7

**Federal Rules**

Rule of Civil Procedure
    Rule 9 .................................................................................................14
    Rule 12(b)(6)......................................................................................14

**Other Authorities**

https://www.britannica.com/technology/Internet/Society-and-the-Internet
   (last visited Dec. 30, 2022) ...................................................................24

https://www.techtarget.com/searchmobilecomputing/definition/texting
   (last visited Dec. 30, 2022) ...................................................................24

MEM ISO RESPONSE TO MTD FAC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      ARGUMENT**

**A.      Subdivision (a) of Section 631 of the California Penal Code Has Four Distinct Clauses All of Which Are at Issue.**

Subdivision (a) of Section 631 of the California Penal Code has four distinct clauses. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1080 (C.D. Cal. 2021) (Holcomb, J.). All four clauses are at issue here.

**B.      The First Clause Is Actionable.**

**1.      Defendant's Focus on the Terms "Telegraph" or "Telephone" Is Misplaced.**

Although Defendant contends that the FAC fails to allege that "wires between anyone's telegraph machine or telephone were tapped in California," (Def.'s Mem. at 17:1-2), Defendant's analysis is without merit for several reasons.

Although it is true that the first clause limits its scope to "any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system," (Cal. Penal Code § 631(a)), the FAC alleges that Plaintiff used a "smart phone" to visit Defendant's Website. (FAC ¶ 18.) The FAC alleges that a "smart phone" is "a cellular telephone[] with an integrated computer to enable web browsing". (FAC ¶ 18.) Although Defendant seems to implicitly define "telephone" within the first clause of subdivision (a) as excluding a "smart phone," there is nothing in the plain meaning of subdivision (a) that supports Defendant's cramped interpretation. A smart phone surely fits within the definition of a "Cellular radio telephone," as defined in Cal. Penal Code § 632.7(c)(1), to mean "a wireless ***telephone*** authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones." (Cal. Penal Code § 632.7(c)(1)) (emphasis added). Although a smart phone is, by definition, a "wireless telephone" insofar as it is unnecessary to connect a smart phone itself physically to any device to operate its various features, it is common sense that a smart phone relies upon

and cannot function without tremendous nationwide networks of telecommunications companies comprised of cellular towers, computer servers, and other electronic equipment comprised of "wire[s], line[s], cable[s], or instrument[s]" to transmit both voice calls and computer data to their intended recipients.

Indeed, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). Indeed, in *In re Google Inc.*, **which is a decision that Defendant has cited for a different proposition**, (*see* Def.'s Mem. at 13 n.11), the court noted that the California Supreme Court has interpreted the term "telegraph lines" "functionally" to include "telephone lines" as follows:

> "For example, in a previous evolution in communications technology, the California Supreme Court interpreted 'telegraph' **functionally**, based on the type of communication it enabled. In *Davis v. Pacific Telephone & Telegraph*, the Supreme Court held that 'telegraph lines' in a criminal law proscribing the cutting of lines included telephone lines because '[t]he idea conveyed by each term is **the sending of intelligence to a distance** ... [thus] the term 'telegraph' means any apparatus for transmitting messages by means of electric currents and signals.'"

*In re Google Inc.*, 2013 WL 5423918, at *21 (emphasis added) (citing *Davis v. Pacific Telephone & Telegraph Co.*, 127 Cal. 312, 316 (1899); *Apple v. Superior Court*, 56 Cal. 4th 128, 137, 292 P.3d 883, 887 (2013) ("**In construing statutes that predate their possible applicability to new technology, courts have not relied on wooden construction of their terms. Fidelity to legislative intent does not 'make it impossible to apply a legal text to technologies that did not exist when the text was created**.... Drafters of every era know that technological advances will proceed apace and that the rules they create will one day apply to all sorts of circumstances they could not possibly envision.'") (citation omitted). Indeed, in *Davis*, the California Supreme Court, in

interpreting a Penal Code section containing the term "telegraph" to include "telephone" within its meaning, noted:

> "If the consideration could be limited to a strict etymological point of view, it would have to be conceded at once that there is a difference in the meaning of the two words,—the one conveying the idea of transmission of writing to a distance; the other, the transmission of sound to a distance.... The words ... cannot be limited to their etymological meaning, and **consideration must be had to their present sense and acceptation**."

*Davis*, 127 Cal. at 316 (emphasis added).  Given that *In re Google Inc.*, recognized "the California courts' approach to **updating obsolete statutes in light of emerging technologies**," as a basis to find that "section 631 of CIPA applies to emails," 2013 WL 5423918, at *21 (emphasis added), why wouldn't the first clause of section 631(a) of the Penal Code be interpreted to include wiretapping of smart phones?  If telegraphs and telephones are recognized for "the sending of intelligence to a distance," *id.*, then surely smart phones that are connected to the Internet either via a wired connection (via a dongle device) or a wifi connection surely "send[] intelligence to a distance" as well.  And, it is beyond dispute that smart phones are connected to the Internet via "wire[s], line[s], cable[s], or instrument[s]."  (Cal. Penal Code § 631(a).)

In addition, section 631(a), which is part of CIPA, should be broadly construed. *In re Google Inc.*, 2013 WL 5423918, at *21.

Furthermore, section 632.7 of the California Penal Code was enacted in 1992.  Thus, the California Legislature has had literally decades to amend section 631(a) to clarify that the reference to "telephone" in the first clause excludes "cellular radio telephones," but the Legislature has failed to do so over the years.  If anything, the Legislature's failure to amend section 631(a) to expressly refer to a "landline" telephone as opposed to a broader "telephone" term reflects the Legislature's acquiescence in a broad interpretation of the "telephone" term, which is undefined in section 631(a).

As for Defendant's citation of *Mastel v. Miniclip*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021), *Mastel* failed to address the foregoing inconsistency in interpretating the term "telephone" in the first clause of section 631(a) as excluding smart phones given that smart phones are indisputably one type of "telephone" as expressly defined in section 632.7(c)(1).  Nor does *Mastel* analyze whether smart phones send "intelligence to a distance" just like telegraphs and telephones.  As for *Warden v. Kahn*, 99 Cal. App. 3d 805 (1979), that decision was issued before smart phones were invented.

