**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell (Bar No. 202091)
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile:  (949) 706-6469

Attorneys for Plaintiff

# UNITED STATE DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

ARISHA BYARS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HOT TOPIC INC., a California corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No. 5:22-cv-01652-JGB (SPx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

[[Proposed] Order lodged concurrently herewith]

Date:        January 23, 2023
Time:        9:00 a.m.
Courtroom:   1
Judge:       Hon. Jesus G. Bernal

# **TABLE OF CONTENTS**

**Page(s)**

I.     ARGUMENT ........................................................................................... 1

      A.     Allowing an Amicus Brief Filed by an Ally of Defendant,
           Which Duplicates Defendant's Arguments and Citations,
           Would Be an Abuse. ............................................................................ 1

           1.     NRF's Proposed Amicus Brief Echoes and Duplicates
               the Vast Majority of Defendant's Memorandum. ............................... 2

           2.     NRF Does Not Claim that Defendant Is Not
               Represented Competently. ..................................................................... 4

           3.     NRF Has Not Identified Any Interest in Any Other
               Case that May Be Affected by the Decision in the
               Instant Action. ...................................................................................... 4

           4.     NRF Has Failed to Demonstrate that It Has "Unique
               Information or Perspective" That Can Help the Court
               Beyond the Help that the Lawyers for the Parties Are
               Able to Provide. .................................................................................... 5

      B.     Assuming *Arguendo* that the Court Grants NRF Leave to
           File Its Amicus Brief, NRF's Analysis Should Not Change
           the Outcome of Defendant's Motion to Dismiss. ................................. 9

           1.     The FAC Sufficiently Alleges Injury in Fact For
               Purposes of Evaluating Constitutional Standing Under
               Article III of the U.S. Constitution. .................................................... 9

           2.     The FAC Has Sufficiently Alleged an Injury to
               Plaintiff's Dignity That Is "Fairly Traceable" to
               Defendant's Conduct ........................................................................ 12

               a.     The FAC Does Not Show that Plaintiff's Injury
                   Is *Solely* Her Own Fault, Which Is Necessary
                   to Break the Causal Chain. ...................................................... 12

               b.     *Mendia v. Garcia* Is Distinguishable. ....................................... 17

               c.     *Red v. General Mills, Inc.* Is Distinguishable. ........................... 18

d.    *Makaryan v. Volkswagen Group of America, Inc.* Is Distinguishable. ............................... 19

e.    NRF Omits to Mention that *Laufer v. Looper* Held that a Plaintiff's Tester Status Does Not Defeat Standing. ........................................ 20

f.    *Center for Biological Diversity v. United States Environmental Protection Agency* Is Distinguishable. ..................................... 21

g.    *National Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales* Is Unpersuasive. ..................... 23

3.    NRF's "Commonplace Technology" Argument Is Flawed. ............................................................. 24

II.    CONCLUSION. ............................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alvarado v. Bratton*,
  2009 WL 10699453 (C.D. Cal. June 1, 2009) ........................................ 8

*Anderson v. Yates*,
  2011 WL 8006963 (C.D. Cal. Nov. 30, 2011) (Chooljian, Mag. J.)
  (R&R), *adopted in* 2012 WL 2133753 (C.D. Cal. June 11, 2012)
  (Pregerson, J.) ................................................................................... 8, 9

*Backer ex rel. Freedman v. Shah*,
  788 F.3d 341 (2d Cir. 2015) ...................................................... 12, 13, 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 11

*Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*,
  671 F.3d 635 (7th Cir. 2011) (Easterbrook, C.J.) ................................... 8

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2016 WL 3543699 (S.D. Cal. June 29, 2016) ....................................... 10

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) ........................................................... 8

*Camreta v. Greene*,
  563 U.S. 692 (2011) .............................................................................. 5

*Carrese v. Yes Online Inc.*,
  2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) (Otero, J.) ....................... 10

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721 (7th Cir. 2011) (Posner, J.) ............................................. 15

*Center for Biological Diversity v. United States Environmental Protection
  Agency*,
  937 F.3d 533 (5th Cir. 2019) .......................................................... 21, 23

*Chicago Professional Sports Limited Partnership v. National Basketball
  Ass'n*,
  754 F. Supp. 1336 (N.D. Ill. 1991) ...................................................... 13

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................. 22, 23

*Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*,
   867 F.3d 1093, 1096, 1101-02 (9th Cir. 2017) .................................... *passim*

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..................................................................... 21, 22, 23

*Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*,
   765 F.3d 1205 (10th Cir. 2014) ........................................................ 20, 21

*D'Lil v. Best Western Encina Lodge & Suites*,
   538 F.3d 1031 (9th Cir. 2008) ................................................................ 14

*Davidson v. Kimberly–Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................................. 22

*Ewing v. Empire Capital Funding Group, Inc.*,
   2019 WL 157660 (S.D. Cal. Jan. 10, 2019) ........................................... 8, 9

*Backer ex rel. Freedman v. Shah*,
   788 F.3d 341 (2d Cir. 2015) ....................................................... 12, 13, 17

*Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*,
   528 U.S. 167 (2000) (Ginsburg, J.) ............................................. 16, 17, 22

*Garcia v. Hanjin International Corp.*,
   2021 WL 4260408 (C.D. Cal. June 16, 2021) (Gutierrez, J.) ..................... 6, 7

*Gerritsen v. Warner Bros. Enter. Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) (Morrow, J.) ................................ 11

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ................................................................ 15

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) (Beeler, Mag. J.) ........................... 10

*Harty v. Simon Prop. Group, L.P.*,
   428 Fed. Appx. 69 (2d Cir. 2011) ........................................................... 23

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .................................................................... *passim*

*Henderson v. Peterson*,
    2011 WL 2838169 (N.D. Cal. July 15, 2011) ............................................................. 7

*Holloway v. Full Spectrum Lending*,
    2007 WL 7698843 (C.D. Cal. June 26, 2007) (Carter, J.) ..................................... 7, 15

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ....................................................................... 14, 15

*In re Google Inc. Gmail Litig.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........................................................ 10

*Kuhmstedt v. Enttech Media Group, LLC*,
    2022 WL 1769126 (C.D. Cal. Apr. 11, 2022) (Wilson, J.) ........................................ 8

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
    222 F.3d 289 (7th Cir. 2000) ................................................................................ 13

*Laufer v. Looper*,
    22 F.4th 871 (10th Cir. 2022) ........................................................................ 20, 21

*Licea, et al. v. Cinmar, LLC, et al.*,
    No. 2:22-cv-06454-MWF-JEM, Doc. 41 (C.D. Cal. Dec. 23, 2022)
    (Fitzgerald, J.) ...................................................................................................... 5

*Lobato v. Gomez*,
    2017 WL 931824 (E.D. Cal. Mar. 8, 2017) ............................................................. 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 12

*Makaryan v. Volkswagen Group of America, Inc.*,
    2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) (Anderson, J.) ............................ 19, 20

*Matera v. Google Inc.*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .................................................. 2, 10

*Mendia v. Garcia*,
    768 F.3d 1009 (9th Cir. 2014) .................................................................. 17, 18, 22

*Miller–Wohl Co. v. Commissioner of Labor & Industry*,
    694 F.2d 203 (9th Cir. 1982) (per curiam) ............................................................. 1

*Molski v. Evergreen Dynasty Corp.*,
    500 F.3d 1047 (9th Cir. 2007) ............................................................................. 14

