UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1652 JGB (KKx)** | Date | February 14, 2023 |
|---|---|---|---|
| Title | *Arisha Byars v. Hot Topic, Inc. et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) GRANTING Defendant's Motion to Dismiss (Dkt. No. 18); and (2) VACATING the February 27, 2023 Hearing

   Before the Court is a motion to dismiss filed by Defendant Hot Topic Inc. ("Defendant" or "Hot Topic"). ("Motion," Dkt. No. 18.)  The Court determines the matter is appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering all papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion.  The February 27, 2023 hearing is VACATED.

## I.   BACKGROUND

   On September 20, 2022, Plaintiff Arisha Byars ("Plaintiff" or "Ms. Byars") filed a putative class action complaint against Defendant Hot Topic and Does 1-25.  ("Complaint," Dkt. No. 1.)  On September 29, 2022, the parties filed a joint stipulation extending the time for Defendant to answer the Complaint.  (Dkt. No. 10.)  On November 11, 2022, Defendant filed a motion to dismiss the Complaint.  (Dkt. No. 11.)

   On November 18, 2022, Plaintiff filed a first amended complaint.  ("FAC," Dkt. No. 16.)  The FAC asserts subject matter jurisdiction under the Class Action Fairness Act ("CAFA").  (See id.)  The FAC alleges two causes of action: (1) violations of the California Invasion of Privacy Act ("CIPA") pursuant to Cal. Penal Code § 631; and (2) violations of CIPA pursuant to Cal. Penal Code § 632.7.  (See id.)

On November 21, 2022, the Court denied Defendant's motion to dismiss the Complaint as moot. (Dkt. No. 17.)

On December 2, 2022, Defendant filed the Motion. (Motion.) In support of the Motion, Defendant filed a request for judicial notice. ("RJN," Dkt. No. 19.)[1]

On December 7, 2022, the National Retail Federation (NRF) filed a motion for leave to file an *amicus curiae* brief. ("Motion for Leave," Dkt. No. 21.) In support of the Motion for Leave, the National Retail Federation filed a Brief of *Amicus Curiae* the National Retail Federation in Support of Defendant's Motion to Dismiss. ("Brief Amicus Curiae of NRF," Dkt. No. 21-2.)

On December 30, 2022, Plaintiff filed an opposition to the Motion. ("Opposition to Motion," Dkt. No. 25.) The same day, Plaintiff filed an opposition to the Motion for Leave. ("Opposition to NRF," Dkt. No. 26.) On January 9, 2023, Plaintiff filed a reply in support of the Motion. ("Reply," Dkt. No. 28.) The same day, Plaintiff filed a reply in support of the RJN. (Dkt. No. 29.)

On January 19, 2023, the Court continued the hearing on the Motion from January 23, 2023 to February 27, 2023. (Dkt. No. 31.) On February 9, 2023, the Court granted the Motion for Leave. (Dkt. No. 32.)

## II. FACTS

Hot Topic is a retailer that specializes in clothing, accessories and music. (Motion at 2.)[2] Plaintiff is a resident and citizen of California. (FAC ¶ 4.) Defendant is a Delaware corporation that owns, operates and controls a website, www.hottopic.com (the "Website"). (Id. ¶ 5.) Plaintiff alleges jurisdiction under CAFA because "there are believed to be at least 5,000 class members, each entitled to $5,000 in statutory damages, thus making the amount in controversy at least $25,000,0000 exclusive of interests and costs." (Id. ¶ 1.) "Defendant is subject to personal jurisdiction because it has sufficient minimum contacts with California and it does business with California residents." (Id. ¶ 3.)[3]

Defendant "ignores" CIPA because it "wiretaps the conversations of all website visitors and allows a third party to eavesdrop on the conversations in real time during transmission." (Id.

---

[1] The Court finds the RJN unnecessary to the resolution of the Motion. Accordingly, it is DENIED AS MOOT.

[2] This fact is taken from Defendant's Motion because the FAC does not bother to make a single allegation about the nature of Hot Topic's business, or even use the name "Hot Topic" once after the caption page. (See FAC.)

[3] The Court observes that the FAC may be subject to dismissal for lack of personal jurisdiction based on this sole, barebones jurisdictional allegation, but Defendant does not raise that argument.

¶ 10.)  Defendant uses a chat feature on its website that automatically records and creates transcripts of conversations with visitors to the Website.  (Id. ¶ 12.)  It allows at least one third-party vendor ("on information and belief, SalesForce") to "intercept," eavesdrop upon and store transcripts of Defendant's chat communications with website visitors.  (Id.)  Defendant allows a third-party to access these communications, purportedly "under the guise of 'data analytics.'"  (Id. ¶¶ 11, 14.)

Plaintiff is a "tester" with "dual motivations for initiating a conversation with Defendant."  (Id. ¶ 16.)  First, she was "genuinely interested" in learning about the (unspecified) "goods and services offered by Defendant."  (Id.)  Second, as a "tester," she works to ensure that companies abide by privacy laws, and believes she should be "praised rather than vilified" for her efforts.  (Id.)[4]

Plaintiff brings the action on behalf of a proposed class defined as, "[a]ll persons within the United States who: (1) visited Defendant's website, and (2) whose electronic communications were recorded, stored, and/or shared by Defendant without prior express consent within the statute of limitations period."  (Id. ¶ 22.)  Plaintiff "does not know the number of Class Members but believes the number to be in the tens of thousands, if not more."  (Id.)[5]

### III.  LEGAL STANDARD

**A**. **Subject Matter Jurisdiction under CAFA**

Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute."  Gunn v. Minton, 568 U.S. 251, 256 (2013).  The Court's jurisdiction is either that of federal question or complete diversity of citizenship.  See 28 U.S.C. §§ 1331, 1332.  "It is to be presumed that a cause lies outside [of a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (citations omitted).  Federal courts must ordinarily address jurisdictional questions before proceeding to the merits of the case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999); Snell v. Cleveland, 316 F.3d 822, 826 (9th Cir. 2002). "Without

---

[4] Plaintiff goes as far as to compare herself to Rosa Parks, who she claims was acting as a "tester" when she initiated the Montgomery Bus Boycott in 1955.  (See FAC at 5 n.3.)  Plaintiff's self-aggrandizing comparison trivializes Rosa Parks, a key accelerant of the civil rights movement.  It was not well-received by the Court.