> **2.      Defendant Used a "Machine, Instrument, or Contrivance" to Make an Unauthorized Connection.**

Although Defendant contends that the FAC fails to allege that the alleged wiretapping was performed by Defendant "using eligible tools," (Def.'s Mem. at 17:2), Defendant is wrong.

First, section 631(a) states, "Any person who, by means of any machine, instrument, or contrivance, ***or in any other matter***, intentionally taps, or makes any unauthorized connection, ... is punishable ...."  (Cal. Penal Code § 631(a)) (emphasis added).  Thus, the first clause is not limited to wiretapping in which the method used is via a "machine, instrument, or contrivance" only.  Prohibited wiretapping can also occur "in any other matter" as well.  The Court should avoid interpreting section 631(a) in a manner that would render such phrase as mere surplusage.  *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006).

Second, Defendant omits to mention that in *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd in part and rev'd in part on other grounds*, 956 F.3d 589 (9th Cir. 2020), the court stated that "***it is undeniable that a computer may qualify as a 'machine'***" within the meaning of section 631(a).  140 F. Supp. 3d at 937 (emphasis added).  The FAC expressly alleges that Defendant's software embedded on its Website was used to violate section 631(a).  (FAC ¶ 30.)

> **3.      The First Clause Includes the Conduct of Participants to Internet Communications.**

Defendant contends that the Plaintiff's section 631(a) claim fails under the first clause because of a purported party exemption.  (Def.'s Mem. at 19:8-14.)  Not so.

### a.   Unlike the Federal Wiretap Act, the First Clause Provides No Direct Party Exception.

Unlike the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, which expressly sets forth a direct party exception to liability, *see* 18 U.S.C. § 2511(2)(d); *Popa v. Harriet Carter Gifts, Inc.*, 45 F.4th 687, 694 (3d Cir. 2022), ***section 631(a) of the Penal Code contains no such direct party exception***.  *See People v. Conklin*, 12 Cal. 3d 259, 270 (1974).  Section 631(a) imposes an "all-party consent rule" unlike the Federal Wiretap Act.  *People v. Conklin*, 12 Cal. 3d 259, 270 (1974).  If the California Legislature intended for section 631(a) to duplicate the scope of the Federal Wiretap Act by carving out a direct party exception, then surely the Legislature would have done so by now given that the Wiretap Act has been in existence for many decades since 1968 or since 1986 when that Act was amended.

Indeed, it is highly significant that section 631 of the Penal Code includes the following clause as part of the third clause:

> "or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . ."

(Cal. Penal Code § 631(a).)  Such language is inconsistent with a party exemption.

### b.   The Undefined Term "Unauthorized" Within Section 631 Is Intended to Include Lack of Consent by the Consumer.

Although *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), which is a decision cited by Defendant, noted that the term "unauthorized connection" (within the first clause of section 631) was "vague and nowhere defined," *Rogers*, 52 Cal. App. 3d at 898, *Rogers* failed to recognize that in *People v. Jones*, 30 Cal. App. 3d 852 (1973), the Court of Appeal, in interpreting the then-existing version of section 631 of the Penal Code enacted in 1967, held that the word "unauthorized" before the word "connection" should be interpreted to mean that the "authorization" required for a legal wiretap is the

"consent of the subscriber to the telephone."  30 Cal. App. 3d at 854.  If the subscriber to the telephone "did not consent to the tap," *id.*, then the connection is "unauthorized" under the then-applicable section 631 of the Penal Code.  *Jones*, 30 Cal. App. 3d at 854.

In support, *Jones* cited *People v. Trieber*, 28 Cal. 2d 657 (1946), which, in turn, interpreted the then-applicable section 640 of the Penal Code as holding that "a telephone company cannot authorize others to make a connection to a subscriber's individual station ***without his approval***."  *Id.* at 662 (emphasis added).  Notably, former section 631 of the Penal Code was derived from former section 640 of the Penal Code,[1] 30 Cal. App. 3d at 854, the latter of which was construed by the High Court as "prohibiting wire tapping" and "forbids unauthorized interception of private messages," *Trieber*, 28 Cal. 2d at 662.

Thus, the undefined term "unauthorized connection" within the first clause of section 631 includes circumstances in which the ***consumer*** has not provided his or her consent to other participants' use of information obtained from a wire communication.

### c.   ***Graham v. Noom, Inc.*** **and** ***Rogers v. Ulrich*** **Are Both Unpersuasive.**

Defendant's reliance upon *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.),[2] and *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), is misplaced.  *Graham* relied heavily upon *Rogers*, the latter of which quoted only a portion of the then-applicable version of Penal Code section 631 in footnote 1 of its decision.  *Rogers*, 52 Cal. App. 3d at 898 n.1.  Notably, *Rogers* omitted significant portions of statutory language that is also contained in subdivision (a).[3]  Thus, *Rogers*'s

---

[1] Section 631 of the Penal Code was originally enacted in 1967, which was the same year in which the Legislature repealed the predecessor statute, section 640 of the Penal Code.  *People v. Superior Court*, 13 Cal. App. 3d 545, 548 (1970).

[2] It is black letter law that federal district court decisions are not even binding on the same judge in a different case.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

[3] *Rogers* omitted the clauses: "***or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained***, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . ." (Cal. Penal Code § 631(a)) (emphasis added).

conclusion that the then-applicable version of section 631 of the Penal Code does not include "participant recording" ignored a crucial portion of the statute as part of its analysis.  This matters because *Rogers* explained that "[a]s to the third [prohibited] method" "of obtaining information being sent over a telephone or telegraph line," "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received."  *Rogers*, 52 Cal. App. 3d at 898.  The omitted clause mentioned above demonstrates that even if a participant to a communication does not intercept the message while it "is in transit," the Legislature intended to prohibit the unauthorized use "in any manner" "or for any purpose" "or to communicate in any way" "any information" obtained via such use.  Surely, that includes recordings of private communications exchanged via a wire.