*Molski v. Evergreen Dynasty Corp.*,
  521 F.3d 1215 (9th Cir. 2008) (Berzon, J., dissenting from denial of
  rehearing en banc) ................................................................................... 7

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007) ................................................................. 14

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006) ........................................................... 13, 15

*National Family Planning and Reproductive Health Ass'n, Inc. v.*
  *Gonzales*,
  468 F.3d 826 (D.C. Cir. 2006) ............................................................... 23

*Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*,
  222 F. Supp. 3d 643 (N.D. Ill. 2016), *appeal dismissed*, No. 16-4278
  (7th Cir. Oct. 4, 2017) ......................................................................... 7, 8

*Osgood v. Main Street Marketing, LLC*,
  2017 WL 131829 (S.D. Cal. Jan. 13, 2017) ........................................... 10

*Petro-Chem Processing, Inc. v. E.P.A.*,
  866 F.2d 433 (D.C. Cir. 1989) (Ginsburg, J.) .................................... 13, 23

*PGA Tour v. Martin*,
  532 U.S. 661, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) ...................... 14

*Portillo v. ICON Health & Fitness, Inc.*,
  2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Wright, J.) ........................ 6

*Raffin v. Medicredit, Inc.*,
  2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) (King, J.) .......................... 10

*Red v. General Mills, Inc.*,
  2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) (Wright, J.) ................... 18, 19

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......................................... 10

*Romero v. Securus Techs., Inc.*,
  216 F. Supp. 3d 1078 (S.D. Cal. 2016) .................................................. 10

*Ryan v. Commodity Futures Trading Com'n*,
  125 F.3d 1062 (7th Cir. 1997) (Posner, C.J.) ................................... *passim*

*Shaver v. Independent Stave Co.*,
   350 F.3d 716 (8th Cir. 2003) ............................................................................. 15, 16

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ...................................................................................... 6

*Sosa v. Bank of America Home Loan*,
   2017 WL 11635445 (C.D. Cal. Aug. 3, 2017) (Fitzgerald, J.) ............................... 5, 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .................................................................................................. 10

*Telephone Science Corp. v. Asset Recovery Solutions, LLC*,
   2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ........................................................ 12, 13

*United States v. Santiago*,
   46 F.3d 885 (9th Cir.), *cert. denied*, 515 U.S. 1162 (1995) ...................................... 8

*United States v. Young*,
   470 U.S. 1 (1985) ........................................................................................................ 9

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) .................................................................................... 21

**State Cases**

*Friddle v. Epstein*,
   16 Cal. App. 4th 1649 (1993) ................................................................... 2, 10, 11, 16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .............................................................................................. 18

*Stone v. Foster*,
   106 Cal. App. 3d 334 (1980) ...................................................................................... 9

*Wilson v. Murillo*,
   163 Cal. App. 4th 1124 (2008) ................................................................................... 7

**U.S. Constitution**

   Article III...........................................................................................................*passim*

**Constitutional Provisions**

California Constitution ...................................................................................................... 11

Article 1, § 1 ................................................................................................... 11

**Federal Statutes**

15 U.S.C.

   § 1681b(c)(1)(B)(i) ...................................................................................... 13

   § 1681c(g)(1) ................................................................................................ 24

   § 1681m(d)(1)(D) ........................................................................................ 13

   FCRA ........................................................................................................... 10

42 U.S.C.

   § 12181 *et seq.* ........................................................................................... 13

   § 12182(a) .................................................................................................... 14

   § 12188(a)(1) ............................................................................................... 14

   ADA ................................................................................................... 14, 20, 23

   Title I of the ADA ....................................................................................... 15

   Title III of the ADA ................................................................. 13, 14, 15, 20

Fair and Accurate Credit Transactions Act ..................................................... 24

Fair Housing Act § 804(a) .............................................................................. 14

Fair Housing Act § 804(d) .............................................................................. 14

**State Statutes**

Business & Proffessions Code § 17200 *et seq.* ............................................... 18

   Unfair Competition Law ........................................................................ 18, 19

Penal Code

   § 630 *et seq.* .............................................................................................. 4, 5

   § 630 ............................................................................................................ 11

   § 631(a) ................................................................................... 2, 5, 17, 19

§ 632.7 .................................................................................................. 3, 5, 17, 19

§ 637.2 ............................................................................................................... 11

§ 637.2(a)(1) ................................................................................................. 16, 19

§ 637.2(c) ...................................................................................................... 11, 19

California Invasion of Privacy Act ................................................................*passim*

**Rules**

Federal Rule of Civil Procedure

Rule 9 ............................................................................................................... 11

Rule 12(b)(6) .................................................................................................... 5, 6

**Other Authorities**

California Attorney Guidelines of Civility and Professionalism § 8.  The
Attorney Guidelines of Civility and Professionalism are available for
downloading via the State Bar of California's website at:
http://www.calbar.ca.gov/Attorneys/Conduct-
Discipline/Ethics/Attorney-Civility-and-Professionalism (last visited
Dec. 30, 2022). ................................................................................................ 8

13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed.
Prac. & Proc. Juris. (3d ed. Apr. 2022 Update) ..................... 12, 13, 17, 23

§ 3531.5 .............................................................................................. 12, 13, 17

n.61 ................................................................................................................. 13

n.70 ...................................................................................................... 12, 13, 17

n.73 ................................................................................................................. 12

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.        ARGUMENT

**A.        Allowing an Amicus Brief Filed by an Ally of Defendant, Which Duplicates Defendant's Arguments and Citations, Would Be an Abuse.**

The Court should deny leave to file National Retail Federation's ("NRF") proposed *Amicus Curiae* Brief ("Amicus Brief") (Doc. 21-1) because it is an abuse of the *amicus curiae* procedure.  As then then-Chief Judge Posner stated more than two decades ago in scrutinizing the propriety of amicus briefs:

> "The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term 'amicus curiae' means friend of the court, not friend of a party. . . . An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.  See, e.g., *Miller–Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203 (9th Cir. 1982) (per curiam).  Otherwise, leave to file an amicus curiae brief should be denied."

*Ryan v. Commodity Futures Trading Com'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J.); *id.* at 1064 ("The bane of lawyers is prolixity and duplication, and for obvious reasons is especially marked in commercial cases with large monetary stakes. In an era of heavy judicial caseloads and public impatience with the delays and expense of litigation, we judges should be assiduous to bar the gates to amicus curiae briefs that fail to present convincing reasons why the parties' briefs do not give us all the help we need for deciding the appeal.").

1         **1.**      **NRF's Proposed Amicus Brief Echoes and Duplicates the Vast**

2                    **Majority of Defendant's Memorandum.**

3         NRF's proposed Amicus Brief "falls into the forbidden category" because it

4   "echoes" and overlaps with seven arguments in Defendant's Memorandum in support of

5   its Motion to Dismiss. *Ryan*, 125 F.3d at 1063-64. For example, Defendant's Motion

6   and NRF's Brief both argue that the First Amended Complaint ("FAC") fails to plead a

7   cognizable injury.[1] *Compare* Def.'s Mem. at 5:5-8:17; Doc. 18-1; Page ID #128-#131

8   *with* NRF's Brief at 2:18-4:17; Doc. 21-1; Page ID #198-#200.