[5] The Court construes this putative class along the lines of those in Plaintiff's Counsel's other virtually identical lawsuits, for this class, as written, makes no sense.  For one, Plaintiff never explains how users beyond California's borders could bring a CIPA claim; they cannot.  Second, Plaintiff elsewhere explains that her use of a smartphone is essential to her theories of recovery under CIPA, so any putative class needs to be limited to users who used the Website's chat feature via their mobile phones.  (See FAC ¶ 18.)

jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514 (1868). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation[.]" Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. (citations and internal quotations omitted); see also Fed. R. Civ. P. 12(h)(3).

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). Even with the "special liberalization" of jurisdictional requirements under CAFA, "there still must be a requisite amount in controversy that exceeds $5 million." Id. at 1195.

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

**C. Rule 15**

Federal Rule of Civil Procedure 15 ("Rule 15") provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted).

## IV.  DISCUSSION

The Court raises the issue of subject matter jurisdiction *sua sponte* and finds that Plaintiff has failed to meet her burden to establish it. The Court then turns to the merits of the Motion and finds that Plaintiff fails to state a claim for relief under either cause of action.

Before turning to these issues, the Court acknowledges the central dynamic in this litigation, underscoring all of the deficiencies in the FAC: Plaintiff, and her counsel, Scott Ferrell, are serial litigants bringing numerous "cookie cutter" lawsuits under CIPA against various businesses that operate websites.[6] As of December 9, 2022, Mr. Ferrell appears to have filed at least 58 of these virtually identical lawsuits. See Miguel Licea v. Caraway Home Inc., et al.,

---

[6] The Ninth Circuit's unpublished decision in Javier v. Assurance IQ, 2022 WL 1744107 (9th Cir. May 31, 2022) appears to have opened the floodgates for these cases, an unfortunate unintended consequence of a brief, narrow ruling limited to the issue of prior consent.

EDCV 22-1791, Order on Motion to Dismiss, Dkt. No. 20, at 6 (taking judicial notice of table of cases filed by Plaintiff's Counsel.)[7]  This Court alone has six virtually identical lawsuits filed by Plaintiff's Counsel on its docket: <u>Miguel A. Licea v. Gamestop, Inc. et al.</u>, EDCV-22-1562; <u>Miguel Licea v. Luxottica of America Inc, et. al.</u>, EDCV 22-1826; <u>Miguel Licea v. Caraway Home Inc., et al.</u>, EDCV 22-1791; <u>Miguel Licea v. Ulta Salon, Cosmetics & Fragrance Inc., et al.</u>, EDCV 23-201; <u>Jasmine Gamez v. Zero Day Nutrition Company, et al.</u>, EDCV 22-1655; and <u>Arisha Byars v. Hot Topic Inc., et al.</u>, EDCV 22-1652 (the instant action).  Mr. Ferrell appears to work with multiple "tester" plaintiffs to drum up these lawsuits, with Mr. Licea and Ms. Byars serving as his primary vehicles for litigation.  The cases bear strong echoes of serial Americans with Disabilities Act (ADA) litigation, in which Mr. Ferrell has also engaged.

Initiating legitimate litigation generally requires a considerable expenditure of time: in order to establish jurisdiction and state a claim for relief, a plaintiff must plead specific facts arising out of a specific encounter with a specific defendant.  As the saying goes, time is also money.  So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out.  Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement.  But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing?  And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far.  This Court observed in <u>Miguel Licea v. Caraway Home Inc, et al.</u>, EDCV 22-1791, Order on Defendant's Motion to Dismiss, Dkt. No. 20, that Plaintiff's Counsel had not even bothered to change the title of the pleading document (simply titling it "Pleading Template"), or write the case number on the caption page.  At least here it appears that Plaintiff's Counsel has written the case number, though the PDF file of the FAC is still titled "Pleading Template."  The FAC is replete with evidence of cut-and-paste work, perhaps the most obvious of which is that it *never* mentions the name of the company Plaintiff is suing after the caption page, because doing so might take more than a few seconds to alter when filing a new lawsuit.

---

[7] The Court again finds Plaintiff's Counsel's filings subject to judicial notice and relevant to the instant dispute.  See <u>United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 917 F.2d 244, 248 (9th Cir. 1992); <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006); <u>Neilson v. Union Bank of California, N.A.</u>, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) (approving judicial notice of filings in federal and state courts).  The Court has independently reviewed the docket of the Central District of California for filings by Plaintiff's Counsel and Plaintiff.  The Court (1) confirmed the veracity of the table of such complaints filed in the Central District of California cited here and (2) observed yet more virtually identical filings by Plaintiff's Counsel since December 9, 2022.  As of present, Plaintiff's Counsel appears to have filed at least 88 of these cases.