Furthermore, although *Rogers* relied upon section 630 of the Penal Code for its "declaration of legislative finding and intent," *Rogers*, 52 Cal. App. 3d at 898-99, *Rogers* erred in its interpretation of section 630.[4]  *Rogers* stated that section 630 "speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included."  *Id.* at 899.  Simply put, *Rogers* overemphasized the reference to "eavesdropping" within section 630.  The main gist of section 630 is that "advances in science and technology" had created new opportunities via "new devices and techniques" implicitly a reference to recording devices including tape recorders, by way of example, that "created a serious threat to the free exercise of personal liberties," and that the Legislature intended to protect "the right of privacy" via the CIPA, *i.e.*, Chapter 1.5 of Title 15 of Part 1 of the Penal Code.  Indeed, in *Ribas v. Clark*, 38 Cal. 3d 355 (1985), in which the statute at issue was section 631, *Ribas*, 38

---

[4] Section 630 of the Penal Code states in relevant part as follows:  "The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.  [¶] The Legislature by this chapter intends to protect the right of privacy of the people of this state."  (Cal. Penal Code § 630.)

Cal. 3d at 359, the Supreme Court explained that:  "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act." 38 Cal. 3d at 359.  Thus, section 630 sets forth the public policy that favors Plaintiff's interpretation.  In *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021), the Supreme Court characterized the Legislature's intent as reflective of the entire CIPA.  (*Smith*, 11 Cal. 5th at 199) ("In enacting [the Invasion of Privacy Act] . . .") (quoting *Ribas*).  Defendant's analysis fails to address such public policy.

Indeed, if section 630 states the Legislature's intent solely to address third party eavesdropping on private communications in CIPA, then how does one reconcile the Supreme Court decisions in *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 122 (2006) ("it is unlawful under California law for a party to a telephone conversation to record the conversation without the knowledge of all other parties to the conversation"), pertaining to section 632 and *Smith* pertaining to section 632.7?  Notably, section 632 of the Penal Code was enacted in 1967 as part of CIPA.  The Supreme Court has characterized section 632 as "[a] foundational component of [CIPA]".  *Smith*, 11 Cal. 5th at 191.  Needless to say, *Rogers* was decided in 1975, and so it did not have the subsequent guidance provided in *Kearney* and *Smith* addressing the indisputable fact that CIPA provisions are not limited to eavesdropping by third parties.

Furthermore, as mentioned above, *Rogers* failed to recognize the long history by which the term "unauthorized" had been interpreted to include circumstances in which the consumer has not provided his or her consent to other participants' use of information obtained from a wire communication.  *Jones*, 30 Cal. App. 3d at 854; *Trieber*, 28 Cal. 2d at 662.

Although *Ribas v. Clark*, 38 Cal. 3d 355 (1985), cited *Rogers* for the proposition that "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or

the secret monitoring of conversations by third parties," 38 Cal. 3d at 359, *Ribas* had no occasion to decide the question as to whether section 631 included the conduct of **participants** to wire communications.  *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 343 (2004) ("A decision … does not stand for a proposition not considered by the court.").

Finally, although *Rogers* referred to the significance of "eavesdropping" within section 630, it is beyond dispute that the first clause of section 631(a) prohibits the act of wiretapping instead of eavesdropping.  (Cal. Penal Code § 631(a)) ("Any person who ... intentionally taps, or makes an unauthorized connection ....").  Thus, at most, *Rogers* should be narrowly interpreted as applicable only to claims asserting the violation of the second clause regarding eavesdropping.

### d. *Smith v. LoanMe, Inc.* Provides Important Guidance.

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021), supports Plaintiff's position because the Supreme Court:  (1) held that "section 632.7 applies to parties as well as nonparties," 11 Cal. 5th at 188, despite the language of that statute referring to "intercepts" or "receives," which the Court of Appeal therein (incorrectly) construed as referring to only nonparties; (2) rejected the Court of Appeal's conclusion that parties to a call were excluded from section 632.7's scope based on the Court of Appeal's reasoning that "parties to a call normally consent to other participants' 'receipt' of their input," 11 Cal. 5th at 194; (3) held that under a plain meaning analysis, a broad interpretation of section 632.7 to include parties to a phone call (involving a cellular phone or cordless phone) was the more plausible reading of section 632.7(a), 11 Cal. 5th at 194; (4) analyzed the legislative history of section 632.7, *id.* at 196-99, and cited with approval *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998), for the proposition that statutory prohibitions "often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed," *Smith*, 11 Cal. 5th at 198-99; (5) cited its broader interpretation as better promoting the statutory scheme's goal of protecting privacy in communications, *Smith*, *id.* at 199-200; (6) noted that

public policy is appropriate to consider as part of any statutory interpretation analysis, *id.* at 190 ("If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and ***public policy***.") (emphasis added); and (7) described how "section 632.7(a)'s lack of a malice requirement" "function[s] to describe a class of potential perpetrators that includes parties, even if sections 632.5(a) and 632.6(a) do not" because the latter two provisions contain the word "maliciously," 11 Cal. 5th at 195.

Here, there is nothing specific in the language of subdivision (a) that excludes a party to the chat communication at issue from being liable for violating section 631(a). Also, there is a noticeable lack of any ***malice*** requirement in subdivision (a), which functions "to describe a class of potential perpetrators that includes parties".  *Smith*, 11 Cal. 5th at 195.

**C.    The Second Clause Is Actionable.**

Multiple federal courts have held that the second clause of section 631(a) includes Internet communications.[5]

**1.    The FAC Alleges that a Third Party Violated the Second Clause.**

Defendant's analysis assumes that the second clause of section 631(a) could not have been violated because Defendant, itself, cannot be a third party eavesdropper who violated such clause.  (Def.'s Mem. at 19:8-14.)   However, assuming *arguendo* that Defendant itself cannot be held liable for violating the second clause (which is disputed for the reasons set forth above in I.B.3, *supra*), Defendant conveniently ignores that it employed an independent, third party eavesdropper who violated such clause.  (FAC ¶ 12.)  *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520-21 (C.D. Cal. 2021) (Aenlle-Rocha, J.), *Yoon*, 549 F. Supp. 3d at 1081, and *Revitch v. New Moosejaw, LLC*, 2019 WL

---

[5] *See, e.g.*, *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (holding that CIPA "applies to internet communications"); *Matera v. Google Inc.*, 2016 WL 200619, at *18 (N.D. Cal. Aug. 12, 2016); *In re Google Inc.*, 2013 WL 5423918, at *21; *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 826 (N.D. Cal. 2020).