9         Similarly, Defendant's Motion and NRF's Brief both argue that the FAC fails to

10  allege precise when Plaintiff used Defendant's chat feature, which is purportedly

11  relevant for purposes of determining the applicability of the affirmative defense of

12  statute of limitations. *Compare* Def.'s Mem. at 8:18-10:11; Doc. 18-1; Page ID #131-

13  #133 *with* NRF's Brief at 4:18-5:14; Doc. 21-1; Page ID #200-#201.

14        Similarly, Defendant's Motion and NRF's Brief both argue that Defendant cannot

15  be held liable under either the first or second clauses of section 631(a) of the California

16  Penal Code because such clauses are subject to a party exemption. *Compare* Def.'s

17  Mem. at 19:8-14; Doc. 18-1; Page ID #142 *with* NRF's Brief at 6:3-7:12; Doc. 21-1;

18  Page ID #202-#203.

19        Similarly, Defendant's Motion and NRF's Brief both argue that Defendant cannot

20  be held liable under the first clause of section 631(a) of the California Penal Code

21  because the FAC fails to plausibly allege that Defendant's chat feature tapped a

22

---

23  [1] Both Defendant and NRF ignore that CIPA violations constitute an intangible injury to

24  Californians' dignity, which is a substantive harm that is actionable without additional harm. *Matera v. Google Inc.*, 2016 WL 5339806, at *13 (N.D. Cal. Sept. 23, 2016)

25  ("CIPA create ***substantive*** rights to privacy in one's communications.") (emphasis added) ("the judgment of ... the California Legislature in creating enforceable,

26  ***substantive*** legal rights through ... ***CIPA supports finding that Plaintiff has alleged concrete injury based on the violation of those rights***") (emphasis added); *Friddle v.*

27  *Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any invasion of privacy involves an affront to human dignity***"); *id.* at 1661 ("The right to recover this statutory minimum

28  accrued at the moment the Privacy Act was violated.").

telegraph or telephone wire. *Compare* Def.'s Mem. at 16:24-18:5; Doc. 18-1; Page ID #139-#141 *with* NRF's Brief at 7:3-22; Doc. 21-1; Page ID #203.

Similarly, Defendant's Motion and NRF's Brief both argue that the FAC fails to plausibly allege that interception of Plaintiff's chat message occurred while such message was "in transit" as opposed to in storage at the intended recipient's server. *Compare* Def.'s Mem. at 18:6-19:1; Doc. 18-1; Page ID #141-#142 *with* NRF's Brief at 7:22-10:2; Doc. 21-1; Page ID #203-#206.

Similarly, Defendant's Motion and NRF's Brief both argue that the FAC fails to plausibly allege lack of consent. *Compare* Def.'s Mem. at 10:12-15:28; Doc. 18-1; Page ID #133-#138 *with* NRF's Brief at 10:3-11:16, 14:17-15:3; Doc. 21-1; Page ID #206-#207, #210-#211.

Similarly, Defendant's Motion and NRF's Brief both argue that the FAC fails to plausibly allege that Defendant communicated with Plaintiff via an actual telephone under section 632.7 of the California Penal Code. *Compare* Def.'s Mem. at 20:21-24:28; Doc. 18-1; Page ID #143-#147 *with* NRF's Brief at 11:17-14:16; Doc. 21-1; Page ID #207-#210.

What is remarkable about NRF's Brief is that it cross-references numerous pages of Defendant's Memorandum as support for its position. *See* NRF's Brief at 1:21-23, 2:19-20, 3:15-17, 4:24-25, 6:21-23, 7:7, 8:1-2, 8:10-12, 9:14, 10:8, 10:21, 11:21; Doc. 21-1; Page ID #197-#200, #202, #203-#207. What is the point of granting leave to NRF's Brief if it cross-references Defendant's Memorandum for support?

Additionally, NRF's Brief repeats the same unseemly smear arguments raised in Defendant's Motion intended to bias the Court. *Compare* Def.'s Mem. at 1:2, 1 n.1, 6 n.6; Doc. 18-1; Page ID #124, #129 *with* NRF's Brief at 1:21-23, 2:7; Doc. 21-1; Page ID #197-#198.

Thus, NRF's Brief "falls into the forbidden category" because it largely "echoes" arguments in Defendant's Memorandum in support of its Motion to Dismiss. *Ryan*, 125

F.3d at 1063-64.  In effect, NRF's Brief merely extends Defendant's brief.  "Such amicus briefs should not be allowed. They are an abuse." *Id.* at 1063.

Plaintiff submits that NRF has "fail[ed] to present convincing reasons why the parties' briefs do not give [the Court] all the help [it] need[s] for deciding the [Motion]." *Id.* at 1064.

### 2.   NRF Does Not Claim that Defendant Is Not Represented Competently.

"An amicus brief should normally be allowed when a party is not represented competently or is not represented at all . . . ." *Ryan*, 125 F.3d at 1063.  NRF does not claim that Defendant, which is represented by attorneys at the law firm of Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. is not represented competently or is not represented at all.  Surely, NRF believes the opposite.

### 3.   NRF Has Not Identified Any Interest in Any Other Case that May Be Affected by the Decision in the Instant Action.

"An amicus brief should normally be allowed . . . when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case) . . . ." *Ryan*, 125 F.3d at 1063.  NRF has failed to show that it has an interest in some other case that may be affected by a decision in the instant action. NRF is a self-described "trade association."  (Amicus Curiae Brief at 1:11; Doc. 21-1; Page ID #197.) NRF has failed to provide any evidence that it has a direct interest in some other case as, for example, a party such as a defendant.  NRF has similarly failed to provide any evidence that it has intervened in any other action as a party.  The mere fact that NRF may be interested in the outcome of Defendant's pending Motion to Dismiss in the instant action should not be enough to grant leave here.  Otherwise, trade associations like NRF would be incentivized to routinely inundate federal courts with similar motions regarding otherwise routine motions.  Indeed, NRF has failed to disclose the fact that it has moved for and obtained leave to file a similar amicus brief in a similar action alleging violations of the California Invasion of Privacy Act ("CIPA"), Cal.

Penal Code §§ 630 *et seq.*, which is currently pending in the Court.[2]  (Civil Minutes-General filed on December 23, 2022 in *Licea, et al. v. Cinmar, LLC, et al.*, No. 2:22-cv-06454-MWF-JEM, Doc. 41 (C.D. Cal. Dec. 23, 2022) (Fitzgerald, J.) (granting NRF's Motion for Leave to File Amicus Curiae Brief, which was construed as an ex parte application).

### 4. NRF Has Failed to Demonstrate that It Has "Unique Information or Perspective" That Can Help the Court Beyond the Help that the Lawyers for the Parties Are Able to Provide.

"An amicus brief should normally be allowed . . . when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan*, 125 F.3d at 1063.  NRF has failed to show that it has any "unique information or perspective" that can help the Court beyond the help that the lawyers for Defendant have already provided (and will provide in their reply brief and at oral argument) in advocating for Defendant's position with respect to the applicable law regarding sections 631(a) and 632.7 of the California Penal Code.

NRF does not contend that it has had any direct or indirect role regarding the legislative history of either statute at issue.  It is beyond dispute that CIPA was enacted in 1967.  In addition, NRF does not contend that its representative submitted any testimony at any committee hearing of the Legislature resulting in any amendment to either statute.  The Court can take judicial notice that CIPA was amended in 1985, 1990, and 1992.