At the end of the day, Twombly-Iqbal pleading standards might be distilled to a single proposition: if a litigant pleads at such a high level of generality that it is possible to copy and paste a complaint word-for-word against a new defendant (at least after the unnumbered "introduction" section, where Plaintiff's Counsel has written the URL of the defendant of the day and referred to it as "the Website" so that he need not make a single other alteration to the rest of the complaint), then almost by definition he is pleading without the factual specificity necessary to state a claim for relief.

For the reasons below, the Court GRANTS the Motion.

**A.  Subject Matter Jurisdiction**

The Court finds itself obligated to raise the matter of subject matter jurisdiction *sua sponte*. See Arbaugh, 546 U.S. at 506; Ex Parte McCardle, 7 Wall. at 514. The FAC does not plausibly allege in good faith that $5 million is in controversy under CAFA.

CIPA provides for a private right of action in which a plaintiff can seek $5,000 per violation. Cal. Pen. Code. § 637.2. Therefore, there would need to be at least a thousand class members to meet CAFA's $5 million amount in controversy requirement. The entirety of the FAC's allegations with regard to the number of putative class members, and thus the amount in controversy, is that "Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more." (FAC ¶ 23.) In the Court's view, this vague and conclusory allegation, without a single factual contention in support, is insufficient to plausibly allege the jurisdictional threshold.

In Miguel Licea v. Caraway Home Inc, et al., EDCV 22-1791, when presented with this identical issue, Plaintiff argued, "Given that California is the largest state by population, the proposition that there are 1,000 putative class members in California who used Defendant's chat feature during the class period is plausible." Id., Order on Defendant's Motion to Dismiss, Dkt. No. 20. Assuming Plaintiff is applying the same logic here, the Court once again finds it wanting.

As the Court has already noted, the FAC does not allege a single fact about Hot Topic's business, other than aspects of its alleged "wiretapping" on its website, which are boilerplate allegations that Plaintiff's Counsel asserts against virtually every business he sues under CIPA. What does Hot Topic do? What does it sell? What kind of "goods and services" that Plaintiff was "genuinely interested in" does it offer? (FAC ¶ 16.) Is it a big company? Small company? Does it do lots of business in California? A little business? Any business? How much business does it do through its website? For those individuals who use the website, how many of them used the chat feature from a mobile phone? (Id. ¶ 18.) Is it not far more common to buy products from Hot Topic (and use the chat feature) on a computer, not a mobile phone? In other words, what about Hot Topic's *website specifically* and the *chat feature specifically* make it "plausible" that 1,000 or more people are in this putative class? There is no way of knowing from the FAC.

As at least one federal district court appears to have observed, there is a dearth of authority "evaluating the existence of CAFA jurisdiction in class actions originally filed in federal court," as the "overwhelming majority of decisions concerning CAFA jurisdiction involve cases removed to federal court by defendants." Petkevicius v. NBTY, Inc., 2017 WL 1113295, at *3 (S.D. Cal. Mar. 24, 2017). The Petkevicius court held that a plaintiff who files a case in federal court bears the same burden of establishing CAFA jurisdiction as a removing defendant. Id. at *4. The Court need not follow Petkevicius that far to hold that Plaintiff fails to meet her burden to establish subject matter jurisdiction. "When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). Plaintiff's Counsel's conduct, filing scores of identical lawsuits seemingly with little or no regard for the nature or size of the business he is suing, undercuts any presumption of good faith that might ordinarily apply. Moreover, background principles of law indicate that "good faith" allegations must be consistent with plausibility pleading standards. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d at 1055. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Put another away, "[t]o render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1105 (9th Cir. 2013). "A plaintiff . . . must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction." Carolina Cas. Ins. Co. v. Team Equip., Inc., 741 F.3d 1082, 1088 (9th Cir. 2014) (citation omitted). Applying these principles, it should be obvious that a plaintiff who makes virtually no attempt to adhere to plausibility pleading standards, like Ms. Byars, fails to meet her burden to allege subject matter jurisdiction in good faith:

> [A] threadbare recitation of the amount in controversy element for subject matter jurisdiction under CAFA is insufficient, without more, to establish the Court's subject matter jurisdiction. . . . In other words, simply stating that the amount in controversy exceeds $5,000,000, without any specific factual allegations as to the actual amount sought by the plaintiffs does not constitute a good faith allegation of the amount in controversy any more than an allegation that 'the parties are diverse' would be sufficient to establish the requisite diversity absent specific allegations of the citizenship of the parties. The [complaint] therefore does not contain any good faith factual allegations as to the amount in controversy. Indeed, based on the lack of sufficient plausible factual allegations in the [complaint] as to the amount in controversy, Plaintiff did not meet her burden to establish federal CAFA jurisdiction at the outset. To hold otherwise, would essentially give any class action plaintiff

> license to file a claim in federal court simply by stating the legal
> conclusion that CAFA jurisdiction exists.

Petkevicius, 2017 WL 1113295, at *4 (internal citation omitted).  Plaintiff's Counsel has provided no authority in support of the proposition that one can simply assume that, because California has a large population, at least 1,000 Californians must qualify as class members.  Moreover, if any plaintiff could simply make a broad, conclusory allegation that, upon information and belief there were over 1,000 class members because California is a large state, then virtually any proposed class of Californians would always meet the amount in controversy requirement.  This cannot be true, for even if California has a large population, it does not follow that every business that operates in California has a large number of customers, let alone ones who engage in a specific behavior, such as accessing a given chat feature from a mobile phone.  None of this is to say that a plaintiff bears a particularly heavy burden to establish an amount in controversy under CAFA, or any aspect of subject matter jurisdiction, or that operating to some extent on information and belief is inappropriate.  The standard is not high: plausibly pleading subject matter jurisdiction in good faith.  But it is a burden nonetheless, and there must be *something*, perhaps even *anything*, of a fact-specific nature to surpass it.