5485330, at *2 (N.D. Cal. Oct. 23, 2019), support Plaintiff's position that an independent, third party company violated the second clause as an eavesdropper. (FAC ¶ 12.)  *Saleh* explained that "FullStory is a separate legal entity that offers 'software-as-a-service' and not merely a passive device.  Defendants' argument would imply that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party.  The text of section 631(a), however, does not contain any such exception ...."  *Saleh*, 562 F. Supp. 3d at 520.  In support, *Saleh* cited *Revitch*, the latter of which explained that "it cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication.  Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly.  That person remains a third party, even as a direct recipient of the speaker's communication."  2019 WL 5485330, at *2; *see also Yoon*, 549 F. Supp. 3d at 1081 (citing *Revitch*) ("[I]s Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door?  This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay.").

Defendant's reliance upon *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021), is misplaced.  Although *Graham* sought to distinguish *Revitch* because the latter decision purportedly involved a fact pattern in which the vendor "used the data itself," *Graham*, 533 F. Supp. 3d at 832, *Revitch* drew no such distinction.  And, *Yoon* was not persuaded by *Graham*.  *Yoon*, 549 F. Supp. 3d at 1081.

## 2.   The FAC Plausibly Alleges the "While" "In Transit or Passing Over" Requirement of the Second Clause.

Defendant challenges the FAC's allegations of intercepted communications by a third party company "while" "in transit" or "passing over" as conclusory.  (Def.'s Mem. at 18:6-19:1; 20:11-20.)  This Court should reject Defendant's argument.  *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("[T]he complaint's allegation

that users' messages were intercepted in transit is to be taken as true at this stage of the case."). Paragraphs 12 and 31 of the FAC suffice.

Defendant's argument that the FAC must allege that the third party, *i.e.*, Salesforce, "listened to" "any conversations" "contemporaneously" or "live," (Def.'s Mem. at 20:11-12; 20:19-20), misinterprets the second clause, which contains no "listened to" requirement. Moreover, Defendant ignores case law recognizing as plausible allegations regarding the existence of software technology called "Session Replay," which "embeds snippets of code that watch and record, in real time, 'a visitor's every move on a website,'" and which enables the website to "capture data regarding visitors to [the merchant's] website." *Saleh*, 562 F. Supp. 3d at 509; *see also Yoon*, 549 F. Supp. 3d at 1077; *Revitch*, 2019 WL 5485330, at *1. In *Saleh*, the Court cited the allegation that the third party whose software was embedded into a website's code "records the website user's interactions locally in the user's browser in real time, and then transmits that information to [the third party's] recording servers every few seconds, which [the third party] then makes available to its clients." *Saleh*, 562 F. Supp. 3d at 521. The Court held that the section 631(a) claim therein plausibly alleged a cognizable claim. *Id.* at 521. *Yoon* and *Revitch* lend additional support. The Court can and should reasonably infer from the FAC's allegations that Defendant and its third party use similar embedded computer code to capture the website user's interactions while using Defendant's chat feature.

Defendant's reliance upon *Mastel v. Miniclip*, *supra*, is misplaced. In *Mastel*, the district court stated that "the crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, i.e., ***before*** it reached its intended recipient." 549 F. Supp. 3d at 1137 (emphasis added). *Mastel* failed to distinguish, let alone, acknowledge the Ninth Circuit's holding in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021), which expressly held that section 631(a) claims can be predicated upon "simultaneous," unknown duplication of a user's

communications to the intended recipient. *Id.* at 608; *see also Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D. Cal. Aug. 18, 2021) (indicating that the plaintiffs' first amended complaint had pled the "requisite § 631 simultaneity," but that the operative complaint no longer pled it); *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1226-27 (C.D. Cal. 2017) (Staton, J.). Thus, *Mastel* is unpersuasive and directly conflicts with *In re Facebook, Inc. Internet Tracking Litig*.

Defendant's reliance on *Rosenow v. Facebook, Inc.*, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020), is similarly misplaced because of factual differences. In *Rosenow*, the plaintiff's allegations strongly indicated that the National Center for Missing and Exploited Children acquired the plaintiff's communications while it was in electronic storage as opposed to during transmission. *Id.* at *2. In essence, the plaintiff's complaint made a judicial admission, which the district court could not ignore. In contrast, no such judicial admission exists here.

Defendant's reliance on *In re Vizio, Inc.*, 238 F. Supp. 3d at 1227-28, is misplaced as that decision is distinguishable because the plaintiffs included in their complaint a "rather inscrutable graphic with no textual explanation," which "suggests that [defendant] transmits their data to its Inscape platform ***significantly after*** the data arrive at their Smart TVs." *Id.* at 1228 (emphasis added). Thus, the complaint therein made what appeared to be a judicial admission that the plaintiffs' data was held in storage for a significant period of time and was not acquired during transmission contemporaneously.

## D. The Third and Fourth Clauses Are Actionable.

Given that Plaintiff states a claim under both the first and second clauses of section 631(a), Plaintiff similarly states a claim under the third and fourth clauses. As was the case in *Revitch*, the defendant website merchant "violated section 631 by ***enabling*** [a third party's] wrongdoing." *Revitch*, 2019 WL 5485330, at *2 (emphasis added), *quoted in Saleh*, 562 F. Supp. 3d at 521; *Revitch*, 2019 WL 5485330, at *2 ("it does not follow that parties to communications are immune from section 631 liability").

**E.   The FAC Alleges that Plaintiff Personally Used Defendant's Chat Feature.**

Defendant implies that the FAC fails to allege that Plaintiff personally used Defendant's chat feature on its Website.  (Def.'s Mem. at 9:20-21.)  Not so.  Paragraph 18 of the FAC expressly alleges that Plaintiff used a smart phone "and had a conversation with Defendant."[6]  (FAC ¶ 18.)  Given that the FAC is full of allegations about Defendant's chat communications, (FAC at 2:2-5; ¶¶ 9, 10, 12, 14, 19, 38), it's obvious that Plaintiff is alleging that she had her conversation with Defendant via its chat feature.  Thus, Defendant's contention that the FAC does not "allege that she ... accessed, or interacted with the chat function," (Def.'s Mem. at 6:14; 7:1), is *false*.