A cursory review of NRF's proposed Amicus Brief indicates that NRF seeks to have the Court consider purported facts that go far beyond the alleged facts within the four corners of the FAC, which is, of course, generally impermissible on a motion to dismiss under Rule 12(b)(6).  *Sosa v. Bank of America Home Loan*, 2017 WL

---

[2] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

11635445, at *1 (C.D. Cal. Aug. 3, 2017) (Fitzgerald, J.) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). The Court may, however, take judicial notice of matters of public record outside the pleadings that are not subject to reasonable dispute."). For example, NRF asserts that "NRF members respect and protect the privacy of all their customers and website visitors." (NRF's Amicus Br. at 2:6-7; Doc. 21-1; Page ID #198.) It would be impermissible for the Court to consider such purported facts, and judicial notice cannot be taken of them. How would it be appropriate for the Court to take judicial notice of such purported practices of NRF's members? This is just one of numerous examples of topics addressed in NRF's proposed Amicus Brief, which far exceeds the appropriate scope in deciding Defendant's pending Motion to Dismiss.

Moreover, NRF's unstated goal is clearly to bias the Court against Plaintiff and her counsel by referring (in both NRF's Motion for Leave and in the proposed Amicus Brief itself) to the volume of similar CIPA cases litigated by individuals represented by Plaintiff's counsel. (*See* NRF's Mtn. at 1:19-20; Doc. 21; Page ID #187; Amicus Br. at 1:21-23; Doc. 21-1; Page ID #197.)

Notably, in *Portillo v. ICON Health & Fitness, Inc.*, 2019 WL 6840759 (C.D. Cal. Dec. 16, 2019) (Wright, J.), the Court denied a defendant's request for judicial notice regarding the plaintiff's involvement in other cases as "irrelevant to [the defendant's] conduct in this action" or to the "resolution of the instant Motion to Dismiss". *Portillo*, 2019 WL 6840759, at *2. The Court held that the defendant's request for judicial notice "contribute[d] nothing to the analysis of the parties' substantive claims for and against dismissal." *Id.*

NRF's reference to other lawsuits filed by Plaintiff or other clients of Plaintiff's counsel is irrelevant to any issues pertinent to deciding Defendant's pending Motion to Dismiss. *Garcia v. Hanjin Internationa l Corp.*, 2021 WL 4260408, at *2 (C.D. Cal.

June 16, 2021) (Gutierrez, J.) ("Plaintiff's litigation history is immaterial to this motion [to dismiss]."); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("we emphasize that [Appellant's] litigation history is immaterial to our resolution of this case").   NRF's reference to other lawsuits constitutes improper character evidence that is prejudicial to Plaintiff, as NRF and its counsel surely know.  *See, e.g.*, *Lobato v. Gomez*, 2017 WL 931824, at *5 (E.D. Cal. Mar. 8, 2017) ("The motion is granted to the extent that the Defendants may attempt to use evidence of prior litigation history solely to show that [plaintiff] has a character trait of litigiousness."); *Henderson v. Peterson*, 2011 WL 2838169, at *6 (N.D. Cal. July 15, 2011).

There is no prohibition against suing multiple parties in different lawsuits for separate and distinct CIPA violations.  *Holloway v. Full Spectrum Lending*, 2007 WL 7698843, at *8 (C.D. Cal. June 26, 2007) (Carter, J.) ("nothing in the [statute] precludes a plaintiff from suing multiple parties that have violated her rights"); *Wilson v. Murillo*, 163 Cal. App. 4th 1124, 1128 n.3 (2008) ("Numerosity alone, however, is insufficient to show that his lawsuits are frivolous or harassing. . . . 'From all that appears, the number of lawsuits [plaintiff] has filed does not reflect that he is a vexatious litigant; rather, it appears to reflect the failure of the defendants to comply with the law.'"); *cf. Molski v. Evergreen Dynasty Corp.*, 521 F.3d 1215, 1220 (9th Cir. 2008) ("[W]hile self-interest surely drives serial access litigation in part, the reason there *can* be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original).

"Such is the nature of 'private-attorney-general' provisions:  Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong." *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), *appeal dismissed*, No. 16-4278 (7th Cir. Oct. 4, 2017).  "[W]ith damages far outstripping the actual loss, it is not surprising that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id.*  "The fact that statutes . . .

give rise to 'cottage industries' can't be laid at the feet of attorneys who take advantage of them." *Id.*

"The statute is what it is, and judges must implement its rule whether or not they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011) (Easterbrook, C.J.).

The Court should reject NRF's smear campaign tactics intended to bias the Court. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign . . . .").

"Unless at issue or relevant in a particular proceeding, an attorney should avoid degrading the intelligence, ethics, morals, integrity, or personal behavior of others." (California Attorney Guidelines of Civility and Professionalism § 8.)  The Attorney Guidelines of Civility and Professionalism are available for downloading via the State Bar of California's website at:   http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Ethics/Attorney-Civility-and-Professionalism (last visited Dec. 30, 2022). "Lawyers who appear before this District are expected to comport themselves with civility and professionalism." *Kuhmstedt v. Enttech Media Group, LLC*, 2022 WL 1769126, at *6 (C.D. Cal. Apr. 11, 2022) (Wilson, J.).

"[A] personal attack on . . . counsel's integrity may constitute misconduct[.]" *Anderson v. Yates*, 2011 WL 8006963, at *26 (C.D. Cal. Nov. 30, 2011) (Chooljian, Mag. J.) (R&R) (quoting *United States v. Santiago*, 46 F.3d 885, 892 (9th Cir.), *cert. denied*, 515 U.S. 1162 (1995)), *adopted in* 2012 WL 2133753 (C.D. Cal. June 11, 2012) (Pregerson, J.); *Alvarado v. Bratton*, 2009 WL 10699453, at *4 (C.D. Cal. June 1, 2009) ("the personal attacks leveled against counsel are inconsistent with the level of professionalism the Court expects of the lawyers who appear before it, and are neither persuasive nor do they advance the interests of the parties"); *Ewing v. Empire Capital Funding Group, Inc.*, 2019 WL 157660, at *3 (S.D. Cal. Jan. 10, 2019) ("A fair and efficient judiciary requires civility and professionalism on the part of litigants.  Personal

attacks or continued incivility will lead to further sanctions."); *Stone v. Foster*, 106 Cal. App. 3d 334, 355 (1980) ("Personal attacks on the character or motives of the adverse party, his counsel or his witnesses are misconduct.").

Indeed, "the Supreme Court has admonished counsel to refrain from 'unfounded and inflammatory attacks on the opposing advocate.'" *Anderson*, 2011 WL 8006963, at *26 (quoting *United States v. Young*, 470 U.S. 1, 9 (1985)).

**B.    Assuming *Arguendo* that the Court Grants NRF Leave to File Its Amicus Brief, NRF's Analysis Should Not Change the Outcome of Defendant's Motion to Dismiss.**

Assuming *arguendo* that the Court grants NRF leave to file its amicus brief, NRF's analysis should not change the outcome of Defendant's Motion to Dismiss the FAC, which should be denied for the reasons set forth below.

**1.    The FAC Sufficiently Alleges Injury in Fact For Purposes of Evaluating Constitutional Standing Under Article III of the U.S. Constitution.**

NRF's lead argument is that the FAC fails to sufficiently allege Article III constitutional standing to sue.  (Amicus Br. at 2:18-4:17.)  NRF argues that the FAC fails to allege an injury in fact.  *Id.* at 2:18-3:11.