As the Court previously noted in its Order on Defendant's Motion to Dismiss in Miguel Licea v. Caraway Home Inc, et al., EDCV 22-1791, Fritsch, 899 F.3d 785 does not allow for Plaintiff to augment the amount in controversy through attorney's fees here.  Fritsch is clear that attorney's fees must count toward the amount in controversy requirement only when a plaintiff is *entitled* to prevailing party fees: "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy."  899 F.3d at 794.  However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place."  Id. at 796.  Fritsch itself considered a statute with a mandatory fee-shifting provision, California Labor Code § 218.5.  Id. at 789 n.3.  Because CIPA has no attorney's fees provision, let alone a mandatory one, the only way for Plaintiff to recover attorney's fees is under California's private attorney general statute, California Code of Civil Procedure § 1021.5.  That statute affords a court the discretion to award a plaintiff attorney's fees as a prevailing party if it finds, among other things, that the action "has resulted in the enforcement of an important right affecting the public interest[.]"  See Cal. Civ. Proc. Code § 1021.5.  Fritsch's principle does not apply "where there is neither a contractual provision nor a mandatory statutory imperative regarding an award of attorneys' fees."  Wood v. Charter Commc'ns LLC, 2020 WL 1330640, at *2 (C.D. Cal. Mar. 21, 2020).  As such, attorney's fees do not count toward the amount in controversy requirement in this matter.

The Court finds that Plaintiff has failed to meet her burden to establish subject matter jurisdiction.  As such, the FAC is subject to dismissal on that basis alone.

//
//

## B. First Cause of Action: California Penal Code § 631(a)

Defendant and *amicus curiae* NRF raise various arguments for dismissal of Plaintiff's first cause of action, a violation of California Penal Code Section 631(a). The Court finds that Plaintiff fails to allege that Defendant is, or aids and abets, a third-party eavesdropper within the meaning of that section and accordingly GRANTS the Motion as to the first cause of action on that basis. The Court declines to reach additional grounds for dismissal, which may also be meritorious.

Section 631(a) states:

> (a) Any person [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section. . . . [is liable].

Cal. Penal Code § 631. The California Supreme Court has construed the statute as "three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Tavernetti v. Superior Ct., 22 Cal. 3d 187, 192 (1978). In a remarkable illustration of conclusory pleading, Plaintiff restates these three theories of liability, and simply alleges, "[h]ere, Defendant does all three." (FAC ¶ 28.)

A recent case from the Northern District of California, Williams v. What If Holdings, LLC, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022), illustrates Plaintiff's failure to allege a viable theory of recovery under Section 631(a). In Williams, the plaintiff visited a website owned by What If Holdings, LLC ("What If"), which she alleged took a four second video of her interactions on a webpage displaying her name and contact information without her consent. Id. at *1. The plaintiff also sued ActiveProspect, Inc. ("ActiveProspect"), a third-party software vendor that offered a product called "TrustedForm," which allegedly had the ability to document a website visitor's keystrokes and mouse movements and then create a video replay of

the website visitor's interactions with the website. Id. The plaintiff alleged that What If used the TrustedForm software product to "record her keystrokes and clicks on the website, while also recording data regarding the date and time of her visit, her browser and operating system, and her geographic location." Id.

Judge Alsup explained why Plaintiff failed to allege a theory of Section 631(a) liability against either defendant. For present purposes, his analysis of any purported liability for What If is the relevant inquiry, since Defendant is a website owner akin to What If and Plaintiff has not sued the (unnamed and seemingly unknown) third-party software vendor in the instant action. Williams explains that the only viable theory of liability for a website owner like Defendant is under the fourth clause of Section 631(a), which encompasses one "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, permit, or cause to be done" any of the first three "patterns of conduct." Cal. Penal Code § 631; Tavernetti, 22 Cal. 3d at 192. That is because, "[a]s the website owner, What if," or here Defendant, "was the intended recipient of plaintiff's communication. Parties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) is applicable[.]" Williams, 2022 WL 17869275 at *2. As the Williams court observed, the California state courts have long made clear this fundamental aspect of Section 631(a). See Warden v. Kahn, 99 Cal. App. 3d 805, 811 (1979) (finding that Section 631 "has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation"); Rogers v. Ulrich, 52 Cal. App. 3d 894, 899 (1975) (holding that Section 631 does not apply to a party to a conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."). The California Supreme Court has also explained the underlying purpose of Section 631(a). "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." Ribas v. Clark, 38 Cal. 3d 355, 359 (1985) (citation omitted).

Relying in large part on the state court authorities, federal district courts have applied the direct party exemption to Section 631(a). See, e.g., Graham v. Noom, Inc., 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Graham reasoned that (1) under Section 631(a), "if a person secretly listens to another's conversation, the party is liable"; (2) "only a third party can listen to a conversation secretly"; and (3) "[b]y contrast, a party to a communication can record it (and it is not eavesdropping when it does)." Id. at 831 (citations omitted); accord Yale v. Clicktale, Inc., 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021). "Published cases are in accord that section 631 applies only to third parties and not participants." Powell v. Union Pac. R. Co., 864 F. Supp. 2d 949, 955 (E.D. Cal. 2012); see also, e.g., Membrila v. Receivables Performance Mgmt, LLC, 2010 WL 1407274, at *2 (S.D. Cal. April 6, 2010) ("Plaintiff's claim for violation of Section 631 fails, because this section applies only to eavesdropping by a third party and not to recording by a participant to a conversation."). The Ninth Circuit has followed the authorities finding a direct party exemption under Section 631(a):