**F.   The FAC Sufficiently Alleges When Defendant's Wrongdoing Occurred.**

Defendant's argument that the FAC fails to allege "when" any "relevant conduct occurred" is wrong.  (Def.'s Mem. at 8:19-20.)  The FAC alleges that Plaintiff visited Defendant's Website via his smart phone and had a conversation with Defendant "[w]ithin the statute of limitations period."[7]  (FAC ¶ 18.)  As Defendant acknowledges, it is black letter law that the applicable statute of limitations under CIPA is one year.[8] (Def.'s Mem. at 8:24) (citing *Brodsky*, 445 F. Supp. 3d at 134).  Thus, this Court can and should infer that the FAC sufficiently alleges that Defendant's wrongdoing occurred within one year of filing of the instant action, which occurred on September 20, 2022, (Doc. 1), *i.e.*, sometime between September 19, 2021 and September 20, 2022.

**G.   The FAC Sufficiently Alleges the Absence of Consent to the Wiretapping,**

---

[6] A reasonable inference is that Plaintiff "typed ... into" Defendant's chat feature. (Def.'s Mem. at 21:13); *Barker v. Riverside County Office of Education*, 584 F.3d 821, 824 (9th Cir. 2009) ("we must draw inferences in the light most favorable to the plaintiff").

[7] In addressing its plausibility legal standard on a Rule 12(b)(6) motion, the U.S. Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007).  Defendant's arguments seek to invoke a heightened pleading standard.

[8] "Under the CIPA, the applicable statute of limitations is one year." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (citing *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 880 (1980); Cal. Civ. Proc. Code § 340(a) ("Within one year: (a) An action upon a statute for a penalty or forfeiture, if the action is given to an individual....").

**Eavesdropping, and Recording of Plaintiff's Communications.**

Defendant contends that the FAC "fails to plead her lack of consent to the conduct underlying her claims." (Def.'s Mem. at 10:13-15.)  Not so. (*See* FAC ¶¶ 20-21, 32, 39.[9])  "'Consent may be express or may be implied in fact from the '***surrounding circumstances*** indicating that [the party to the call] ***knowingly agreed*** to the surveillance.''"  *NEI Contracting and Engineering, Inc. v. Hanson Aggregates Pacific Southwest, Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) ("*NEI*") (citing cases) (emphasis added).  "The critical question is whether the party whose communications were intercepted had ***adequate notice of the interception***." *Id.* (citing *Campbell*, 77 F. Supp. 3d at 846-48) (emphasis added).  "In the typical implied in fact consent scenario, a party is informed that his call will be recorded, and he continues to use the communication system ***after receiving notice the communications are being intercepted***." *NEI*, 2016 WL 4886933, at *3 (citing *Negro v. Superior Court*, 230 Cal. App. 4th 879, 892 (2014)) (emphasis added).  "In the absence of such notice, ''[t]he surrounding circumstances must ***convincingly show*** that the party ***knew about and consented to the interception*** in spite of the lack of formal notice or deficient formal notice.''" *Negro*, 230 Cal. App. 4th at 892 (emphasis added).

### 1.    The FAC Did Not Make Any Judicial Admission that Plaintiff Consented to Defendant's Wrongful Conduct.

The FAC does not make any type of judicial admission that Plaintiff expressly consented to Defendant's wrongful conduct.  Also, the FAC does not make any type of judicial admission indicating that Plaintiff impliedly consented to either: (i) Defendant's wrongful conduct including wiretapping and aiding and abetting in eavesdropping by an independent, third party; or (ii) the eavesdropping by an independent, third party.

Defendant's reliance upon footnote 3 of the FAC as constituting a judicial

---

[9] Defendant's contention that Plaintiff's allegations supporting the Section 632.7 count omit any allegations whatsoever regarding her lack of consent," (Def.'s Mem. at 10:25-26), conveniently ignores paragraph 39 of the FAC.

admission is simply wrong.  Footnote 3 was referring to civil rights icon, Rosa Parks, acting as a litigation "tester" who voluntarily subjected herself to the unlawful practice of segregation.  Footnote 3 did not imply that Plaintiff ***consented*** unlawful wiretapping, eavesdropping, or recording committed against her while using Defendant's online chat feature.  Indeed, under Defendant's interpretation taken to its logical conclusion, a civil rights tester could not sue for discrimination in employment, housing, or public accommodations by voluntarily subjecting herself to situations in which discriminatory conduct might occur.  Such interpretation would conflict with U.S. Supreme Court precedent specifically endorsing plaintiff "testers" especially in the discrimination context.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982).  Notably, the Ninth Circuit expressly cited *Havens Realty Corp.* in *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017).

> **2.** ***Portillo v. ICON Health & Fitness, Inc.* Does Not Support Defendant.**

Defendant's reliance on *Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Wright, J.), is misplaced.  Although *Portillo* suggests that a sender of a facsimile ought to know that the equipment associated with a facsimile number will record a communication sent over facsimile, *Portillo* did not purport to carve out an exemption for all recipients of facsimiles.  Indeed, *Portillo* expressly distinguished between "someone who accidentally 'receives' a facsimile," who is not liable under section 632.7, and "an individual who takes the additional step of recording a call." *Portillo*, 2019 WL 6840759, at *3.  Notably, section 632.7 imposes an "***intentionally*** records" requirement for a "person" who "receives" a communication. (Cal. Penal Code § 632.7(a)) (emphasis added).  Under Defendant's interpretation of "consent," no recipient of any facsimile could ever be held liable under section 632.7 even if such recipient "intentionally records" it because the sender's "consent" would exempt such recipient from liability.  Defendant's broad interpretation of "consent," however, would render the inclusion of "facsimile" in the definition of "Communication" in section 632.7(c)(3) as a meaningless nullity.  The foregoing shows

that even in the context of section 632.7, the concept of "consent" should not be so broadly interpreted to render substantive portions of that statute a nullity. "It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage." *Tuolumne Jobs & Small Business Alliance v. Superior Court*, 59 Cal. 4th 1029, 1038 (2014). "*An interpretation that renders statutory language a nullity is obviously to be avoided.*" *Id.* at 1039 (emphasis in original) (quotation omitted).