Notably, NRF has interposed an argument that Defendant has failed to assert under Article III of the U.S. Constitution.[3]  That is, Defendant has not argued that the FAC fails to sufficiently allege Article III constitutional standing.  Indeed, Defendant's Memorandum fails to cite Article III of the U.S. Constitution even once.  (*See* Doc. 18-1.)

In any event, NRF's argument is simply wrong.  First, NRF conveniently ignores the fact that multiple district courts within the Ninth Circuit have expressly held that constitutional standing to sue exists under Article III to pursue claims under CIPA,

---

[3] Defendant's Memorandum presumably challenges instead statutory standing under CIPA's requirements.

which necessarily means that such claims satisfy Article III's "concrete injury" requirement.[4] "[A]llegations of violations of Plaintiffs' statutory rights under CIPA, without more, constitute injury in fact because instead of a bare technical violation of a statute, as was the case under the FCRA considered in *Spokeo[, Inc. v. Robins*, 578 U.S. 330 (2016)], a CIPA violation "involves much greater concrete and particularized harm ... a violation of privacy rights", and therefore, a violation of CIPA is a "violation of a procedural right granted by statute ... sufficient ... to constitute injury in fact." *Osgood*, 2017 WL 131829, at *7 (quoting *Romero*, 216 F. Supp. 3d at 1089).

Indeed, NRF ignores *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Being eavesdropped upon is a concrete (though intangible) harm….").[5]

Second, as Plaintiff has argued in opposition to Defendant's Motion to Dismiss, any violation of the ***substantive*** right to privacy is not a "technical" or "harmless" violation as asserted by Defendant.   (Def.'s Mem. at 5:19; 5:26; 6:5-6); *Matera v. Google Inc.*, 2016 WL 5339806, at *13 (N.D. Cal. Sept. 23, 2016) ("CIPA create ***substantive*** rights to privacy in one's communications.") (emphasis added) ("the judgment of . . . the California Legislature in creating enforceable, ***substantive*** legal rights through . . . ***CIPA supports finding that Plaintiff has alleged concrete injury based on the violation of those rights***") (emphasis added).   Defendant's invasion of Plaintiff's right to privacy injured Plaintiff's dignity.   *Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660-61 (1993) ("***Any invasion of privacy involves an affront to human***

---

[4] *See, e.g.*, *Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *2-*3 (C.D. Cal. Dec. 19, 2016) (King, J.); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *5-*6 (C.D. Cal. Oct. 13, 2016) (Otero, J.); *Matera v. Google Inc.*, 2016 WL 5339806, at *14 (N.D. Cal. Sept. 23, 2016); *Osgood v. Main Streat Marketing, LLC*, 2017 WL 131829, at *7-*8 (S.D. Cal. Jan. 13, 2017); *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d 1078, 1087-89 (S.D. Cal. 2016); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *7-*8 (S.D. Cal. June 29, 2016); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013).
[5] NRF has cited *Graham v. Noom*, 533 F. Supp. 4d 823 (N.D. Cal. 2021) (Beeler, Mag. J.), which, in turn, cites *Revitch*.  *See Graham*, 533 F. Supp. 3d at 832.  Thus, NRF is surely familiar with *Revitch*.

*dignity*").  "Section 637.2 is fairly read as establishing that no violation of the Privacy Act is to go unpunished."  *Id.* at 1660.  "The right to recover this statutory minimum accrued at the moment the Privacy Act was violated."  *Id.* at 1661.  Indeed, subdivision (c) of section 637.2 states, "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***."  (Cal. Penal Code § 637.2(c)) (emphasis added).  It is beyond dispute that CIPA is intended to protect Californians' right to privacy.  (Cal. Penal Code § 630) ("The Legislature by this chapter intends to protect the right of privacy of the people of this state.").  Indeed, the right to privacy is enshrined in the California Constitution.  (Cal. Const. Art. 1, § 1.)

NRF's argument that the FAC should into greater detail about Plaintiff's use of Defendant's online chat feature, (Amicus Br. at 3:1-11), is a backdoor attempt to make an end-run around *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007), whereby the U.S. Supreme Court noted that "we do not apply any 'heightened' pleading standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9[.]" *Twombly*, 550 U.S. at 569 n.14.  NRF's arguments seek to improperly invoke a heightened pleading standard to the FAC, which is misguided as a matter of law.

NRF's argument predicated upon Defendant's purported "***clearly disclosed*** Privacy Policy," (Amicus Br. at 3:15-20) (emphasis added), is flawed.  As Plaintiff has argued in opposition to Defendant's Motion to Dismiss, Defendant's reliance on extrinsic evidence allegedly published on its own website to attempt to prove that Plaintiff implicitly consented to unlawful wiretapping, eavesdropping, and recording, (Def.'s Mem. at 12:19-15:28), is procedurally improper.  *Gerritsen v. Warner Bros. Enter. Inc.*, 112 F. Supp. 3d 1011, 1030-31 (C.D. Cal. 2015) (Morrow, J.) ("the court declines to take judicial notice of information published on private websites") (citing cases).  Assuming *arguendo* that the Court considers exhibit 5 to Defendant's RJN, (Doc. 19 at pg. 25 of 30; Page ID #175), the textual notice and hyperlink contained in the pop-up banner on page 3 therein are inconspicuous.  Not surprisingly, NRF's Amicus Brief is completely bereft of any legal analysis regarding the extent to which

NRF's banner and Defendant's Terms of Service at issue are either conspicuous or inconspicuous.   As such, NRF's bald conclusion asserting the conspicuousness of Defendant's Privacy Policy is meaningless.

**2.      The FAC Has Sufficiently Alleged an Injury to Plaintiff's Dignity That Is "Fairly Traceable" to Defendant's Conduct.**

**a.      The FAC Does Not Show that Plaintiff's Injury Is *Solely* Her Own Fault, Which Is Necessary to Break the Causal Chain.**

NRF challenges the causal connection between Plaintiff's injury to her dignity and Defendant's alleged wrongdoing by arguing that Plaintiff suffered a self-inflicted injury.  (Amicus Br. at 3:12-4:15.)  NRF's cramped analysis is without merit.

"[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted).

As a well-recognized treatise on federal practice has explained, "Self-inflicted injury may seem a suspicious basis for standing.  It is clear, however, that no rigid lines are drawn on this basis."  13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 (3d ed. Apr. 2022 Update) ("Wright, Miller & Cooper").  That same treatise further explained, "Standing is not defeated merely because the plaintiff has in some sense contributed to his own injury."  Wright, Miller & Cooper, *supra*, § 3531.5 & n.70.  "A self-inflicted injury defeats standing only if the injury is ***so completely due to the plaintiff's fault as to break the causal chain***."  *Id.* at n.70 (emphasis added) (citing *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting Wright, Miller & Cooper); Wright, Miller & Cooper, *supra*, § 3531.5 & n.73 ("Standing is defeated only if it is concluded that the injury is ***so completely due to the plaintiff's own fault as to break the causal chain***.") (emphasis added); *Telephone Science Corp. v. Asset Recovery Solutions, LLC*, 2016 WL 4179150,

at *6 (N.D. Ill. Aug. 8, 2016) (citing *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, J.) and Wright, Miller & Cooper, *supra*).

"It is enough for standing that ***the defendants' conduct may have contributed to causing the injury***."[6]  Wright, Miller & Cooper, *supra*, at n.70 (emphasis added) (citing *Backer*, 788 F.3d at 344).