> The Wiretap Act prohibits the unauthorized "interception" of an "electronic communication." 18 U.S.C. § 2511(1)(a)–(e). Similarly, CIPA prohibits any person from using electronic means to "learn the contents or meaning" of any "communication"

"without consent" or in an "unauthorized manner." Cal. Pen. Code § 631(a). Both statutes contain an exemption from liability for a person who is a "party" to the communication, whether acting under the color of law or not. 18 U.S.C. § 2511(2)(c), (d); see Warden v. Kahn, 99 Cal. App. 3d 805 (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Courts perform the same analysis for both the Wiretap Act and CIPA regarding the party exemption. See, e.g., [In re Google Cookie, 806 F.3d 125, 152 (3d Cir. 2015)] (holding that CIPA claims could be dismissed because the parties were exempted from liability under the Wiretap Act's party exception).

In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 606–07 (9th Cir. 2020), cert. denied sub nom. Facebook, Inc. v. Davis, 141 S. Ct. 1684 (2021). Cf. Thomasson v. GC Servs. Ltd. P'ship, 321 F. App'x 557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,' . . . to refer to a third party secretly listening to a conversation between two other parties.").[8] So has the Third Circuit. See In re Google Inc. Cookie, 806 F.3d at 152 ("The pleadings demonstrate that Google was itself a party to all the electronic transmissions that are the bases of the plaintiffs' wiretapping claims. Because § 631 is aimed only at 'eavesdropping, or the secret monitoring of conversations by third parties,' we will affirm the dismissal of the California Invasion of Privacy Act claim[.]") (citations omitted).

Plaintiff offers only the meekest of arguments that "[t]here is no party exemption under the first clause of section 631(a)." (Opposition at 5.) Although acknowledging the analysis in Rogers, 52 Cal. App. 3d 894 (Opposition at 5), she offers no convincing explanation, or even any explanation, why this Court should be free to disregard the holdings of the California courts of appeal. See Hayes v. Cnty. of San Diego, 658 F.3d 867, 870 (9th Cir. 2011), certified question answered, 57 Cal. 4th 622 (2013) ("In deciding an issue of state law, when 'there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the

---

[8] There is another reason that at least the first clause of Section 631(a) does not provide a theory of Defendant's liability: Plaintiff's factual allegations, to the extent they can be construed as such, solely involve Defendant's internet-based activities on the Website. (See FAC.) "[T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." Williams, 2022 WL 17869275, at *2; see also In re Google Assistant Privacy Litig., 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (explaining that "the plain text of the statute . . . expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument' " (quoting Cal. Penal Code § 631(a))); In re Google Inc. Gmail Litig., 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (describing the "limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of [Section 631(a)]").

state's supreme court likely would not follow it.") (citation omitted).  To the extent the California Supreme Court also affirmed the party exemption in Ribas, 38 Cal. 3d at 359, it is inarguable that this Court is bound by that decision.  Lewis v. Tel. Emps. Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest court.") (citation omitted).  Plaintiff also asks the Court to ignore the many federal cases finding a direct party exemption under Section 631(a).  The Court declines to do so.  The only case Plaintiff cites in support of her view that there is no direct party exemption is People v. Conklin, 12 Cal. 3d 259, 270 (1974).  (Opposition at 5.)  In doing so, she conflates two issues and exceptions: the direct party exception and consent exception.  Conklin observed that Section 631(a) requires that all parties consent, while the federal Wiretap Act includes a one-party consent exception.  See Conklin, 12 Cal. 3d at 270.  But that is not the issue here, and the Court does not reach the issue of consent.  See Williams, 2022 WL 17869275, at *4 (declining to reaching consent issue and observing that "Plaintiff's reliance on [Javier, 2022 WL 1744107] is therefore inapposite, as Javier was expressly cabined to the question of consent.")[9]

      As such, like in Williams, the only possible basis for Defendant to be liable under Section 631(a) must be an aiding and abetting theory.  See Williams,  2022 WL 17869275 at *2.  Under that theory, Defendant's liability must be "based entirely" on whether the unnamed, likely unknown third-party software vendor "violated Section 631(a) in some way."  Id.  "Because a party to the communication is exempt from liability under CIPA, our dispositive question is whether [the third-party vendor] constitutes a third-party eavesdropper."  Id. at *3 (citation omitted).  "Put differently, the question boils down to whether [the third-party vendor] was an independent third party hired to eavesdrop on [Defendant's] communications, or whether [the third-party vendor's] software was merely a tool that [Defendant] used to record its own communications with plaintiff."  Id.

      In Williams, the facts "suggest the latter."  Id.  There, the complaint alleged that "What If deployed ActiveProspect's TrustedForm recording software only on What If's websites and that the recordings were stored and accessed on ActiveProspect's servers[.]"  Id.  Williams held that "[t]hese limited allegations are not enough to show that ActiveProspect was a third-party eavesdropper as contemplated by Section 631(a)."  Id.  The court rejected the argument that "if ActiveProspect is not considered a third party, then website owners can always circumvent Section 631(a) by hiring a vendor to record communications."  Id.  It reasoned that the "relevant inquiry here is whether a website owner's usage of third-party recordation software can be considered equivalent to having hired a third party to record."  Id.  "A key distinction is whether or not the alleged third-party software vendor aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently 'uses' the gathered data in some way."  Id. (citations omitted); see also In re Facebook Inc. Internet Tracking Litig., 956 F.3d at 608 ("Permitting an entity to engage in the *unauthorized duplication and forwarding* of