### 3.   Defendant's Reliance on *Smith v. LoanMe, Inc.* Is Misplaced.

Defendant's reliance upon language in footnote 4 of *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 194 n.4 (2021),[10] is misplaced for several reasons. First, *Smith* does not require or allow the Court to decide the consent issue as a matter of law. Defendant's assumption to the contrary is simply wrong. *Smith*'s use of the word "may," which is permissive, but not mandatory, indicates that the Supreme Court merely intended to express the mere ***possibility*** that a reasonable inference could potentially be drawn that "a party sending a communication" such as a "facsimile or text transmission" has consented to having it recorded by the intended recipient. Yet, the Supreme Court did not definitively decide such issue as a matter of law.

Second, the Supreme Court's musings about a reasonable inference of consent in the context of "a party sending a communication" such as a "facsimile or text transmission" in the context of a cause of action alleging the violation of section 632.7 of the Penal Code is dictum, which was unnecessary to deciding the precise legal issue of "whether section 632.7 applies to the parties to a communication, prohibiting them from recording a covered communication without the consent of all participants, or whether the section is concerned only with recording by persons other than parties . . .

---

[10] Footnote 4 states:   "The ***circumstances*** involved with certain kinds of communications ***may*** lead to a ***reasonable inference*** that a party sending a communication has consented to having it ***recorded*** by the intended recipient — ***recordation*** would be expected with a facsimile or text transmission, for example." *Smith*, 11 Cal. 5th at 194 n.4 (emphasis added).

such as an individual who covertly intercepts a phone call and eavesdrops upon it."  11 Cal. 5th at 188.

Third, *Smith*'s dictum would, in essence, render the reference to "data, or image, including facsimile" in subdivision (c)(3) of section 632.7 as mere surplusage and a nullity, which is to be avoided.  *Tuolumne Jobs & Small Business Alliance*, 59 Cal. 4th at 1038-39.  After all, if a party to a facsimile or text message always consents to the recording of such communication by the intended recipient of such communication, then why would the Legislature have specifically included the reference to "facsimile," "data", or "image" within the definition of "Communication" as actionable?   If anything, the Legislature's inclusion of such terms indicates that the concept of consent is case-specific, dependent on the surrounding circumstances, and is not to be decided as a matter of law.

Fourth, regardless of whatever guidance footnote 4 of *Smith* may have to interpreting section 632.7 of the Penal Code, footnote 4 surely has no guidance in interpreting section 631(a) because section 631(a) addresses unlawful wiretapping and eavesdropping without a ***recording*** requirement.  For example, it is undisputed that unlawful wiretapping under the first clause of section 631(a) of the Penal Code requires no recording as an element.  Similarly, unlawful eavesdropping under the second clause of section 631(a) of the Penal Code requires no recording as an element.  Indeed, in addressing the second clause of section 631(a), the Ninth Circuit has drawn a sharp distinction between an intercepted communication acquired "during transmission," on one hand, and a communication that is "in electronic storage," on the other hand.  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).  Needless to say, a communication that is "in electronic storage" overlaps with a communication that has been ***recorded***.  This illustrates the fallacy of applying the dictum in *Smith* to interpreting section 631(a).

### 4.    Defendant's Reliance on *NEI* Is Misplaced.

Defendant's reliance upon *NEI*, *supra*, is misplaced.  In *NEI*, the district court,

after conducting a bench trial, made findings of fact and conclusions of law that the plaintiff entity "has failed to show that [defendant] recorded the November 21, 2011, call without [plaintiff's] consent," and, thus, entered judgment in favor of the defendant. 2016 WL 4886933, at *6.  Significantly, the court found that the plaintiff's owner, whose call with defendant was at issue, "does not dispute that he would have consented to the recording if he had known [defendant] was doing so," and "[p]resumably his employees would have done the same." *Id.* at *4.  In addition, the court noted "the long history of recording" involving the plaintiff's employees.  *Id.*  The plaintiff failed to submit any evidence including any witness testimony indicating that plaintiff's employees objected to having their telephone calls recorded by the defendant.  *Id.* Indeed, the plaintiff continued to place orders with defendant despite the notice of recording provided by the defendant.  *Id.*  Thus, the court found that the plaintiff had "consented to having its telephone calls recorded." *Id.*

Here, in contrast, as mentioned above, the FAC does not make any allegations from which the Court can infer that Plaintiff either expressly or implicitly consented to Defendant's unlawful wiretapping, eavesdropping, or recording.

**5.    Defendant's Reliance on Extrinsic Evidence Is Improper.**

Defendant's reliance on extrinsic evidence allegedly published on its own website to attempt to prove that Plaintiff implicitly consented to unlawful wiretapping, eavesdropping, and recording, (Def.'s Mem. at 12:19-15:28), is procedurally improper. *Gerritsen v. Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.) ("the court declines to take judicial notice of information published on private websites") (citing cases).

**6.    Defendant's Banner Is Inconspicuous.**

Assuming *arguendo* that the Court considers exhibit 5 to Defendant's RJN, the textual notice and hyperlink contained in the pop-up banner on page 3 therein are inconspicuous.  The banner states as follows:

"We use cookies and third-party services to improve your experience, understand

your usage, and personalize advertising based on your interests. By continuing to use our website or closing this banner, you consent to our use of cookies and third-party services in accordance with our Privacy Policy.  To learn more, please visit our <u>Privacy Policy</u>."

(Def.'s RJN Ex. 5 at 3; Doc. 19; Page 25 of 30; Page ID #175) (emphasis in original).