Notably, the aforementioned treatise cited in support as illustrative the U.S. Supreme Court's landmark decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982).[7]  Wright, Miller & Cooper, *supra*, § 3531.5 & n.61.  *Havens* held, "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the statute prohibiting unlawful misrepresentations]."  *Id.* at 374.

In *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1101-02 (9th Cir. 2017) ("*CREEC*"), the Ninth Circuit expressly cited *Havens Realty Corp.* in support of its Article III standing analysis in a case involving allegations of violations of Title III of the ADA.  867 F.3d at 1101-02.  Notably, the Ninth Circuit held that "a plaintiff has constitutional standing" even if "her only

---

[6] "Plaintiffs do not ordinarily have an obligation to change their behavior in order to escape injury from the unlawful acts of defendants . . . ."  *Chicago Professional Sports Limited Partnership v. National Basketball Ass'n*, 754 F. Supp. 1336, 1353 (N.D. Ill. 1991) ("Logically, the NBA's argument has holes. If I swing my fist at your face, you may decide to duck. But if you stand still, and I deck you, I am the cause of your injury. You did not punch yourself.").

[7] There is nothing to indicate that *Havens Realty Corp.* should be interpreted as limited to "housing discrimination" only.  (Amicus Br. at 4:5.)  Testers also have been recognized in employment discrimination cases.  *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 300 (7th Cir. 2000) (holding that employment "testers" have standing to sue under Title VII of the Civil Rights Act of 1964); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (referring to "testers" "in housing ***and employment litigation***") (emphasis added).  In addition, federal courts, including the Ninth Circuit, have long recognized that testers can establish Article III standing in cases alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*  *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096, 1101-02 (9th Cir. 2017).  Furthermore, *Murray* was a ***consumer protection*** action brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(c)(1)(B)(i), 1681m(d)(1)(D).  *Murray*, 434 F.3d at 950.

motivation for visiting a facility is to test it for ADA compliance". *Id.* at 1096; *id.* at 1102 ("We . . . conclude that motivation is irrelevant to the question of standing under Title III of the ADA.  The Named Plaintiffs' status as ADA testers thus does not deprive them of standing."); *id.* at 1101-02 (noting that 42 U.S.C. § 12182(a) states that "*[n]o individual* shall be discriminated against on the basis of disability" and noting that Title III provides remedies for "any person" subjected to illegal disability discrimination as stated in 42 U.S.C. § 12188(a)(1)) (emphasis in original); *see also D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.") (quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007)); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination.") ("Title III's broad general rule contains no express 'clients or customers' limitation . . . .") (quoting *PGA Tour v. Martin*, 532 U.S. 661, 679, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001)).

The Ninth Circuit is not alone in citing *Havens* favorably for its Article III standing analysis.  *See, e.g.*, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330–40 (11th Cir. 2013) (finding the plaintiff's tester motive behind his visit to supermarket did not foreclose standing for his claim under Title III of the ADA); *id.* at 1331 (citing *Havens* in support of the proposition that Congress omitted a requirement that there be a "bona fide offer" to rent or purchase insofar as it banned discriminatory representations in § 804(d) of the Fair Housing Act in contrast to § 804(a)); *id.* at 1332 ("The substantive right conferred by [the ADA] statute is to be free from disability discrimination in the enjoyment of the facility, regardless of [plaintiff's] motive for visiting the facility."); *id.* ("Nothing in that statutory language precludes standing for tester plaintiffs; if anything, 'no individual' and 'any person' are broad terms that

necessarily encompass testers."); *id.* at 1333 ("Congress has in other anti-discrimination statutes required that a plaintiff have 'bona fide' –as opposed to tester-status"); *id.* at 1333-34 ("Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status.  But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff['s] lawsuit.").

In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006), the Seventh Circuit, citing *Havens*, held that "testers" "usually are praised rather than vilified," *id.* at 954, noted that the district judge had failed to "cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders," *id.*, and stated, "Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Id.*  In *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721 (7th Cir. 2011) (Posner, J.), the Seventh Circuit, citing *Murray*, stated that "it's not unlawful to be a professional class action plaintiff".  *Id.* at 724 (citing *Murray*); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1056 (9th Cir. 2009) ("[T]he term 'professional,' as in 'professional plaintiff,' is not a 'dirty word,' . . . and should not itself undermine one's ability to seek redress for injuries suffered . . . .") (citing *Murray*); *Holloway v. Full Spectrum Lending*, Case No. CV 06-5975 DOC (RNBx), 2007 WL 7698843, at *8 (C.D. Cal. June 26, 2007) (Carter, J.) ("Next, [defendant] argues that [plaintiff] is a "professional plaintiff" who is closely tied to her lawyers. ***The Court agrees with the Seventh Circuit that nothing in the [federal statute at issue] precludes a plaintiff from suing multiple parties that have violated her rights***.") (emphasis added) (citing *Murray*).

In *Shaver v. Independent Stave Co.*, 350 F.3d 716 (8th Cir. 2003), the Eighth Circuit reversed the district court's granting of summary judgment against a terminated employee who had sued his former employer for retaliation under Title I of the ADA. Although the district court had concluded that the plaintiff had attempted to

manufacture a retaliation claim against her former employer, *id.* at 723, the Eighth Circuit rejected the district court's view that "manufactured" claims are not actionable. *Id.* The Eighth Circuit noted, "The district court seems to have added an additional requirement [to state a prima facie case], namely, that the party asserting the claim did not purposefully seek the adverse action. Nothing in the words of the statute or in our cases, however, suggests that the conduct of the aggrieved party, other than the party's initial protected activity, is relevant." *Id.* at 724. Significantly, the Eighth Circuit expressly cited "tester" cases including *Havens* in which "claims were created solely for the purpose of litigation." *Id. Shaver* noted that two different reasons allowed such suits to proceed. First, it cited a "dignitary interest" that discrimination statutes are designed to protect regardless of any economic harm to the plaintiffs. *Id.* Second, "tester cases have been allowed to proceed on a 'private attorney general' theory." *Id.* "By giving litigants an incentive to attack illegal activity . . . , Congress enlisted private self-interest in the enforcement of public policy." *Id.* at 724-25. The Eighth Circuit held, "[W]e disagree with the district court's holding that a 'manufactured' claim that meets the statutory requirements cannot proceed." *Id.* at 725.

*Shaver* is directly on point. As was the case in *Shaver*, Plaintiff's dignitary interest is intended to be protected by the statutes at issue here, namely, CIPA. *Friddle*, 16 Cal. App. 4th at 1660-61 ("***Any invasion of privacy involves an affront to human dignity***"). In addition, the California Legislature "enlisted private self-interest in the enforcement of public policy" "[b]y giving litigants an incentive to attack illegal activity," 350 F.3d at 724-25, via the minimum statutory damages remedy of $5,000. Cal. Penal Code § 637.2(a)(1). Indeed, the U.S. Supreme Court has "recognized on numerous occasions that 'all civil penalties have some deterrent effect.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 185 (2000) (Ginsburg, J.); *id.* at 185-86 ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress.

***Civil penalties can fit that description***.  To the extent that they encourage defendants to discontinue current violations and ***deter*** them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct.") (emphasis added).