---

      [9] The Court also declines to consider the other issues raised by the parties' briefing, such as "whether communications were intercepted in transit, and whether the recorded data constitute protected content under CIPA."  Id.

unknowing users' information would render permissible the most common methods of intrusion, allowing the exception to swallow the rule") (emphasis added). Williams found that the plaintiff did not allege facts to suggest that ActiveProspect "intercepted and used the data itself." Id. at *3 (quoting Graham, 553 F. Supp. 3d at 832). The facts, as alleged, suggested that the TrustedForm software may have been deployed on a single page, rather than the "entire website,"; the recordation was routine, which is "qualitatively different from data mining"; and the plaintiff failed to plead facts that ActiveProspect "affirmatively engages with that data in any way other than to store it." Id. "In sum, the facts as pled show that TrustedForm functioned as a recorder, and not as an eavesdropper. ActiveProspect is not liable for wiretapping under Section 631(a) for providing a software tool, and that What If used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping." Id.

In other cases, Plaintiff's counsel has attempted to distinguish Williams by noting that the unnumbered introductory paragraph (the sole paragraph that Plaintiff's Counsel appears to modify when filing cookie-cutter lawsuits), alleges that Defendant allows "at least one third party to eavesdrop on such communications in real time and during transmission to harvest data for financial gain." (FAC at 2: 4-5.) The Court remains unpersuaded. To begin, Plaintiff has pled with nowhere near the specificity of the (deficient) showing in Williams, or seemingly that of every analogous case cited here or that the Court has read. Unlike in Williams, Graham or other opinions, Plaintiff appears to know nothing about the role that the third-party vendor plays, because she does not even know what it is, let alone how it works. The FAC refers to an unnamed third-party (or multiple third-parties) except in one location, where Plaintiff alleges that "Defendant allows at least one independent third-party vendor (on information and belief, Salesforce)" to access its chat communications. (FAC ¶ 12.) Without alleging a single specific fact in support of the contention that the third party "harvest[s] data for financial gain," the allegation is a mere conclusion disregarded under Twombly and Iqbal. Here, as in Williams and Graham, Plaintiff does not allege a single fact that suggests the third-party "intercepted and used the data itself." Williams, 2022 WL 17869275, at *3 (quoting Graham, 553 F. Supp. 3d at 832). There is not a single fact that suggests the third-party vendor was deployed on the "entire website," not just a page or two. See id. There are no specific factual allegations that any such recordation was more than a routine effort, rather than "data mining." Id. There are no facts that the third party vendor "affirmatively engages with that data in any way other than to store it." Id. In fact, even construing the pleadings in the light most favorable to Plaintiff, the clear inference is that the third-party vendor is engaging in precisely the sort of "routine" data recordation in Williams: the primary function of the vendor appears to be "stor[ing] transcripts of Defendant's chat communications with 'unsuspecting' website visitors." (FAC ¶ 12.)

Graham also explains why Plaintiff's aiding and abetting theory must fail:

> By contrast, FullStory is a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data. Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself. Instead, as a service provider, FullStory is an extension of Noom. It provides a

> tool — like the tape recorder in Rogers — that allows Noom to record and analyze its own data in aid of Noom's business. It is not a third-party eavesdropper.

533 F. Supp. 3d at 832-33 (internal citations omitted). As in Graham, the facts alleged in the FAC and inferences that can be drawn from them demonstrate that Defendant uses a third-party vendor to "record and analyze its own data in aid of [Defendant]'s business," not the "aggregation of data for resale," which makes the third-party an "extension" of Defendant's website, not a "third-party eavesdropper." Id.

To the extent Plaintiff thinks it is unfair to hold that she fails to state a claim before discovery would allow her to learn exactly how the third-party software vendor operates, that is a policy argument that the Supreme Court, for better or for worse, has rejected by requiring plausibility pleading. Moreover, pre-discovery information deficits do not appear to have stopped numerous other plaintiffs who have brought CIPA challenges from learning how a third-party software vendor works. Those plaintiffs likely were represented by lawyers who were interested in conducting the necessary investigation into a party they intended to sue in order to plead facts with specificity. In contrast, Plaintiff's Counsel has evinced an unmistakable intent to sue as many as companies as possible in the shortest amount of time possible, seemingly without doing the most basic homework on the entities he names as defendants.

Accordingly, the Courts GRANTS the Motion as to Plaintiff's first cause of action. It discusses whether to dismiss the claim with or without leave to amend below.

**C. Second Cause of Action: California Penal Code § 632.7**

Plaintiff's second cause of action is foreclosed by the plain language of the statute. It states:

> (a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone [is liable].

Cal. Penal Code § 632.7. The unambiguous meaning of the statute is thus that it only applies to communications involving two telephones. Plaintiff's allegations all relate to text-based web communications regarding a chat feature on a website, which virtually by definition cannot involve two telephones. (See FAC ¶¶ 18-19.) Regardless of whether Plaintiff has successfully made an end-run around half the statute by purporting to use a smartphone, rather than the far more obvious tool of a computer, to initiate the conversation on the Website and thus inflict upon herself an injury to bring this lawsuit, she does not, and cannot, allege that Defendant is using a

telephone on the other end.[10]  That is because it is not: whoever or whatever is on the other end of the text-based communication, a computer, not a telephone, is being used to receive and send messages to Plaintiff and other users of the Website.