First, Defendant failed to draw the attention of its users to the "Privacy Policy" hyperlink by using "signifiers of importance" such as the phrase "please read" or the word "important".[11]  *Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 49 (E.D.N.Y. 2017) (stating that the offerees were "clearly and repeatedly encouraged to click on the contract containing the terms to which they were agreeing").  Indeed, in *Nguyen v. Barnes & Noble Inc.*, *supra*, the Ninth Circuit noted that the court in *PDC Labs., Inc. v. Hach Co.*, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009), made the observation that "the terms' conspicuousness was reinforced by the language of the final checkout screen, which read, " 'STEP 4 of 4: *Review terms*, add any comments, and submit order,' " and was followed by a hyperlink to the Terms.  *Nguyen*, 763 F.3d at 1178 (emphasis added) (quoting *PDC Labs*, 2009 WL 2605270, at *3) (emphasis in original).  Here, in contrast, the banner contains no admonition for the user to "*Review terms*".  Defendant's contention that the banner instructed users to "please visit our <u>Privacy Policy</u>," (Def.'s Mem. at 13:10) (emphasis in original), is misleading.  Defendant omits that the full

---

[11] Courts have relied upon various criteria to find electronic contracts enforceable based upon a website's textual notices to users.  For example, the Ninth Circuit in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), discussed "placement," color, and contrast of hyperlinks (*i.e.*, "color-contrasting text") and "the website's general design." *Id.* at 1177-78.  Similarly, *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855 (2016), relied upon the "placement, color, size and other qualities [of the terms of service hyperlinks] relative to the . . . [website's] overall design". *Id.* at 866.  "Federal courts relying on *Long* and *Nguyen* have generally considered similar criteria when determining whether a textual notice is sufficiently conspicuous under California law. These criteria include: 1) the size of the text; 2) the color of the text as compared to the background it appears against; 3) the location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; 4) the obviousness of any associated hyperlink; and 5) whether other elements on the screen clutter or otherwise obscure the textual notice." *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 473 (2021) (citing cases).

sentence reads, "***To learn more***, please visit our <u>Privacy Policy</u>."  (Def.'s RJN Ex. 5 at 3) (first emphasis added).  In other words, the banner notified users that they could visit Defendant's Privacy Policy if they wanted "[t]o learn more" about it.  This doesn't come close to urging users to read such Privacy Policy because of its importance.

Second, the Privacy Policy was made available to Website users via only a "subtle hyperlink".  *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469 (S.D.N.Y. 2017).  In particular, the hyperlink used was subtle because "there were no familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect," or "capitalization, italization, or large font."  *Applebaum*, 263 F. Supp. 3d at 467; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (Weinstein, J.) ("***[t]he hyperlink to the "terms of use" was not in large font, all caps***") (emphasis added).

Third, although the hyperlink was underlined, that indicia was insufficient to make the "Privacy Policy" hyperlink conspicuous because there was no color-contrasting text to indicate the existence of the "Privacy Policy" hyperlink.  That is, all of the text of the entire banner is in the same gray color including both the "Privacy Policy" named hyperlink itself and the underline beneath it.  (Def.'s RJN Ex. 5 at 3; Page ID #175.)  Thus, there is no color contrast between the hyperlink itself and the surrounding text.  Notably, the Ninth Circuit has recognized the significance of a hyperlink that is "underlined" in "***blue, contrasting text***," coupled together with other indicia.  *Nguyen*, 763 F.3d at 1178 (emphasis added) (quoting *PDC Labs., Inc.*, 2009 WL 2605270, at *3 ("Terms [and Conditions of Sale] were hyperlinked on three separate pages of the online ... order process in ***underlined, blue, contrasting text***.") (emphasis added)); *Nguyen*, 763 F.3d at 1178 ("As in *PDC*, the checkout screens here contained "Terms of Use" hyperlinks in underlined, ***color-contrasting text***.") (emphasis added).  The Ninth Circuit noted that in *PDC Labs.*, "the federal district court held that '***[t]his contrasting text is sufficient to be considered conspicuous***,' thereby placing a reasonable user on notice that the terms applied."  *Nguyen*, 763 F.3d at 1178 (emphasis

added) (quoting *PDC Labs., Inc.*, 2009 WL 2605270, at *3)).

Notably, Defendant has failed to cite any case authority indicating that the color gray indicates the existence of a hyperlink.  Indeed, the California Court of Appeal recently held, "In the computing world, a hyperlink is a word, phrase, or image— typically underlined or ***in blue font***—that the user can click on to jump to a new document or a new section within the current document."  *Sellers*, 73 Cal. App. 5th at 452 n.2 (emphasis added).  The reference to "blue font" in *Sellers* is significant.  Indeed, in *Sellers*, the Court of Appeal noted that the online merchant's "hyperlink to the terms of service is underlined, but it is not set apart in any other way that may draw the attention of the consumer, such as with ***blue text*** or capital letters."  *Sellers*, 73 Cal. App. 5th at 481 (emphasis added).

Fourth, the hyperlink labeled as "Privacy Policy" in the banner is in the same font (*i.e.*, Roboto) and size (10.5 point) as the immediately surrounding language above the hyperlink.  Thus, the hyperlink "appear[s] in the same font . . . that, to the unwary [user], could blend in with the" rest of the textual statement in that same area.  *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 866 (2016).

Fifth, the text of the entire banner is much smaller than other text used on that same webpage and other webpages as discernable to the naked eye.  Notably, Plaintiff's investigation of Defendant's webpages reveals that Defendant's banner is in a tiny 10.5 point typeface (in Roboto font) including the "Privacy Policy" hyperlink at issue, as mentioned above.  By comparison, other text on that same webpage is either in a much larger 13.5 point typeface (Roboto font) or a still larger 11.5 point typeface (Roboto font).[12]

**7.    Defendant's Reliance on Other Extrinsic Evidence to Prove Plaintiff's Implied Consent Is Unpersuasive.**

---

[12] If the Court converts the instant Motion into a motion for summary judgment, then Plaintiff intends to submit admissible evidence addressing the various sizes of the typeface used in Defendant's webpages and the banner depicted in Exhibit 5.

Defendant's reliance on other extrinsic evidence besides the banner is unpersuasive to prove Plaintiff's implied consent.

For example, although Defendant argues that "below the chat link is a disclaimer to all visitors that, 'By continuing to use this site, you agree to our Privacy Policy,' with a link to the full Privacy Policy," (Def.'s Mem. at 2:22-23), this textual notice and hyperlink are not sufficiently obvious and conspicuous for the same reasons why the banner is not conspicuous.  Indeed, ***the alleged notice does not exist on any of the webpages of the current version of the Website***.  Thus, Defendant is asking the Court to rely on a purported textual notice that "appeared on January 1, 2022," (Def.'s RJN at 2:7-8), that was apparently removed on some unspecified date after January 1, 2022.  Such notice could have been removed from the Website ***before*** Plaintiff's visit to the Website.  This is precisely why it is entirely premature to decide the consent issue via the instant Motion before the parties have conducted any discovery.