Here, the injury to Plaintiff's dignity was "not solely attributable to" "[P]laintiff's actions."  Wright, Miller & Cooper, *supra*, at n.70 (citing *Backer*, 788 F.3d at 344).  Rather, the FAC makes it clear that Defendant's unlawful conduct contributed to causing the injury either solely or almost entirely on its own.  Thus, NRF's causation analysis is without merit.

### b.   *Mendia v. Garcia* **Is Distinguishable.**

NRF's reliance on *Mendia v. Garcia*, 768 F.3d 1009, 1013 n.1 (9th Cir. 2014), is misplaced because it should be narrowly construed as limited to the unique facts at issue therein, *i.e.*, a pretrial detainee who deliberately chose to stay in state custody (jail) despite the fact that the state court granted the plaintiff release on his own recognizance purportedly because the plaintiff allegedly feared that if he left state custody, ICE would seize and deport him (despite his status as a U.S. citizen).  In essence, the Ninth Circuit implicitly found that the plaintiff alleged a "self-inflicted injury" because his alleged fear of "future harm" could not be deemed fairly traceable to the actions of the ICE agents who allegedly lodged an immigration detainer against the plaintiff (precluding him from securing his pre-trial release via bail).  Significantly, the Ninth Circuit found that the plaintiff's alleged fear about being seized and deported by ICE upon his release from state custody was "entirely speculative."  *Mendia*, 768 F.3d at 1013 n.1.  Thus, the Ninth Circuit, in essence, held that it was entirely unreasonable for the plaintiff therein to remain in jail despite the state court granting him release on his own recognizance.  That is a far cry from the facts alleged in the FAC filed in the instant action.  That is, the FAC does not allege any facts from which to infer that it would be entirely unreasonable for Plaintiff to expect Defendant to comply with sections 631(a) and 632.7 of the California Penal Code.

Moreover, what if the plaintiff in *Mendia* had established a non-speculative fear about being deported by ICE in the future (based on evidence showing personal animosity towards him by high-ranking ICE officials)?  If the plaintiff had functioned as a litigation tester, would that affect the outcome of that hypothetical fact pattern with respect to the issue of Article III standing?  Simply put, there is nothing in *Mendia* suggesting that the plaintiff therein would lack constitutional standing under those circumstances if such plaintiff had established a non-speculative fear about being deported by ICE in the future.

Further, the Ninth Circuit in *Mendia* had no occasion to reconcile its opinion with *Havens*.

Finally, NRF has failed to make any attempt to reconcile *Mendia* with *CREEC*.

### c. *Red v. General Mills, Inc.* Is Distinguishable.

NRF's reliance on *Red v. General Mills, Inc.*, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) (Wright, J.), is misplaced as it is distinguishable.  *Red* involved a fact pattern in which the individual plaintiff alleged false advertising in violation of the "unfair" and "unlawful" prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.  *Red*, 2015 WL 9484398, at *1.  Although the operative pleading in *Red* did not expressly allege the violation of the "fraud" prong of the UCL, the Court surely treated the allegations at issue therein as invoking that prong of the UCL, which is important because it triggered an actual reliance requirement as part of the UCL's statutory standing requirements.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) ("We conclude that a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate ***actual reliance*** on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.") (emphasis added).  Thus, the Court in *Red*, in essence, found that the pleading at issue therein failed to sufficiently allege the required element of actual reliance in light of the litigation history of the plaintiff, which the Court took judicial notice of.  *Red*, 2015 WL

9484398, at *3 (taking judicial notice of the fact that the plaintiff therein was the named plaintiff in three other "substantially similar" putative class action complaints alleging "false advertising claims relating to various misrepresentations on the product's ingredient label relating to the trans-fat content of the product and the health effects of consuming the product").

Here, in contrast, Plaintiff has not asserted any UCL claim for relief at all, and there is no actual reliance element under either section 631(a) of the Penal Code nor section 632.7 of the Penal Code. Indeed, the broad scope of CIPA is demonstrated by the fact that the California statute that authorizes minimum statutory damages of $5,000 for CIPA violations, (Cal. Penal Code § 637.2(a)(1)), states in subdivision (c) of section 637.2 as follows, "It is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, ***actual damages***." (Cal. Penal Code § 637.2(c)) (emphasis added). Thus, the California Legislature intended to deter any CIPA violations by omitting an actual damages requirement for CIPA violations.

In addition, the Court in *Red* failed to make any attempt to reconcile its decision about "self-inflicted injury" with the U.S. Supreme Court's decision in *Havens*. And, *Red* was decided before *CREEC* was decided. Thus, to the extent that *Red* is inconsistent with either *Havens* or *CREEC* in addressing constitutional standing under Article III of the U.S. Constitution, *Red* should not be followed here.

### d.   *Makaryan v. Volkswagen Group of America, Inc.* Is Distinguishable.

NRF's reliance on *Makaryan v. Volkswagen Group of America, Inc.*, 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) (Anderson, J.), is misplaced. *Makaryan* involved a fact pattern in which the plaintiff alleged that the Start/Stop System on the plaintiff's Audi A3 automobile operated defectively because the vehicle's engine will not restart if, during a stop, the driver's seat belt is removed. *Id.* at *1. Not only did the Court find a failure to allege a sufficient injury in fact, *id.* at *5-*6, the Court also found that the complaint failed to sufficiently allege causation for Article III standing purposes. *Id.* at

1    *6-*7.  Notably, the Court held that "the alleged defect upon which Plaintiff's claims
2    are based is only revealed when she takes a specific action that is disavowed by the
3    manufacturer . . . (directing drivers to wear seat belts) . . . and generally is illegal[.]" *Id.*
4    at *7.  The Court held that "[t]he Unintended Rolling is most directly caused by
5    Plaintiff's own action." *Id.*  The Court added, "But even if there are circumstances in
6    which a driver may desire to unfasten her seat belt without placing the vehicle in park,
7    the fact remains that such use of the vehicle is contrary to the manufacturer's
8    recommendation." *Id.*  In other words, the plaintiff's misuse of the automobile product
9    by driving it with the driver's seat belt removed was deemed to have solely broken the
10   causal chain connecting the defendant's alleged conduct to the plaintiff's injury in fact,
11   which, as mentioned above, was deemed to be insufficient as a matter of law.

12        Here, in contrast, Plaintiff's use of Defendant's chat feature was not disavowed
13   by Defendant as somehow improper or illegal.  Thus, *Makaryan* is akin to comparing
14   apples to oranges.

15        **e.    NRF Omits to Mention that *Laufer v. Looper* Held that a**
16        **Plaintiff's Tester Status Does Not Defeat Standing.**

17        NRF's reliance on the Tenth Circuit's decision in *Laufer v. Looper*, 22 F.4th 871,
18   879 (10th Cir. 2022), is misplaced.  Although *Laufer* noted that the plaintiff's "status as
19   a tester alone is insufficient to confer standing," 22 F.4th at 879, NRF conveniently
20   omits to mention that *Laufer* also held that "[the plaintiff's] status as a tester ***does not***
21   ***defeat standing***." *Id.* at 883 (emphasis added).  Indeed, *Laufer* reiterated that "***testers***
22   ***may have standing under the ADA regardless of their motivations for encountering a***
23   ***violation***." *Id.* (emphasis added).  In so doing, *Laufer* expressly cited and echoed the
24   Tenth Circuit's decision in *Colorado Cross-Disability Coalition v. Abercrombie &*
25   *Fitch Co.*, 765 F.3d 1205 (10th Cir. 2014), the latter of which held that "anyone who
26   has suffered an invasion of the legal interest protected by Title III [of the ADA] ***may***
27   ***have standing, regardless of his or her motivation in encountering the invasion***". *Id.*

28

at 1211 (emphasis added), *quoted in Laufer*, 22 F.4th at 882.  Notably, *Laufer* did not purport to overrule its prior decision in *Colorado Cross-Disability Coalition*.