The California Supreme Court has found that, in enacting Section 632.7, the California Legislature was "[r]esponding to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones[.]" Flanagan v. Flanagan, 27 Cal. 4th 766, 776 (2002). "It protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved." Id. at 581-82. Determining "what type of telephone was used to receive the subject call" is an element of a Section 632.7 claim. Hataishi v. First Am. Home Buyers Prot. Corp., 223 Cal. App. 4th 1454, 1469 (2014). To this Court's knowledge, at least until Arisha Byars v. The Goodyear Tire and Rubber Co., et al., 2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ("Goodyear"), courts universally agreed that the statutory language of Section 632.7 would not apply in the context of text-based communications on a website. See, e.g., Montantes v. Inventure Foods, 2014 WL 3305578, at *4 (C.D. Cal. July 2, 2014) ("The plain text of § 632.7 suggests that an exclusive list of five types of calls are included: a communication transmitted between (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone. According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side."); Moledina v. Marriott Int'l, Inc., 2022 WL 16630276, at *7 (C.D. Cal. Oct. 17, 2022) (quoting the language of Section 632.7 and finding that it applies to communications between "a cellular telephone and another telephone").

However, Judge Sykes decided very recently in Goodyear, 2023 WL 1788553, at *5 (C.D. Cal. Feb. 3, 2023) that Section 632.7 applies to a claim made by Ms. Byars herself. There is no intellectually honest way to distinguish Goodyear, for it involves virtually identical allegations as those here (indeed, the allegations in Goodyear and here are copied and pasted from the same template). But persuasive authority like Goodyear is only relevant to the extent of its ability to *persuade*, and the Court respectfully disagrees with Goodyear's Section 632.7 holding.[11] Circumventing the plain language of Section 632.7, Goodyear cites McCabe v. Six Continents Hotels, Inc., 2014 WL 465750, at *3 (N.D. Cal. Feb. 3, 2014) for the proposition that Section

---

[10] It may even be true that Plaintiff's use of a smartphone to engage in web-based chatting fails to meet the telephone requirement, either, though the Court need not decide that question. See Mastel v. Miniclip SA, 549 F. Supp. 3d 1129, 1135-36 (E.D. Cal. 2021) (reasoning that a tool allowing a user to copy and paste text is a "feature of the portion of the iPhone that functions as a computer, not the phone" and therefore is not a "telephone instrument" within the meaning of Section 631(a).)

[11] Goodyear did not consider the direct party exception in its Section 631(a) analysis. "It is axiomatic that cases are not authority for propositions not considered." Evanston Ins. Co. v. Atain Specialty Ins. Co., 254 F. Supp. 3d 1150, 1165 (N.D. Cal. 2017) (citation omitted). Thus, the Court has no occasion to consider Goodyear's analysis as to Section 631(a).

632.7 may apply where only "one of the parties is using a cellular or cordless telephone." 2023 WL 1788553, at *5. It then rejected the argument that Ms. Byars failed to allege that the text-based communications occurred between two telephone devices, holding that "there is no requirement that Byars allege the type of telephonic device used by Goodyear." Id. at *5. As explained below, that may be true within a narrow context, but Goodyear's reasoning rests on the false premise that Goodyear was using a telephone at all: the allegations there, as here, make it abundantly clear that it was *not* using a telephone, for Goodyear, like Hot Topic, was accused of "embed[ing] code into its chat feature that allows Goodyear to record and transcribe" text-based communications. Id. at *1. Plaintiff admits as much: she asks the Court to construe "Defendant's computer equipment" as the "functional" equivalent of a "landline telephone." (Opposition at 17.) McCabe also does not support the broad proposition that Goodyear cited it for. McCabe rejected a predictable but unpersuasive argument by a defendant essentially asking the court to hold that the plaintiff needed to have ruled out a remote possibility in order to plausibly allege an element: the defendant argued that it could have been using Voice Over Internet Protocol (VoIP) technology to record phone calls, as opposed to an ordinary telephone. See 2014 WL 465750, at *3. McCabe's rejection of the argument made perfect sense, because VoIP telephone calls are similar to traditional telephony in almost every meaningful respect as it relates to an individual's right to privacy, and there was no doubt whatsoever that the facts in McCabe involved *telephone calls* between two users using some kind of *telephonic device*: the plaintiffs alleged that they called the defendant's "call centers from a cellular phone in California" and the call centers recorded their calls without their consent. Id. at *1.

Here, there is no possible basis to conclude that one of the five "exclusive . . . types of calls" are at issue: "a communication transmitted between (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone." Montantes, 2014 WL 3305578, at *4. Plaintiff's argument to the contrary is an enormous stretch, asking the Court to "broadly construe the term, 'landline telephone,' in section 632.7(a) of the Penal Code, which is undefined, functionally as encompassing Defendant's computer equipment, which connected with Plaintiff's smart phone to transmit and receive Plaintiff's chat communications." (Opposition at 17.) Plaintiff provides no valid authority or explanation why the Court should adopt a construction of the statute so fundamentally at war with its text other than it would allow her to possibly state a claim for relief. To the extent unpublished district court opinions have suggested, whether in their holdings or in dicta, that a plaintiff may state a claim under Section 632.7 without alleging the use of two or more telephones, the narrow reasoning of those cases is either distinguishable or, in the case of Goodyear, unpersuasive. "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1737 (2020).

Section 632.7 applies only to communications involving two telephones. Plaintiff admits that Defendant was not using a telephone, and thus her second cause of action fails as a matter of law. Because it would be futile to amend the pleadings as to the second cause of action, the Court

GRANTS the Motion as to Plaintiff's Section 632.7 claim and DISMISSES it WITHOUT LEAVE TO AMEND. See Lopez, 203 F.3d at 1127.