Defendant's reliance on the proximity of the "Privacy Policy" hyperlink to the "Reach us via Live Chat" box at the bottom of each webpage is unpersuasive given that such hyperlink is one of 28 hyperlinks in four columns.  (Def.'s RJN Ex. 2; Page ID #160.)

Similarly, Defendant's reliance on its, "Reach ***us*** via Live Chat," ***id.*** (emphasis added), statement as suggesting that the word "us" implied the role of an independent, third party in the chat feature is equally unpersuasive.

Finally, although Defendant relies on the "Powered by Gladly," statement at the bottom of its chat feature, (Def.'s Mem. at 14:7-9; 15:9-10), this statement is not only ambiguous as to its meaning, it is also inconspicuous as the text is clearly much smaller than the surrounding text both before and after that statement.  (Def.'s RJN Ex. 4; Page ID #170.)

**H.    The Term "Landline Telephone" Should Be Broadly Construed to Include Defendant's Computer Equipment.**

Defendant argues that the alleged violation of section 632.7 fails to state a claim

because the FAC does not allege that Defendant utilized a landline telephone to communicate with Plaintiff. (Def.'s Mem. at 24:16-26.) The Court should broadly construe the term, "landline telephone," in section 632.7(a) of the Penal Code, which is undefined, **_functionally_** as encompassing Defendant's computer equipment, which connected with Plaintiff's smart phone to transmit and receive Plaintiff's chat communications. *In re Google Inc.*, 2013 WL 5423918, at \*21. Indeed, the fact that the Legislature defined the term, "Communication," to include data transmissions, (Cal. Penal Code § 632.7(c)(3)), supports Plaintiff's position.[13] In addition, it is beyond dispute that, "The Internet works through a series of networks that connect devices around the world **_through telephone lines_**."[14] If Defendant is using telephone lines to connect its computer servers and other equipment to the Internet, then surely the devices it is using to connect to the Internet are functionally equivalent to the "landline telephone" term in section 632.7(a) of the Penal Code.

## I.     The FAC Sufficiently Pleads that Plaintiff Was Injured by Defendant's Wrongdoing, Which Caused an Intangible Injury to Her Dignity.

Defendant argues that the FAC fails to plead a cognizable injury, as required under section 637.2 of the California Penal Code. (Def.'s Mem. at 5:5-6:7.) Not so.

It is beyond dispute that CIPA is intended to protect Californians' right to privacy. (Cal. Penal Code § 630) ("The Legislature by this chapter intends to protect the right of privacy of the people of this state."). Indeed, the right to privacy is enshrined in the California Constitution. (Cal. Const. Art. 1, § 1.) Any violation of the **_substantive_** right

---

[13] The phrase, "communications transmitted by … data," surely includes text messages. Notably, although text messages can be sent via a hand-held device, users can also send text messages "**_from a computer_**." https://www.techtarget.com/searchmobilecomputing/definition/texting (last visited Dec. 30, 2022) (emphasis added) ("Text messaging is the act of sending short, alphanumeric communications between cellphones, pagers or other hand-held devices, as implemented by a wireless carrier. . . . Users send messages through SMS (short message service). Users can also send text messages **_from a computer to a hand-held device_**. Web texting, as it's called, is made possible by websites called SMS gateways.") (emphasis added).
[14] https://www.britannica.com/technology/Internet/Society-and-the-Internet (last visited Dec. 30, 2022) (emphasis added).

to privacy is not a "technical" or "harmless" violation as asserted by Defendant.  (Def.'s Mem. at 5:19; 5:26; 6:5-6); *Matera v. Google Inc.*, 2016 WL 5339806, at *13 (N.D. Cal. Sept. 23, 2016) ("CIPA create **substantive** rights to privacy in one's communications.") (emphasis added) ("the judgment of ... the California Legislature in creating enforceable, **substantive** legal rights through ... **CIPA supports finding that Plaintiff has alleged concrete injury based on the violation of those rights**") (emphasis added).  Defendant's invasion of Plaintiff's right to privacy injured Plaintiff's dignity.  *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("**Any invasion of privacy involves an affront to human dignity**").  "Section 637.2 is fairly read as establishing that no violation of the Privacy Act is to go unpunished." *Id.* at 1660.  "The right to recover this statutory minimum accrued at the moment the Privacy Act was violated." *Id.* at 1661.  Indeed, subdivision (c) of section 637.2 states, "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***." (Cal. Penal Code § 637.2(c)) (emphasis added).

Finally, Defendant ignores the inconsistency of its position, which ignores challenging Plaintiff's Article III standing to sue, but, nevertheless, challenges whether Plaintiff has alleged a sufficient "injury".  Perhaps this is because multiple district courts within the Ninth Circuit have held that Article III standing to sue exists to pursue claims under CIPA, which means that such claims satisfy Article III's "concrete injury" requirement.[15] "[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo*, a CIPA violation "involves much greater concrete and particularized harm ... a violation of privacy rights", and therefore, a violation of CIPA is a "violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact." *Osgood*, 2017 WL 131829, at *7.

---

[15] *See, e.g.*, *Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *2-*3 (C.D. Cal. Dec. 19, 2016) (King, J.); *Osgood v. Main Street Marketing, LLC*, 2017 WL 131829, at *7-*8 (S.D. Cal. Jan. 13, 2017).

Dated:  December 30, 2022

PACIFIC TRIAL ATTORNEYS, P.C.

By: */s/ Scott J. Ferrell*

Scott. J. Ferrell
Attorney for Plaintiff

1

**CERTIFICATE OF SERVICE**

2      T I hereby certify that on December 30, 2022, I electronically filed the foregoing

3    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

4    **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO**

5    **DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.**

6    **R. CIV. P. 12(b)(6)** with the Clerk of the Court using the CM/ECF system which will

7    send notification of such filing via electronic mail to all counsel of record.

8

9

10        */s/ Scott J. Ferrell*
          Scott J. Ferrell

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28