In addition, although *Laufer* noted that the plaintiff's "status as a tester alone is insufficient to confer standing," 22 F.4th at 879, *Laufer* is a non-binding Tenth Circuit decision; whereas, the Ninth Circuit's decision in *CREEC* is binding on this Court.  Thus, this Court is bound to follow *CREEC*.  867 F.3d at 1096, 1101-02.

### f.  *Center for Biological Diversity v. United States Environmental Protection Agency* **Is Distinguishable.**

NRF's reliance on *Center for Biological Diversity v. United States Environmental Protection Agency*, 937 F.3d 533 (5th Cir. 2019), is misplaced.  Notably, the Fifth Circuit focused therein on the planned future activities of the members of three environmental organizations who had sued as plaintiffs because the plaintiffs (*i.e.*, the three entities) sought prospective (injunctive) relief.  *Id.* at 539.  Thus, the Fifth Circuit avoided analysis of whether the members of the three plaintiff organizations had been ***actually harmed*** based on their members' ***past*** activities.  The Fifth Circuit held that one individual member of a plaintiff organization could not show "any adverse effect" because "someone who goes looking for pollution cannot claim an aesthetic injury in fact from seeing it."  *Id.* at 540.  The Fifth Circuit explained that "crucial to an aesthetic injury is that the aesthetic experience was actually offensive to the plaintiff."  *Id.*  It added, "A person cannot manufacture standing by voluntarily setting aside potential aesthetic interests (like viewing a pristine expense of ocean) to pursue an incompatible interest (like viewing oil spills)."  *Id.* at 541.  The Fifth Circuit stated that its analysis was consistent with "***the general rule*** that 'standing cannot be conferred by a self-inflicted injury.'"  *Id.* (emphasis added) (citing *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018)).  In other words, the Fifth Circuit seemed to recognize that exceptions to the general rule exist, but failed to elaborate as to such exceptions.

In addition, although the Fifth Circuit cited as support *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), *Clapper* held that "respondents cannot manufacture standing

merely by inflicting harm on themselves based on their fears of ***hypothetical future harm*** that is ***not certainly impending***." *Id.* at 416 (emphasis added). *Clapper* added, "We hold that respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is ***certainly impending*** and because they cannot manufacture standing by incurring costs in anticipation of ***non-imminent harm***." *Clapper*, 568 U.S. at 422. By negative inference, if the plaintiffs in *Clapper* has sufficiently alleged certainly impending future injury, *i.e.*, imminent harm, then *Clapper* presumably would have found Article III standing to exist even if self-injury had been inflicted.

Here, in contrast, although the FAC seeks injunctive relief as one of the multiple remedies sought herein, the FAC also seeks statutory damages for past CIPA violations. (FAC at 10:18.) That matters. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). In other words, the standing analysis relevant to seeking prospective injunctive relief is not the same analysis required for seeking statutory damages for past wrongdoing. Indeed, in *Mendia*, which is a decision cited by NRF, the Ninth Circuit reversed the district court's dismissal of the plaintiff's complaint for lack of Article III standing upon finding that the plaintiff had adequately alleged causation regarding past injury via his loss of liberty resulting from his pre-trial detention in county jail. *Mendia*, 768 F.3d at 1012-15. Notably, the Ninth Circuit conducted a separate standing analysis regarding "the ***future harm*** [plaintiff] claimed to fear." *Id.* at 1013 n.1 (emphasis added); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983) (holding that the allegation that the plaintiff was illegally choked by the police "while presumably affording [plaintiff] standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness

without any provocation or resistance on his part") (holding that notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief).  Thus, instead of focusing exclusively on "impending" harm under *Clapper*, the standing analysis in the instant action must also consider the "actual" injury alleged to have taken place in the past.

In addition, the Fifth Circuit held that an aesthetic injury, by definition, is inconsistent and incompatible with an individual whose interest is to deliberately view oil spills.  937 F.3d at 541.  Here, in contrast, there is nothing inconsistent with or incompatible with Plaintiff's tester status, on one hand, and Plaintiff's privacy interest being harmed by Defendant's wrongdoing, on the other hand, especially because Plaintiff has alleged her dual motivations to visit the Website at issue.  (FAC ¶ 16); *Harty v. Simon Prop. Group, L.P.*, 428 Fed. Appx. 69, 71 (2d Cir. 2011) (allegation that plaintiff "plans to return [to shopping mall] both as a patron ... and as a tester 'to determine whether the property has been made ADA compliant' " was sufficient to establish standing).

Furthermore, the Fifth Circuit made no attempt to reconcile its opinion with *Havens* or distinguish *CREEC*.

Finally, *Center for Biological Diversity* is not binding on this Court; whereas, *CREEC* is binding.

### g. *National Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales* Is Unpersuasive.

NRF's reliance on *National Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006), is misplaced.  The D.C. Circuit made no attempt to reconcile its decision with then-Judge Ginsburg's opinion in *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438 (D.C. Cir. 1989) (Ginsburg, J.), which cited the aforementioned analysis in Wright, Miller & Cooper, which, in turn, cited *Havens*.  The D.C. Circuit also made no direct attempt to reconcile its opinion

with *Havens*.   And, the D.C. Circuit's opinion therein is not binding on this Court; whereas, *CREEC* is binding.

Thus, NRF's contention that the FAC fails to sufficiently allege a cognizable "injury" under Article III of the U.S. Constitution is wrong.

### 3.    NRF's "Commonplace Technology" Argument Is Flawed.

NRF contends that "numerous businesses" should not be "threaten[ed]" by "civil and criminal liability simply for using ***commonplace technology*** to . . . serve customers in California." (Amicus Br. at 2:8-11) (emphasis added).   But, the mere use of "commonplace technology" is no excuse for violating either federal or state consumer protection statutes in which a consumer's privacy is at stake.

For example, another "commonplace technology" that is ubiquitous in modern times is the use of an electronic point-of-sale system for debit or credit card transactions at a brick-and-mortar retail store in which a printed hard copy receipt of such electronic transaction identifies at least some part of the payment card's numbers.   The printing of such information is regulated by a federal statute known as the Fair and Accurate Credit Transactions Act (commonly known as "FACTA"), which was enacted into law in 2003.   Under FACTA, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the card holder at the point of the sale or transaction.   15 U.S.C. § 1681c(g)(1) ("Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.").   Although the instant action does not involve FACTA, the point is that just because a merchant uses "commonplace technology" in furtherance of its transactions with consumers does not mean that Congress (or a state Legislature) are precluded from imposing common sense, reasonable requirements on the use of such "commonplace technology," which is intended to protect consumers' privacy interest.

## II.    CONCLUSION

Based upon the foregoing, it is respectfully requested that the Court deny NRF's Motion in its entirety and grant such further and other relief as the Court deems appropriate.

Dated:  December 30, 2022                    PACIFIC TRIAL ATTORNEYS, P.C.

                                             By: _/s/ Scott J. Ferrell_

                                             Scott. J. Ferrell
                                             Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2022, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

_/s/ Scott J. Ferrell_____
Scott J. Ferrell