### D. Leave to Amend to Allege Subject Matter Jurisdiction and the First Cause of Action

The Court dismissed Plaintiff's complaint for lack of subject matter jurisdiction in Miguel Licea v. Caraway Home Inc, et al., EDCV 22-1791, with leave to amend the jurisdictional allegations. Id., Order on Defendant's Motion to Dismiss, Dkt. No. 20. In doing so, the Court denied a request for jurisdictional discovery. Assuming Plaintiff would request the same had the issue been raised by the Motion rather than *sua sponte*, the Court once again finds that leave to amend to properly allege subject matter jurisdiction is the appropriate court of action, rather than jurisdictional discovery. The Ninth Circuit has made it clear that a district court's discretion on the question of whether to grant jurisdictional discovery is exceptionally broad: "In granting discovery, the trial court is vested with broad discretion and will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant. Discovery may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (internal citation omitted). District courts routinely deny such requests. See, e.g., Boschetto v. Hansing, 2006 WL 1980383, at *5 (N.D. Cal. July 13, 2006), aff'd, 539 F.3d 1011 (9th Cir. 2008) ("plaintiff merely speculates without any support that discovery might allow him to demonstrate that jurisdiction in California is proper"); W. Air Charter, Inc. v. Sojitz Corp., 2019 WL 4509304, at *10 n.3 (C.D. Cal. May 2, 2019) (Bernal, J.). One district court's reasoning in denying limited jurisdictional discovery is particularly apt here: "Plaintiff's jurisdictional theories . . . rest only on bare allegations . . . These bare assertions are unsupported by evidence and too speculative to support a grant of jurisdictional discovery. Because plaintiff has not demonstrated that resolution of the jurisdictional issue should be delayed and [the defendant] forced to incur discovery costs, his request for discovery is denied." Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 998 (C.D. Cal. 2013). Jurisdictional discovery is not a substitute for a plaintiff's lawyer doing even the most basic research about the company he is suing (before suing it), or making even a minimal effort to comply with pleading standards as to jurisdictional facts (or any facts, for that matter). At least when plaintiffs have not already been afforded an opportunity to amend the complaint, dismissal without leave to amend is generally only appropriate when the "pleading could not possibly be cured by allegation of other facts." Lopez, 203 F.3d at 1127. These principles apply in the context of a failure to plead jurisdictional allegations. See Carolina Cas. Ins. Co., 741 F.3d at 1086. There is some possibility that Plaintiff may allege sufficient facts to plausibly plead, in good faith, that $5 million is in controversy under CAFA. As such, the Court grants leave to amend to allege subject matter jurisdiction.

The Court has serious doubts whether Plaintiff can or will cure the deficiencies with her pleading of the first cause of action outlined here, as well as others revealed by the Motion and the Brief Amicus Curiae of NRF. For one, the Complaint has already been amended once, and Plaintiff did not make a single meaningful change to the pleadings. (See Complaint; FAC.) When a plaintiff fails to cure the deficiencies in her pleadings once, it is a "a "strong indication

that [Plaintiff] has no additional facts to plead" and it may be "clear that [Plaintiff] has made [her] best case and [has] been found wanting." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (quoting In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1098 (9th Cir. 2002)). Plaintiff's Counsel's determination to file deficient cookie-cutter pleadings at massive scale, rather than fewer cases that adhere to plausibility pleading standards, is a strong indication that an Iqbal-compliant pleading is not forthcoming. Nonetheless, because Plaintiff and Plaintiff's Counsel have not had an opportunity to see how this Court would rule on a Rule 12(b)(6) motion on the allegations here, and because there is some possibility, however remote, that Plaintiff can plead specific facts to state a claim for relief under Section 631(a), the Court DISMISSES the first cause of action WITH LEAVE TO AMEND.

Lest there be any doubt about the Court's intentions, this will almost certainly be Plaintiff's final opportunity to amend the pleadings, and she is forewarned not to abuse it. To state a claim for relief under the first cause of action, Plaintiff must plead specific facts that will render Defendant liable for aiding and abetting the conduct of its third-party software vendor under Section 631(a). In order to do that, Plaintiff almost certainly must allege (1) the name of that third-party software vendor; (2) precisely how that software operates on Defendant's Website; (3) the ways in which data is shared and used by Defendant and the third-party such that the latter "intercepts" any communications; (4) how specifically the third-party vendor "intercepts" communications in transit, not just through accessing stored files after a communication has concluded; and (5) the nature of the financial relationship between Defendant and the third-party vendor, i.e. whether the latter is using data for its own purposes and financial gain, such that any usage would violate a user of Defendant's website's reasonable expectations of privacy.[12] The Court encourages Plaintiff to conduct additional research and make a concerted effort to substantively rewrite the allegations under her first cause of action, rather than make cosmetic changes to it. If Plaintiff is unable to allege these elements without resorting to the vague and conclusory allegations in the FAC, she should consider it futile to amend the FAC.

## V.   CONCLUSION

For the reasons above, the Court finds *sua sponte* that Plaintiff fails to plausibly allege subject matter jurisdiction and **GRANTS** the Motion. Plaintiff is granted leave to amend to allege, plausibly and in good faith, subject matter jurisdiction under CAFA. Plaintiff's first cause of action is **DISMISSED WITH LEAVE TO AMEND.** The second cause of action is **DISMISSED WITHOUT LEAVE TO AMEND.** The February 27, 2023 hearing is **VACATED**. An amended complaint, if any, shall be filed by February 24, 2023.

**IT IS SO ORDERED.**

---

[12] This is not to suggest that Plaintiff would state a claim if she properly alleged these elements. Plaintiff should take the opportunity to amend the FAC to address the other deficiencies raised by the Motion and the Brief Amicus Curiae of NRF.